# **EXHIBIT A**

Proposed Bidding Procedures Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ***In re***<br><br>**NUVO GROUP USA, INC., *et al.*,**[1]<br><br>**Debtors.** | Chapter 11<br><br>Case No. 24-11880 (MFW)<br><br>(Jointly Administered)<br><br>**Re D.I. _____** |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING FORMS AND MANNER OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION THEREWITH; (E) AUTHORIZING THE DEBTORS TO DESIGNATE A STALKING HORSE BIDDER AND SEEK EXPEDITED APPROVAL OF BID PROTECTIONS, IF ANY, AND (F) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for (I) An Order (A) Approving Bidding Procedures for the Sale of Substantially All Assets of Debtors; (B) Approving Procedures for the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases;(C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; (E) Authorizing the Debtors to Designate a Stalking Horse Bidder and Seek Expedited Approval of Bid Protections, If Any; and, Granting Related Relief* (the "Motion");[2] and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are:  Holdco Nuvo Group D.G Ltd. (5756); Nuvo Group Ltd. (3811); and Nuvo Group USA, Inc. (2727).  The Debtors' mailing address for purposes of these Chapter 11 Cases is 300 Witherspoon Street, Suite 201, Princeton, New Jersey 08542.

2.  Capitalized terms not defined herein have the meanings given to such terms in the Motion.

United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the statements of counsel, the First Day Declaration, the Beers Declaration, any objections raised, and the evidence presented at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.  The Debtors have articulated good and sufficient reasons for, and the best interests of their estates, creditors, and other parties in interest will be served by the Court granting the relief requested in the Motion as set out in this Bidding Procedures Order.

B.  The Bidding Procedures enable the Debtors to maximize the value of their assets for the benefit of all stakeholders and constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit bids, and are reasonably calculated to enable the Debtors to pursue higher or otherwise better offers for the Purchased Assets.

C.  The Debtors' option to accept a Stalking Horse Bid in the Debtors' business judgment, and, upon such designation, seek this Court's approval of Bid Protections, if any, on an expedited basis are reasonably calculated to enable the Debtors to maximize the value of their assets by providing the opportunity to set the floor for bids and contributing to a robust auction process, for the benefit of the Debtors' estates, creditors, and other parties in interest.

D.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this Bidding Procedures Order for the (i) Bid Deadline, (ii) Sale Objection Deadline, (iii) Debtors' reply deadline, (iv) Auction, (v) Contract Objection Deadline, (vi) Sale Hearing, and (vii) Outside Closing Date.

E.      The Sale Notice and Contracts Notice are reasonably calculated to provide the Sale Notice Parties, the other Contract Counterparties, and other interested parties with proper notice of the (i) Bidding Procedures, (ii) Auction, (iii) assumption and assignment procedures (including with respect to Cure Costs and the Contract Objection Deadline), (iv) Sale Hearing, (v) Sale, and (vi) Outside Closing Date.

F.      The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

G.      Due, sufficient and adequate notice of the relief granted herein has been given.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

2.      The Bidding Procedures, which are attached hereto as **Exhibit 1** and incorporated herein by reference, are hereby approved in all respects and shall govern all bidders and bids, including those that may be submitted by Qualified Bidders at the Auction.

3.      Qualified Bidders seeking to submit bids for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.

4.      The DIP Lender is a Qualified Bidder and, pursuant to section 363(k) of the Bankruptcy Code, is authorized to submit a Credit Bid for the full amount of all DIP Obligations under the DIP Facility.

5.      As set forth in the Bidding Procedures, the Debtors have the option, but are not required to, designate a Stalking Horse Bidder in the Debtors' business judgment.

6.      To the extent the Debtors designate a Stalking Horse Bidder, the Debtors shall within two business days thereof file the Stalking Horse Bidder Notice and may seek Bankruptcy Court approval of any Bid Protections on an expedited basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Purchase Agreement, which competing Qualified Bidders must then use as the basis to submit their Qualified Bids.  The Stalking Horse Bidder Notice, if filed, shall also include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

7.      If the Debtors accept a Stalking Horse Bid, such Stalking Horse Bid shall be deemed to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder notwithstanding any aspect of such bid or bidder that may be inconsistent with the requirements for a Qualified Bid or Qualified Bidder, or other provisions of the Bidding Procedures.

8.      The deadline for all potential bidders to submit a Qualified Bid (other than a Stalking Horse Bid) is **November 26, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"), as further governed by the Bidding Procedures.

9.      As further governed by the Bidding Procedures, if more than one Qualified Bid is received by the Bid Deadline, the Debtors may hold the Auction on **December 4, 2024, at**

**10:00 a.m. (prevailing Eastern Time)** in accordance with the Bidding Procedures at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004.

10.     Following the Auction, the Debtors shall promptly file with the Court the Supplement described in the Bidding Procedures, but shall not be required to serve the same on any parties in interest in these chapter 11 cases.

11.     If the Debtors receive only one Bid that is a Qualified Bid (which may be a Stalking Horse Bid, as applicable), the Debtors, in their business judgment, may (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) such Qualified Bid is the Successful Bid and (b) the Auction is cancelled, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement (or the Stalking Horse Bidder Purchase Agreement, as applicable).

12.     The Court shall conduct the Sale Hearing no later than **December 9, 2024, at_____ .m. (prevailing Eastern Time)**, at which time the Court will consider approval of the Sale to the Successful Bidder.  Following the conclusion of the Auction, with the consent of the Successful Bidder and the DIP Lender, or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for these chapter 11 cases.

13.     The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

14.     The Sale Notice and Contract Notice, substantially in the forms attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved in all respects.  No other or further notice of the Bidding Procedures, assumption and assignment procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale is required.

15.     To be considered, any objection to the Sale must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) **be filed on or before December 5, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>").

16.     The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale of the Purchased Assets to the Successful Bidder, including the transfer of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Purchased Assets, subject to the rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment or transfer of any contracts or leases to the Successful Bidder.

17.     No Qualified Bidder or any other person or entity, other than a potential Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale.

18.     The assumption and assignment procedures, as described in the Motion, are hereby approved in all respects.  The failure to specifically include or reference any particular provision of the assumption and assignment procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the assumption and assignment procedures be authorized and approved in their entirety.

19.     As further governed by the assumption and assignment procedures, the Contract Objection Deadline is **<u>December 5, 2024, at 5:00 p.m. (prevailing Eastern Time)</u>**.  If a

timely objection is filed and cannot be resolved consensually, such objection will be resolved at a hearing to be held on December 9, 2024, or on such other date prior to or after the Sale Hearing as the Debtors may designate.  Any Contract Counterparty that fails to file a Contract Objection by the Contract Objection Deadline (i) shall be deemed to have forever waived and released any right to assert a Contract Objection, (ii) to have consented to the assumption and assignment, or transfer, as the case may be, of its contract or lease without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Contracts Notice with respect to its contract or lease, (b) seeking additional amounts arising under its contract or lease prior to the closing from the Debtors or Successful Bidder, or Back-Up Bidder as the case may be, and (c) objecting to the assumption and assignment, or transfer, as the case may be, of its contract or lease to the Successful Bidder, or Back-Up Bidder as the case may be.

20.     Nothing herein shall amend or modify any provisions, terms, or conditions of the DIP Facility.

21.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

22.     The Debtors are authorized and empowered to take such actions as may be necessary to implement and effectuate the terms and requirements established and relief granted in this Bidding Procedures Order.

23.     To the extent of any inconsistences between the Bidding Procedures and this Bidding Procedures Order, this Bidding Procedures Order shall govern.

24.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bidding Procedures or this Bidding Procedures Order.

**EXHIBIT 1**

**Bidding Procedures**

# **BIDDING PROCEDURES**

The following procedures (collectively, the "Bidding Procedures") shall govern the proposed sale (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Purchased Assets")[1] and the assumption of certain of the Debtors' liabilities (collectively, the "Assumed Liabilities") of Nuvo Group USA, Inc. and its affiliated debtors and debtors in possession (the "Debtors") in Case No. 24-11880 (MFW) pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are authorized to designate a Stalking Horse Bidder (as defined below), and such Stalking Horse Bidder, if designated, shall submit a binding, definitive, and fully executed asset purchase agreement (the "Stalking Horse Bidder Purchase Agreement"), and make such agreement available to Potential Bidders (as defined below) as set forth herein.

These Bidding Procedures have been approved and authorized by an order of the Bankruptcy Court, dated October [●], 2024 (the "Bidding Procedures Order"), upon the motion of the Debtors dated October 11, 2024 (D.I. [●]) (the "Sale Motion"), which Bidding Procedures Order, among other things, (i) approved these Bidding Procedures; (ii) approved various forms and the manner of notice of respective dates, times, and places in connection therewith; (iii) scheduled the Auction (as defined below); (iv) scheduled the Sale Hearing (as defined below) and the objection deadline to the Sale; (v) authorized the Debtors to designate a Stalking Horse Bidder and seek expedited approval of bid protections; and (vi) approved procedures for the assumption and assignment of designated executory contracts, including related objection deadlines and the date for submitting cure claims. In the event of a conflict between the terms of these Bidding Procedures and the terms of the Bidding Procedures Order, the terms of the Bidding Procedures Order shall control.

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), and (ii) if a stalking Horse Bidder is designated and after a confidentiality agreement has been executed and delivered to the Notice Parties (as defined below), the Stalking Horse Bidder Purchase Agreement, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtors' counsel: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone: (212) 837-6000, Email: katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery Meng, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com; and/or (b) the Debtors' investment banker: Intrepid Investment Bankers, LLC, 1221 Avenue of the Americas, 9th Floor, New York, New York, 10020, Attn: Lorie R. Beers, Carl Comstock, and Ana Alvarenga, Telephone: (917) 710-1099; Email: lbeers@intrepidib.com, ccomstock@intrepidib.com, and aalvarenga@intrepidib.com. Additionally, the Sale Motion and the exhibits thereto are available at the claims and noticing agent website at https://dm.epiq11.com/case/nuvogroup/info.

---

1.    Capitalized terms not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order and any exhibits thereto, and, if not defined therein, in the Sale Motion and any exhibits thereto.

## I.        Due Diligence

The Debtors will afford interested parties that have or put in place an executed, unexpired confidentiality agreement in form and substance acceptable to the Debtors and, at the Debtors' request, have supplied financial information that demonstrates such party's ability to submit a bid that complies with the requirements herein and the Bidding Procedures Order (each, a "Potential Bidder"), the opportunity to conduct reasonable due diligence, subject to parameters and restrictions that the Debtors deem appropriate.  The due diligence period shall extend through and include the Bid Deadline.

Neither the Debtors nor their advisors shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets or liabilities, the Debtors' contracts, or the Debtors to any person or entity (i) that is not a Potential Bidder or Qualified Bidder (as defined below), (ii) that is not in compliance with the requirements set forth herein and in the Bidding Procedures Order or (iii) after the Bid Deadline (as defined below).

## II.       Bid Deadline

All Potential Bidders must deliver bids for the Purchased Assets (each a "Bid"), **so as to be received on or before 5:00 p.m. (prevailing Eastern Time), on November 26, 2024** (the "Bid Deadline"), to the Debtors' investment banker: Intrepid Investment Bankers, LLC, 1221 Avenue of the Americas, 9th Floor, New York, New York, 10020, Attn: Lorie R. Beers, Carl Comstock, and Ana Alvarenga, Telephone: (917) 710-1099; Email:  lbeers@intrepidib.com, ccomstock@intrepidib.com, and aalvarenga@intrepidib.com, with copies provided contemporaneously to (a) the Debtors' counsel: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone: (212) 837-6000, Email: katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery Meng, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com; and (b) counsel to the DIP Lender, Potter Anderson & Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19801, Attn:  Jeremy W. Ryan, Esq., Telephone: (302) 984-6108, Email: jryan@potteranderson.com (collectively, the "Notice Parties").

All Potential Bidders seeking to serve as a Stalking Horse Bidder must deliver bids to serve as a Stalking Horse Bidder to the Notice Parties **by no later than October 25, 2024 on or before 5:00 p.m. (prevailing Eastern Time)**.

## III.      Qualified Bidder Requirement

In order to qualify to submit a Qualified Bid (as defined below) and participate in the Auction, each Potential Bidder must: (i) deliver to the Notice Parties the most current audited (if available) and the latest unaudited financial statements and/or such other financial information evidencing the Potential Bidder's ability to (a) close the Sale within the time prescribed in the Bidding Procedures Order and (b) provide adequate assurance of future performance to the Contract Counterparties of contracts or leases to be assumed and assigned to the Potential Bidder.

In addition, if the Potential Bidder is an entity formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, the Potential Bidder must deliver to the Notice Parties current audited (if available) and the latest unaudited financial statements and/or such other relevant financial information as may be requested by the Debtors of each equity holder of such Potential Bidder,  evidencing the Potential Bidder's ability to (x) close the Sale within the time prescribed in the Bidding Procedures Order and Stalking Horse Bidder Purchase Agreement and (y) provide adequate assurance of future performance to the Contract Counterparties of contracts or leases to be assumed and assigned to the Potential Bidder.

The Debtors shall determine whether a Potential Bidder has complied with the foregoing requirements and has qualified to submit a Qualified Bid and participate in the Auction (each such Potential Bidder, a "Qualified Bidder"), and the Debtors shall provide prompt written notice of such determination to any such Potential Bidder; provided, that, the Debtors may waive any of the foregoing requirements in the Debtors' reasonable discretion.

The Debtors may request additional information from a Potential Bidder or Qualified Bidder at any time prior to the Sale closing in order to evaluate such bidder's ability to bid at the Auction over and above its initial offer in its Qualified Bid, consummate the Sale, and fulfill its obligations in connection therewith.  Each Potential Bidder or Qualified Bidder shall be obligated to provide such additional information within two business days of receiving such requests as a condition to participating further in the Auction and Sale processes; provided, however, that additional information requests made by the Debtors during the Auction in connection with a Qualified Bidder's ability to continue to bid at the Auction over and above its initial offer in its Qualified Bid shall, in the Debtors' reasonable discretion, be satisfied prior to such Qualified Bidder submitting any further bids at the Auction.  Failure to comply with such requests shall disqualify such Potential Bidder or Qualified Bidder.

For purposes of these Bidding Procedures, the Stalking Horse Bid, if any, shall be deemed to constitute a Qualified Bid and the Stalking Horse Bidder, if any, shall be deemed to be a Qualified Bidder.

## IV.    Requirements of a Qualified Bid

A "Qualified Bid" shall mean a bid submitted by a Qualified Bidder that:

A.    is made in writing;

B.    is submitted prior to the Bid Deadline;

C.    designates the Debtors' assets that the Qualified Bidder proposes to purchase;

D.    designates the Debtors' liabilities the Qualified Bidder proposes to assume;

E.    designates the contracts and leases of the Debtors the Qualified Bidder proposes to purchase through assumption and assignment or transfer;

F.    includes a binding, definitive, and fully executed asset purchase agreement which (a) if, a Stalking Horse Bidder has been designated, shall be in form and substance substantially similar to the Stalking Horse Bidder Purchase Agreement, and marked to reflect only those changes required as a condition of such Qualified Bidder's closing of the Sale, (b) except for a Stalking Horse Bidder, shall not contain any provisions entitling such Qualified Bidder to any break-up fee, expense reimbursement or other bid protections of any kind (c) waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the bid or participation in any auction, and (d) if a Stalking Horse Bidder has been designated, otherwise contains terms and conditions that are more favorable to the Debtors than those set forth in the Stalking Horse Bidder Purchase Agreement. An asset purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures, shall be referred to herein as a "<u>Qualified Bidder Purchase Agreement</u>".

G.    to the extent a bid is for assets that are subject to a Stalking Horse Bid, the value of the purchase price included in such bid must equal at least the value of the purchase price set forth in such Stalking Horse Bid <u>plus</u> the amount of the Bid Protections, if any, provided to such Stalking Horse Bidder, as set forth in the Stalking Horse Bidder Notice describing such Stalking Horse Bid, <u>plus</u> the Overbid Amount (as defined in the Bidding Procedures);

H.    the DIP Lender shall be entitled to credit bid all or a portion of its claims for its collateral (each such bid, a "<u>Credit Bid</u>") in accordance with section 363(k) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") up to the full amount of the DIP Obligations under the DIP Facility (each as defined in the Second Interim DIP Order (D.I. 143)),; <u>provided</u>, that a Credit Bid may only be applied to reduce the cash consideration for the Debtors' assets in which the DIP Lender holds a perfected security interest;

I.    unless a bid includes a Credit Bid, provides that the purchase price shall be paid in full in cash and/or non-cash consideration at the closing of the Sale; <u>provided</u>, <u>however</u>, that the value for such non-cash consideration shall be determined by the Debtors;

J.    provides for the payment of cash consideration not less than the amount necessary on the closing date of the Sale to pay to the DIP

Lender any and all amounts outstanding (including, without limitation, interest, default interest (as applicable, fees, expenses and other amounts) under the DIP Facility; plus cash equal to the amount of any transaction fee due to the Debtors' investment banker, Intrepid, that would be payable on account of the consummation of a sale based on the value of such bid;

K.    provides a good faith cash deposit (the "Good Faith Deposit") equal to 10% of the value of the Qualified Bidder's total proposed purchase price. The Good Faith Deposit shall be paid by wire transfer to a segregated account at an escrow agent to be designated by the Debtors, pursuant to instructions to be provided upon request by a Qualified Bidder. The Debtors reserve the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders. Such Qualified Bidder's Qualified Bidder Purchase Agreement shall provide that the Good Faith Deposit shall be forfeited to the Debtors in the event of a breach thereof (after giving effect to any applicable notice and cure periods) by such Qualified Bidder;

L.    provides that such bid shall be open and irrevocable until the earlier of:

1.    such bid being determined by the Debtors not to be a Qualified Bid;

2.    if such bid is not chosen by the Debtors at the Auction to be the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures), the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder;

3.    if such bid is chosen by the Debtors to be the Successful Bid, the date which is the earlier to occur of (i) closing of the Sale to such Successful Bidder and (ii) the Outside Closing Date, provided that if the Successful Bidder fails to close by the Outside Closing Date, the Successful Bidder shall forfeit its Good Faith Deposit, and if the Successful Bidder is a Stalking Horse Bidder, shall also forfeit any Bid Protections;

4.    if such bid is chosen by the Debtors to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) ten business days following the Outside Closing Date, provided that if the Successful Bidder fails to close prior to the Outside Closing Date, (x) the Back-Up Bid shall continue to remain open and

irrevocable, (y) the Back-Up Bidder shall be deemed to be the Successful Bidder, and (z) the Back-Up Bidder shall close on the Sale within ten business days of becoming the Successful Bidder; provided, however, that notwithstanding (ii) above, the Debtors may extend the period in which the Back-Up Bid remains open and during which the Back-Up Bidder is required to close; provided further that if the Back-Up Bidder is designated as the Successful Bidder and fails to close within the time provided herein, the Back-Up Bidder shall forfeit its Good Faith Deposit, and if the Back-Up Bidder is a Stalking Horse Bidder, shall also forfeit any Bid Protections;

M.    (i) includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct all due diligence regarding the Debtors' assets prior to submitting its bid and that it has relied solely upon its own independent review, investigation and inspection of any documents and assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;

N.    does not contain any financing contingencies or any other contingencies;

O.    provides evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;

P.    confirms that the Sale will be completed in accordance with the timing set forth in the Bidding Procedures;

Q.    if the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, provides evidence which is reasonably satisfactory to the Debtors, from each of the equity holders of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body);

R.    certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtors may facilitate submission of a Qualified Bid by one or more unrelated Qualified Bidders;

S.    is not conditioned on the receipt of any third party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed reasonable, as determined by the Debtors; and

T.    identifies the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction.

All Qualified Bids will be considered by the Debtors; bids other than Qualified Bids will not be considered.  The Debtors may evaluate bids on any grounds, including, but not limited to, any delay, additional risks (including closing risks), and added costs to the Debtors.

Additionally, notwithstanding the foregoing, the Debtors reserve their rights to waive any of the aforementioned requirements and consider any Potential Bidder to be a Qualified Bidder.

## V.    Receipt of Qualified Bids

If the Debtors receive only one Bid that is a Qualified Bid, the Debtors, in their business judgment, may (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) such Qualified Bid is the Successful Bid and (b) the Auction is cancelled, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

If the Debtors receive two or more Qualified Bids, the Debtors will conduct an auction (the "Auction").

## VI.    Stalking Horse and Bid Protections

The Debtors are authorized, but not obligated, pursuant to the Bidding Procedures Order, to designate a Qualified Bidder as a stalking horse bidder (the "Stalking Horse Bidder") in the Debtors' business judgment, without the necessity of a further hearing or authorization of the Court (any Qualified Bid submitted by a Stalking Horse Bidder, a "Stalking Horse Bid").

If required by the terms of the Stalking Horse Bid, the Debtors, upon the designation of a Stalking Horse Bidder, may, in the Debtors' business judgment, seek Bankruptcy Court approval on an expedited basis to agree to (i) pay the Stalking Horse Bidder a percentage of the purchase price set forth in its Stalking Horse Purchase Agreement (but not as such purchase price may be increased at the Auction) for the Purchased Assets as a break-up fee (the "Break-up Fee"); and (ii) reimburse the Stalking Horse Bidder in a certain amount for its actual and

documented third-party fees and costs incurred in connection with its Qualified Bid (the "Expense Reimbursement", and together with the Break-up Fee, the "Bid Protections"), in the event the Stalking Horse Bidder is not the Successful Bidder at the Auction, if the Debtors determine in the exercise of their business judgment, that granting the Bid Protections is in the best interests of the Debtors' estates and creditors.  To the extent the Debtors designate a Stalking Horse Bidder in the Debtors' business judgment, the Debtors shall within two days thereof file a notice of such determination with the Bankruptcy Court (the "Stalking Horse Bidder Notice") and seek Bankruptcy Court approval of any Bid Protections on an expedited basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Stalking Horse Purchase Agreement.  Competing Qualified Bidders must then use the Stalking Horse Bidder's Qualified Bidder Purchase Agreement as the basis to submit their Qualified Bids.  The Stalking Horse Bidder Notice shall also include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

**VII.    Auction Process**

   **The Auction, if any, will take place at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, on <u>December 4, 2024, commencing at 10:00 a.m. (prevailing Eastern Time)</u>.**

   If the Debtors proceed with the Auction, the following rules and procedures shall apply (subject to Article XII hereof):

   A. Prior to the Auction, the Debtors will select the highest Qualified Bid they have received to serve as the opening bid at the Auction, which may be a Stalking Horse Bid (the "Baseline Bid");

   B. As soon as practicable and prior to the commencement of the Auction, the Debtors will provide all Qualified Bidders (including by email or telefax) with a written notice identifying which Qualified Bid has been chosen as the Baseline Bid;

   C. Each Qualified Bidder, and its representatives and advisors, who has submitted a Qualified Bid shall be eligible to attend and make any subsequent bids at the Auction. Each Qualified Bidder must appear in person or through a duly authorized representative who has the legal authority to bind the Qualified Bidder at the Auction (and who must provide the Debtors with written evidence of such authority prior to the Auction which is reasonably satisfactory to the Debtors), or they shall not be entitled to attend or participate at the Auction;

   D. All creditors of the Debtors, together with their respective professional advisors and representatives, may attend the Auction. **At least one business day prior to the Auction, parties who intend to attend the Auction must provide counsel for the Debtors written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

E.  All Qualified Bids shall be placed on the record at the Auction, which shall be transcribed, videotaped or audiotaped in the reasonable discretion of the Debtors;

F.  Each Qualified Bidder will have the right to make additional modifications or improvements to its Qualified Bidder Purchase Agreement, that make its bid higher or otherwise better, at any time, prior to, or during, the Auction which are consistent with these Bidding Procedures and the Bidding Procedures Order;

G.  Bidding shall commence at the Baseline Bid.  The first overbid at the Auction (the "Minimum Initial Overbid") shall be in an amount not less than (i) the amount of the Baseline Bid plus (ii) $100,000 (the "Overbid Amount").  Thereafter, a Qualified Bidder may increase its Qualified Bid in any amount as long as each subsequent bid (each, a "Subsequent Overbid") exceeds the previous highest bid by at least $100,000 of additional cash and/or non-cash consideration; provided, however, that the value for such non-cash consideration shall be determined by the Debtors.

H.  Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy, or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid;

I.  The Auction will continue with each Qualified Bidder submitting additional Subsequent Overbids in each round of bidding, after being advised of the terms of the then highest bid and the identity of the Qualified Bidder who made such bid, in each round of bidding.  Each Qualified Bidder must bid in each round or it may be disqualified from further bidding at the Auction;

J.  The Auction will conclude when the Debtors determine that they have received the highest or otherwise best offer from a Qualified Bidder (the "Successful Bid").  The next highest or otherwise best Qualified Bid submitted at the Auction, as determined by the Debtors, shall be the "Back-Up Bid".  The Qualified Bidder submitting the Successful Bid shall be the "Successful Bidder" and the Qualified Bidder submitting the Back-Up Bid shall be the "Back-Up Bidder".  In making these decisions, the Debtors may consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the value of Assumed Liabilities and contracts or leases the Qualified Bidder proposes to assume; (iv) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction and the timing thereof, (v) indicia of good faith on the part of the Qualified Bidder, (vi) the terms and conditions of the Qualified Bidder Purchase Agreement, (vii) the

requirements as to the assumption and assignment or transfer of contracts and leases, (viii) the ability to provide adequate assurance of future performance to the Contract Counterparties to contracts and leases being assumed and assigned, and (ix) the net benefit to the Debtors' estates;

K.    The Debtors and the Successful Bidder shall enter into a definitive agreement based upon the Successful Bidder's Qualified Bidder Purchase Agreement previously submitted by the Successful Bidder and will make all related revisions to the proposed order approving the Sale to the Successful Bidder, in each case to reflect the results of the Auction;

L.    All Qualified Bids shall remain open and irrevocable for the periods set forth in Article IV(L) above;

M.    Following the Auction, the Debtors will promptly file with the Bankruptcy Court a supplement (the "Supplement") that will inform the Bankruptcy Court of the results of the Auction.  The Supplement will identify the Successful Bidder as the proposed purchaser of the Purchased Assets and attach (i) the proposed order approving the Sale to the Successful Bidder, along with a redline of the Sale Order to the most version previously filed with the Court, if any, (ii) a copy of the Qualified Bidder Purchase Agreement entered into by the Debtors and the Successful Bidder following the Auction, and (iii) any additional information or documentation relevant to the Successful Bid.  The Supplement will also identify the Back-Up Bidder and the Back-Up Bid.  The Debtors will file the Supplement on the Court's docket for these chapter 11 cases as promptly as is reasonably practicable prior to the Sale Hearing, but will not be required to serve the same on any parties in interest in these chapter 11 cases;

N.    Following the close of the Auction, if the Successful Bidder shall fail to close the Sale because of a breach on the part of the Successful Bidder (after giving effect to any applicable cure periods or waivers), (i) the Back-Up Bidder shall automatically, and without the need for any action by the Debtors or the Bankruptcy Court, be deemed to be the Successful Bidder, (ii) the Back-Up Bid shall be deemed to be the Successful Bid, and (iii) the Debtors and Back-Up Bidder shall close the Sale within ten business days following the date the Back-Up Bidder becomes the Successful Bidder, without the necessity of obtaining any further order of the Bankruptcy Court; and

O.    The Debtors reserve the right, in their business judgment, to make one or more adjournments to, or cancel, the Auction or to modify these Bidding Procedures to, among other things: (i) facilitate discussions between the Debtors, on the one hand, and one or more

10

Qualified Bidders, on the other hand, (ii) allow the Debtors and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional documentation or information as the Debtors in their business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids.

## VIII.   Sale Hearing and Closing

The hearing to approve the Sale (the "Sale Hearing") shall take place in the courtroom of the Honorable Mary F. Walrath in the United States Bankruptcy Court for the District of Delaware on **December 9, 2024, at    :    .m. (prevailing Eastern Time)**. Following the conclusion of the Auction, with the consent of the Successful Bidder, or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice except by an announcement of the adjourned date at the Sale Hearing or a notice on the docket for these chapter 11 cases. At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval. The closing on the Sale with the Successful Bidder shall occur not later than **December 13, 2024**.

## IX.   Procedures for Contracts and Leases

A.   Attached as **Exhibit 3** to the Bidding Procedures Order is the form of *Notice of Proposed (I) Assumption and Assignment or Transfer of Designated Executory Contracts and Unexpired Leases and (II) Cure Amounts* (the "Contracts Notice").

B.   Attached as **Exhibit A** to the Contracts Notice that was filed with the Bankruptcy Court after entry of the Bidding Procedures Order is a schedule of all contracts and leases the Debtors propose to assume and assign or transfer to the Successful Bidder listing the counterparties to such contracts or leases and the amount, if any, proposed to be paid to cure any defaults under such contracts or leases pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). In conjunction with its Qualified Bid, each Qualified Bidder shall designate which of such contracts or leases it wishes to have the Debtors assume and assign or transfer and which it does not desire the Debtors to assume and assign. To the extent any contracts are determined not to be executory contracts or leases are determined not to be unexpired under and for purposes of section 365 of the Bankruptcy Code, the Debtors shall instead assign and transfer to the Successful Bidder all of the Debtors' right, title and interest in, to and under such contracts and leases pursuant to section 363 of the Bankruptcy Code. Prior to the effectiveness of any assignment of an executory contract or unexpired lease, the Successful Bidder shall, at its own cost, in addition to the purchase price, cure monetary defaults under such contract or lease, if any, which are capable of being cured unless any counterparty agrees to a different treatment of such cure amounts. The Successful Bidder shall have no liability for any damages arising from rejection, breach, or termination of

11

any contracts or leases which it has not designated for assumption and assignment or transfer. The Debtors will provide information regarding adequate assurance of future performance to the relevant counterparties to executory contracts and unexpired leases to be assumed and assigned by each Qualified Bidder as soon as practicable after the Bid Deadline. The Debtors will also provide the identity of the Successful Bidder to the relevant counterparties to contracts and leases to be assumed and assigned by the Successful Bidder as soon as practicable after the conclusion of the Auction.

C.  Objections to the assumption and assignment or sale and transfer of the Debtors' rights and interests of and in any of the contracts and leases must: (i) be made in writing and filed on the Court's docket for these chapter 11 cases by **December 5, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Contracts Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount (attaching any supporting documentation such as invoices or cure calculations) alleged by such counterparty, and include complete contact information for such counterparty (including address, telephone number, and email address), (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the following, so as to be actually received by them on or before 5:00 p.m. (prevailing Eastern Time) on the Contracts Objection Deadline:

▪  Counsel to the Debtors: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone: (212) 837-6000, Email: katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery Meng, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com;

▪  Counsel to the DIP Lender, Potter Anderson & Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19801, Attn: Jeremy W. Ryan, Esq., Telephone: (302) 984-6108, Email: jryan@potteranderson.com;

▪  The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Esq., Telephone: (302) 573-6026, Email: timothy.fox@usdoj.gov;

▪  Counsel to each Qualified Bidder (contact information should be obtained from the Debtors' counsel (contact details are set forth above);

12

D.   Any counterparty to a contract or lease that fails to file an Contracts Objection by the Contracts Objection Deadline (i) shall be deemed to have forever waived and released any right to assert an Contracts Objection, (ii) shall have consented to the assumption and assignment of, or sale and transfer of, the Debtors' right, title and interest in, to and under, their contract or lease, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the contract or lease, (b) seeking additional amounts arising under the contract or lease prior to the closing from the Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption and assignment of its contract or lease to the Successful Bidder or Back-Up Bidder, as the case may be.

E.   If a timely Contracts Objection is filed and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at the Sale Hearing, or at such later date as the Debtors may set, subject to Court availability. Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the contract or lease underlying such objection shall be deemed to have been assumed and assigned or transferred, as the case may be, to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

F.   Any Qualified Bidder may add or remove contracts and leases from its corresponding schedules at any time up to the conclusion of the Auction, and the Successful Bidder and Back-Up Bidder may add (but not remove) to its corresponding schedules at any time after the Auction but prior to the closing of the Sale. If the Successful Bidder and/or Back-Up Bidder shall have done so, the Debtors shall file an amended or supplemental Contracts Notice adding such contracts or leases thereto within two business days of being informed of such a determination and provide notice thereof to each affected counterparty. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtors may file a motion to reject such an unassigned contract lease, or sell or transfer such unassigned contract or lease in their reasonable discretion to the extent permitted by applicable law.

G.   Objections to the proposed assumption and assignment or transfer from any counterparty to an additional contract or lease must: (i) be made in writing and filed on the Court's docket for these chapter 11 cases no later than ten calendar days after the Debtors have sent notice to such counterparty of its intention to assume and assign such additional contract, (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount (including any supporting documentation such as invoices or cure calculations) alleged by such counterparty, and include complete contact information for such counterparty, (iii) comply with the Bankruptcy Code,

the Bankruptcy Rules, and the Local Rules, and (iv) be served upon counsel to (a) the Debtors and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from counsel to the Debtors), so as to be actually received by them on or before 5:00 p.m. (prevailing Eastern Time) on the applicable objection deadline set forth in the supplemental Contracts Notice.

H.      Any counterparty to a contract or lease listed on any supplemental Contracts Notice that fails to file an objection on or before the applicable objection deadline (i) shall be deemed to have forever waived and released any right to assert an objection and (ii) shall have consented to the assumption and assignment of, or sale and transfer of, the Debtors' rights and interests in, as the case may be, such contract or lease, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Contracts Notice with respect to its contract or lease, (b) seeking additional amounts arising under its contract or lease at any time from the Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption and assignment of its contract or lease to the Successful Bidder or the Back-Up Bidder, as the case may be.

## X.      Failure to Consummate Purchase

Following the close of the Auction, if the Successful Bidder fails to consummate the Sale, and such failure is the result of a breach by the Successful Bidder of its obligations under its Qualified Bidder Purchase Agreement, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and the Debtors shall have the right to pursue all of their other rights and remedies against the Successful Bidder (and its guarantors, if any). If the Back-Up Bidder is later designated by the Debtors to be the Successful Bidder, the foregoing shall be read to apply to the Back-Up Bidder (and its guarantors, if any) in its capacity as the Successful Bidder.

## XI.     Good Faith Deposits

The Debtors shall return the Good Faith Deposits (including interest, if any, as specified in the applicable escrow agreement) of all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five business days following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder.

Subject to Article X, the Good Faith Deposit of the Successful Bidder (including interest, if any, as specified in the applicable escrow agreement) shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale.

The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder (including interest, if any, at the rate specified in the applicable escrow agreement) within five business days following the date its bid is no longer required to be open and irrevocable as set forth in Article IV(L). If the Back-Up Bidder is subsequently designated by the Debtors as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale within the

time period set forth in Article IV(L), the Back-Up Bidder shall be deemed to be the Successful Bidder and the Debtors and the Back-Up Bidder shall close the Sale within ten business days of the Back-Up Bidder becoming the Successful Bidder.  Subject to Article X, the Good Faith Deposit of the Back-Up Bidder shall be held in escrow until such closing and applied (with any interest accrued thereon as specified in the escrow agreement) to their obligations at the closing of the Sale.  The Debtors reserve all of their rights regarding the return of all Good Faith Deposits, and the failure by the Debtors to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s).

## XII.    Reservation of Rights

The Debtors are authorized to amend and modify these Bidding Procedures, to impose additional terms and conditions on the proposed Auction and Sale of the Purchased Assets and assumption of the Assumed Liabilities (including the assumption and assignment of contracts and leases), to account for any designation of a Stalking Horse Bidder, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Debtors' reasonable business judgment, such modifications would be in the best interest of the Debtors' estates and promote an open and fair sale Auction and Sale process including with respect to any Stalking Horse Bid and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of the Bidding Procedures Order.  Notwithstanding anything herein to the contrary, the Debtors may consider and accept bids from a single Qualified Bidder or from multiple Qualified Bidders for less than all or substantially all of the Purchased Assets.

## XIII.    Fiduciary Out

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' board of directors determines that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or fiduciary obligations under applicable law.

**<u>EXHIBIT 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **NUVO GROUP USA, INC.,** *et al.*,[1] | Case No. 24-11880 (MFW) |
| **Debtors.** | (Jointly Administered) |

## NOTICE OF PROPOSED SALE OF ALL OR
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE
## AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED
## LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO

### PLEASE TAKE NOTICE OF THE FOLLOWING:

On October 11, 2024, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Sale Motion)" with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtors' assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases, and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) authorizing the Debtors to designate a Stalking Horse Bidder and seek expedited approval of bid protections, if any, and (f) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are:  Holdco Nuvo Group D.G Ltd. (5756); Nuvo Group Ltd. (3811); and Nuvo Group USA, Inc. (2727).  The Debtors' mailing address for purposes of these Chapter 11 Cases is 300 Witherspoon Street, Suite 201, Princeton, New Jersey 08542.

2. Capitalized terms not defined herein shall have the meaning ascribed to them in the Sale Motion and the Bidding Procedures, as applicable.

I.       **Bidding Procedures; Stalking Horse Bidder**

On October [●], 2024, the Court entered the Bidding Procedures Order (D.I. [●]), thereby approving the Bidding Procedures Relief and the Debtors' ability to designate a Stalking Horse Bidder in the Debtors' business judgment.  Upon designating a Stalking Horse Bidder, the Debtors may seek expedited relief from the Court to obtain approval of any Bid Protections for the Stalking Horse Bidder.  In order for a Potential Bidder's bid to be considered to participate in the Auction, **it must comply with the Bidding Procedures, including that its bid must be delivered, so as to be received on or before 5:00 p.m. (prevailing Eastern Time), on November 26, 2024 (the "Bid Deadline")**, to the Debtors' investment banker: Intrepid Investment Bankers, LLC, 1221 Avenue of the Americas, 9th Floor, New York, New York, 10020, Attn: Lorie R. Beers, Carl Comstock, and Ana Alvarenga, Telephone: (917) 710-1099; Email:  lbeers@intrepidib.com, ccomstock@intrepidib.com, and aalvarenga@intrepidib.com, with copies provided contemporaneously to (a) the Debtors' counsel: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone:  (212)  837-6000,  Email:  katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery  Meng,  Telephone:  (302)  658-9200,  Email:  dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com; and (b) counsel to the DIP Lender, Potter Anderson & Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19801, Attn:  Jeremy W. Ryan, Esq., Telephone: (302) 984-6108, Email: jryan@potteranderson.com (collectively, the "Notice Parties").

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder, or (ii) a copy of the Stalking Horse Bidder Purchase Agreement, if any, as applicable, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtors' counsel: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman,  Telephone:  (212)  837-6000,  Email:  katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery  Meng,  Telephone:  (302)  658-9200,  Email:  dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com; and/or (b) the Debtors' investment banker: Intrepid Investment Bankers, LLC, 1221 Avenue of the Americas, 9th Floor, New York, New York, 10020, Attn: Lorie R. Beers, Carl Comstock, and Ana Alvarenga, Telephone: (917) 710-1099;  Email:  lbeers@intrepidib.com,  ccomstock@intrepidib.com,  and aalvarenga@intrepidib.com. Additionally, the Sale Motion and the exhibits thereto are available at the claims and noticing agent website at https://dm.epiq11.com/case/nuvogroup/info, or those with  PACER  accounts  may  download  copies  from  the  Court's  website  at https://ecf.deb.uscourts.gov/.  In order for Potential Bidders to obtain access to the Debtors' dataroom, each Potential Bidder must first sign and deliver a confidentiality agreement to the Debtors and provide certain financial data, which must be acceptable to the Debtors.  Please refer to the Bidding Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

## II.      Sale Hearing and Closing

The Sale Hearing is scheduled for **December [ ], 2024, at [ ]:00 _.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, 5th Floor, Courtroom #4, Wilmington, Delaware 19801, before the Honorable Mary F. Walrath, Chief United States Bankruptcy Judge. The Sale Hearing is being held to approve the highest or otherwise best offer received for the Purchased Assets at the Auction, which, if any, will take place at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004, on **December 4, 2024, commencing at 10:00 a.m. (prevailing Eastern Time)**.  The Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of the Debtor's Chapter 11 Cases or without prior notice by an announcement of the adjourned date at the Sale Hearing. The closing on the Sale with the Successful Bidder shall occur not later than December 13, 2024.

**THE DEADLINE TO OBJECT TO THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS <u>FREE AND CLEAR OF ALL ENCUMBRANCES</u> (OTHER THAN THE ASSUMED LIABILITIES) TO THE SUCCESSFUL BIDDER (EACH, A "<u>SALE OBJECTION</u>") IS DECEMBER 5, 2024, at 5:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>SALE OBJECTION DEADLINE</u>").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by ( (a) the Debtors' counsel: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone: (212) 837-6000, Email: katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S. Miller, and Avery Meng, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com; (b) counsel to the DIP Lender, Potter Anderson & Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19801, Attn:  Jeremy W. Ryan, Esq., Telephone: (302) 984-6108, Email: jryan@potteranderson.com, and (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Esq., Telephone: (302) 573-6026, Email: timothy.fox@usdoj.gov.

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline (i) shall be deemed a consent to the Sale to the Successful Bidder and the other relief requested in the Sale Motion **including, without limitation, consent to the Sale of the Debtors' assets free and clear of any lien, claim, encumbrance, or other interest of such person or entity**, and (ii) shall be a bar to the assertion, at the Sale Hearing or thereafter, to the Sale Motion, the Auction, the sale of the Purchased Assets (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all Encumbrances, other than the Assumed Liabilities).

### III.    Debtors' Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment or transfer of the contracts and leases of the Debtors.  In accordance with the Bidding Procedures Order, individual notices setting forth the specific contracts or leases to be assumed by the Debtors and assigned to the Successful Bidder, or sold and transferred to the Successful Bidder, and the proposed Cure Amounts for such contracts will be given to all counterparties to the contracts or leases.  Such counterparties will be given the opportunity to object to the assumption and assignment, or sale and transfer, of a contract or lease and the proposed Cure Amount.

This Notice is subject to the full terms and conditions of the Bidding Procedures and the Bidding Procedures Order, which shall control in the event of any conflict.  The Debtors encourage all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.

Dated: October 11, 2024
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*

Derek C. Abbott (No. 3376)
Curtis S. Miller (No. 4583)
Clint M. Carlisle (No. 7313)
Avery Jue Meng (No. 7238)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
cmiller@morrisnichols.com
ccarlisle@morrisnichols.com
ameng@morrisnichols.com

-and-

**HUGHES HUBBARD & REED LLP**

Kathryn A. Coleman
Christopher Gartman
Jeffrey S. Margolin
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
katie.coleman@hugheshubbard.com
chris.gartman@hugheshubbard.com
jeff.margolin@hugheshubbard.com

*Counsel to the Debtors and Debtor-in-Possession*

**<u>EXHIBIT 3</u>**

**Assignment and Rejection Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **NUVO GROUP USA, INC., *et al.*,**[1] | Case No. 24-11880 (MFW) |
| **Debtors.** | (Jointly Administered) |

### NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OR
### TRANSFER OF DESIGNATED EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES AND (II) CURE AMOUNTS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On October 11, 2024, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Sale Motion)" with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtors' assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases, and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) authorizing the Debtors to designate a Stalking Horse Bidder and seek expedited approval of bid protections, if any, and (f) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.  On October [●], 2024, the Bankruptcy Court entered the Bidding Procedures Order (D.I. [●]), thereby approving the Bidding Procedures Relief and the Debtors' ability to designate a Stalking Horse Bidder in the Debtors' business judgment.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are:  Holdco Nuvo Group D.G Ltd. (5756); Nuvo Group Ltd. (3811); and Nuvo Group USA, Inc. (2727).  The Debtors' mailing address for purposes of these Chapter 11 Cases is 300 Witherspoon Street, Suite 201, Princeton, New Jersey 08542.

2.  Capitalized terms not defined herein shall have the meaning ascribed to them in the Sale Motion and the Bidding Procedures, as applicable.

## **CONTRACTS**

Attached hereto as **Exhibit A** is a schedule of all executory contracts and unexpired leases (collectively, the "Contracts") the Debtors propose to assume and assign or transfer to the Successful Bidder (which may be a Stalking Horse Bidder, if applicable), listing the counterparties to such contracts (the "Contract Counterparties") and the amount, if any, proposed to be paid to cure any monetary defaults under the Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). The Successful Bidder reserves the right to revise this schedule in accordance with its Qualified Bidder Purchase Agreement and Bidding Procedures at any time prior to the closing on the Purchased Assets.

To the extent that any Contract is determined by an order of the Bankruptcy Court, or as between the Debtors and the applicable Contract Counterparty, not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, the Debtors shall instead sell, assign, and transfer to the Successful Bidder all of the Debtors' right, title and interest in, to and under such Contracts pursuant to section 363 of the Bankruptcy Code. Prior to any such sale and transfer of a Contract, the Successful Bidder shall cure any monetary defaults or pay other amounts due under such Contract which are capable of being cured or paid as if such Contract had been subject to section 365 of the Bankruptcy Code.

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE PROPOSED CURE AMOUNTS NO LATER THAN **DECEMBER 5, 2024, AT 5:00 P.M. (PREVAILING EASTERN TIME).**

Objections to the assumption and assignment or transfer of any of the Contracts (including the Cure Amounts listed on **Exhibit A**) (a "Contract Objection") must: (i) be made in writing and filed on the Court's docket for these chapter 11 cases no later than **December 5, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Contract Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount (attaching any supporting documentation such as invoices or cure calculations) alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iv) be served on the following, so as to be actually received by them on or before 5:00 p.m. (prevailing Eastern Time) on the Contract Objection Deadline:

- ▪ Counsel to the Debtors: (i) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Kathryn A. Coleman and Christopher Gartman, Telephone: (212) 837-6000, Email: katie.coleman@hugheshubbard.com, chris.gartman@hugheshubbard.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., Suite 1600, Wilmington, Delaware 19801, Attn: Derek C. Abbott, Curtis S.

Miller, and Avery Meng, Telephone: (302) 658-9200, Email: dabbott@morrisnichols.com; cmiller@morrisnichols.com ameng@morrisnichols.com;

- Counsel to the DIP Lender, Potter Anderson & Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19801, Attn: Jeremy W. Ryan, Esq., Telephone: (302) 984-6108, Email: jryan@potteranderson.com;

- The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Esq., Telephone: (302) 573-6026, Email: timothy.fox@usdoj.gov;

- Counsel to each Qualified Bidder (contact information should be obtained from the Debtors' counsel (contact details are set forth above)); and

If you file a Contract Objection satisfying the requirements herein, the Debtors and the Successful Bidder or Stalking Horse Bidder, as applicable, will confer with you in good faith to attempt to resolve any such Contract Objection without Bankruptcy Court intervention. If the applicable parties determine that the Contract Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such Contract Objection at a hearing to be held (i) on December 9, 2024, or (ii) such other date designated by the Bankruptcy Court.

If the Successful Bidder or Back-Up Bidder, in accordance with the Bidding Procedures, identifies additional contracts or leases that it wishes to add to the Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Contract from the Contracts and Cure Schedule), the Debtors shall, within two business days of the Successful Bidder or Back-Up Bidder making such a determination, send a supplemental Contract Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Contracts and Cure Schedule. To the extent a contract or lease is not assumed and assigned or transferred to the Successful Bidder, the Debtors will, in their sole discretion, reject such an unassigned contract or lease *via* separate motion or such other action as may be permitted by law. In no event will the Successful Bidder be responsible for any unassigned contracts or leases.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Contract Objection") must: (i) be made in writing and filed on the Court's docket for these chapter 11 cases no later than ten business days after the Debtors have sent notice to such Contract Counterparty of its intention to assume and assign such Additional Contract, (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount (attaching any supporting documentation such as invoices or cure calculations) alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and (iv) be served upon counsel to (a) the Debtors and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from counsel to the Debtors), so as to be actually received by them on or before 5:00 p.m. (prevailing Eastern Time) on the applicable objection deadline set forth in the notice.

If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before five business days from the timely filing of the Additional Contract Objection or (ii) such other date designated by the Bankruptcy Court. Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned, or transferred, as the case may be, to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE A CONTRACT OBJECTION AS PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, AN OBJECTION TO A CURE AMOUNT (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT A CONTRACT OBJECTION, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR TRANSFER, OF THE DEBTOR'S RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, SUCH CONTRACT ON THE TERMS SET FORTH IN THIS CONTRACT NOTICE AND ANY PURCHASE AGREEMENT TO BE ENTERED INTO WITH THE SUCCESSFUL BIDDER (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR TRANSFER, OF THE DEBTORS' RIGHT, TITLE AND INTEREST IN, TO AND UNDER, THE CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT AND (III) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER, OR THE BACK-UP BIDDER, AS THE CASE MAY BE, THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT, OR TRANSFER, MUST BE SATISFIED, UNDER SUCH CONTRACT.**

The Debtors' assumption and assignment, or transfer, of a Contract is subject to approval by the Bankruptcy Court, and consummation of the closing of the Sale. If there is no closing, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

The inclusion of any document on the list of Contracts shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Contract Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Sale Order (e.g., the sale of the Purchased Assets by the Debtors to the Successful Bidder free and clear of all Encumbrances other than Assumed Liabilities). Parties wishing to object to the other relief requested in the Sale Motion (excluding the Bidding Procedures) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Bidding Procedures Order.  Parties in interest are encouraged to monitor the electronic court docket.

This Notice is subject to the full terms and conditions of the Bidding Procedures and Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

| | |
|---|---|
| Dated: October 11, 2024<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>*/s/ Draft*<br>Derek C. Abbott (No. 3376)<br>Curtis S. Miller (No. 4583)<br>Clint M. Carlisle (No. 7313)<br>Avery Jue Meng (No. 7238)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>dabbott@morrisnichols.com<br>cmiller@morrisnichols.com<br>ccarlisle@morrisnichols.com<br>ameng@morrisnichols.com<br><br>  -and-<br><br>**HUGHES HUBBARD & REED LLP**<br><br>Kathryn A. Coleman<br>Christopher Gartman<br>Jeffrey S. Margolin<br>One Battery Park Plaza<br>New York, New York 10004-1482<br>Telephone: (212) 837-6000<br>katie.coleman@hugheshubbard.com<br>chris.gartman@hugheshubbard.com<br>jeff.margolin@hugheshubbard.com<br><br>*Counsel to the Debtors and Debtor-in-Possession* |

# **Exhibit A**
## **(to Contracts Notice)**

## **Contracts**

| No. | Contract/Lease Party | Contract Counterparty | Contract/Lease Title | Date of Entry | Cure Amount |
|-----|---------------------|----------------------|---------------------|---------------|-------------|
| 1 | [X] | [X] | [X] | [X] | $[X] |
| 2 | [X] | [X] | [X] | [X] | $[X] |
| 3 | [X] | [X] | [X] | [X] | $[X] |