IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| NUVO GROUP USA INC., *et al.*, | . | Case No. 24-11880 (MFW) |
| | . | (Jointly Administered) |
| Debtors. | . | |
| | . | |
| | . | October 8, 2024 |
| . . . . . . . . . . . . . . . . . . | . | 3:00 p.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARY F. WALRATH
<u>UNITED STATES BANKRUPTCY JUDGE</u>

Appearances:

| | |
|---|---|
| Counsel Debtors: | Morris Nichols Arsht & Tunnel, LLP |
| | BY: DEREK C. ABBOTT, ESQ. |
| | 1201 North Market Street, Suite 1600 |
| | Wilmington, DE 19801 |
| | Phone:   (302) 658-9200 |
| | Email:   dabott@morrisnichols.com |
| | |
| | Hughes Hubbard & Reed LLP |
| | BY:  CHRISTOPHER GARTMAN, ESQ. |
| | One Battery Park Plaza |
| | New York, NY 10004 |
| | Phone:   212) 837-6000 |
| | Email:  cris.gartman@hugheshubbard.com |
| | |
| Counsel to DIP LENDER: | Potter Anderson & Corroon |
| | BY:  JEREMY W. RYAN, ESQ. |
| |      BRETT HAYWOOD, ESQ. |
| | Hercules Plaza |
| | 1313 North Market Street, 6th Floor |
| | Wilmington, DE 1980111 |
| | Phone:   (302) 984-6000 |
| | Email:   jryan@potteranderson.com |
| |          Bhaywood@potteranderson.com |
| | |
| Audio Operator: | LESA NEAL, ECRO |
| | |
| Transcription Company: | Reliable |
| | 1007 N. Orange Street |
| | Wilmington, Delaware 19801 |
| | (302)654-8080 |
| | Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

# **I N D E X**

**HEARING REGARDING:** Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Expense Claims, (B) Scheduling a Final Hearing; and (C) Granting Related Relief - Docket No. 12.

Supplemental Motion at Docket No. 132

**RULING:** Motion Granted

**PAGE**

**DECLARATIONS**
Beers Declaration                                                5
Feltman Declaration                                              5

1         (Recorded proceedings commence at 3:00 p.m.)
2         THE CLERK: All rise. You may be seated.
3         THE COURT: All right. Good afternoon. This is
4    Judge Walrath and we're here in the Nuvo case. I'll turn it
5    over to counsel to the debtor. Mr. Abbott?
6         MR. ABBOTT: Thank you, Your Honor. Derek Abbott of
7    Morris Nichols here for the debtors.
8         And, Your Honor, my apologies, I thought this was
9    entirely Zoom. I didn't mean any disrespect by not attending
10   live.
11        THE COURT: My, I thought my new procedures made it
12   clear. I don't care whether you're here or there, so no
13   prejudice and no disrespect to the Court by no showing up.
14        MR. ABBOTT: No worries. Thank you, Your Honor.
15        So we're here, Your Honor, for a further interim DIP
16   order. Mr. Gartman from Hughes Hubbard will be presenting a
17   motion, Your Honor, so I'll just turn it over to him if I may.
18        THE COURT: All right. You may. Thank you.
19        MR. GARTMAN: Good afternoon, Your Honor.
20        THE COURT: I think we lost him. There we go. But
21   he's still frozen.
22        MR. GARTMAN: Sorry, Your Honor, I was disconnected
23   for a second. If there's a problem, I'll change devices.
24        THE COURT: Okay.
25        MR. GARTMAN: Can you hear me?

1           THE COURT:  I can hear you fine now, yes.

2           MR. GARTMAN:  Okay.  Good afternoon, Your Honor,
3  Chris Gartman from Hughes Hubbard & Reed on behalf of the
4  debtor.

5           We're here today seeking approval on a second interim
6  basis of a slightly modified version of the original DIP
7  facility pursuant to a supplemental DIP financing motion.
8  That's at Docket No. 132.

9           Given the change in some of the terms, we decided to
10 file a supplemental motion out of an abundance of caution.  We
11 thank Your Honor for accommodating us on short notice after
12 several prior adjournments of what would have been a final
13 hearing on the original DIP motion, but is now in fact a second
14 interim hearing on this new DIP facility but from the same DIP
15 lender.

16          We filed two declarations in support of the
17 supplemental DIP motion.  The first of those is the Declaration
18 of Lori Beers as the debtors' investment banker, Intrepid,
19 which is at Docket No. 134.  And I would like to move that
20 declaration into evidence at this time.  Ms. Beers is here and
21 available for any cross-examination.

22          THE COURT:  Does anybody object to admission of Ms.
23 Beer's declaration?

24          I hear no objection.  It will be admitted as part of
25 the record.

1           (Lori Beers Declaration entered into evidence.)
2                MR. GARTMAN:  Thank you, Your Honor.
3                I would also like to move into evidence the
4  Declaration of James S. Feltman, the debtors' chief
5  restructuring officer which is at Docket No. 135.  And Mr.
6  Feltman is also here and available for any cross-examination.
7                THE COURT:  Any objection to Mr. Feltman's
8  declaration being admitted?
9                I hear none.  It will be made part of the record.
10          (James S. Feltman Declaration entered into evidence.)
11                MR. GARTMAN:  Thank you, Your Honor.
12                So the new DIP facility for which we seek approval,
13  like I said, is from the same existing DIP lender.  And in fact
14  contains many of the same terms.
15                As you will, there are minimal changes to the
16  proposed form of the second interim order from the original
17  interim order.  As to the original DIP facility, we believe
18  that this modified DIP facility structure is a straightforward
19  structure without any real controversial terms.
20                The original DIP facility sought approval of loans
21  put on up to $10 million in two craunches.  Initial traunche
22  with the interim hearing stage of $2.85 million which has
23  already been approved and fully funded.  And another of up to
24  $7.15 million on a final basis.  That motion was noticed out.
25  No objections were received.  That objection deadline has long

1  past.  The loan also contemplated a restructuring
2  (indiscernible) agreement and plan process and thus no longer
3  case timely.
4          This new DIP facility that we're presenting today,
5  it's for a maximum commitment of $7.88 million instead of 10
6  which includes the original 2.85 million, a second tranche
7  totaling 2.83 million which is what we're seeking approval of
8  here today on an interim basis.  And then up to 2.2 million in
9  (indiscernible) traunche upon entry of a final order and the
10 needing of certain sale related milestones that are listed in
11 the supplemental DIP motion, and the new DIP term sheet, with
12 the sale contemplated, with the closing contemplated by
13 December 13th.
14         The amounts coincide with a carefully developed DIP
15 budget to ensure that the debtors can fund payroll and
16 necessary operating expenses and the administrative costs of
17 this case during the relevant time period.
18         The main difference between the prior DIP facility
19 and this DIP facility is the shift from a plan process to a
20 sale process on a shorter timeline which also explains the
21 reduction in the overall funding commitment.
22         In addition, we have added certain sale related case
23 milestones, and the fee structure has changed.  As you'll see,
24 there is no longer a 20 percent prepayment premium which was in
25 the original DIP facility which would have also been payable if

1 an alternative financing was consummated, in other words a
2 replacement DIP.
3 There's no longer any non-default interest payable
4 under this new facility.  And instead of the interest, there is
5 a fee structure consisting of a 10 percent upfront fee payable
6 upon the maturity date, and a 10 percent fee that's payable
7 upon consummation of a sale, plan or an alternative financing.
8 As we had previously stated, this case was filed in a
9 matter of mere days after professionals were retained.  And the
10 DIP lender was the only option for a DIP financing at that
11 time.
12 As set forth in the Beer's declaration, since that
13 time, the debtors retained Intrepid as its investment banker.
14 Intrepid performed a market test of the existing DIP facility
15 and sought alternative DIP proposals from 24 different
16 interested parties.
17 Intrepid, together with the debtors and the other
18 professionals, have spent the last several weeks tirelessly
19 trying to negotiate and shore up the financing that we're now
20 happy to present to the Court today, and to negotiate the terms
21 that we're presenting to you today.
22 And as indicated in the Beer's declaration, no other
23 lender was willing to provide financing on better terms than
24 those that we're presenting to you today.
25 WE have successfully solicited participation in the

1  two traunches of financing from a new group of lenders that
2  have agreed to fold into the existing DIP structure and the
3  same DIP entity.
4       It consists primarily of certain of the debtors'
5  prepetition bridge noteholders.  Such participants are funding
6  through this existing DIP entity and therefore, that's why you
7  see very few changes to the sale order, an exhibit to the DIP
8  order, which has allowed the structure to remain similar.  And
9  this new financing commitment, as I said, the main difference
10 being the shifting in amount and timing, and you know, the
11 proposed half of this case.
12      But this new financing commitment provides the runway
13 that the debtors need to continue these cases and the marketing
14 process for their assets that have, that Intrepid has launched
15 since its engagement and that we believe will produce a value
16 maximizing a result for all stakeholders.
17      To that end, we do intend to file a bidding
18 procedures motion in short order that is in line with the sale
19 milestones in this new DIP facility.  I'll just highlight some
20 of those.
21      But the non-stalking horse bid deadline would be
22 November 26th, and auction on or about December 4th, entry of a
23 sale order by December 9th,  and a sale closing by December
24 13th.  And you'll see that all in the bid procedures motion
25 we're going to try to get on file in short order for a hearing

1 later this month.

2 　　　　　The declaration of Mr. Feltman sets forth the factual
3 bases for the need for this financing to fund operations and
4 that the alternative is that debtors will no longer be able to
5 operate.  The debtors have tapped out the existing cash which
6 was only contemplated to be for a five week time period, and
7 we're now two weeks beyond that initial five weeks.  And so
8 this, this company does need cash, it needs it now.  And we're
9 happy to have gotten this deal done and presented to you today
10 for that purpose.

11 　　　　　Unless Your Honor has any questions, we respectfully
12 request for the reasons stated in the supplemental DIP motion
13 as well as those stated in the declaration, the Feltman
14 declaration, and the first day declaration, that the
15 supplemental DIP motion be approved on an interim basis, and
16 that the Court enter the proposed second interim order and
17 schedule a final hearing.  Thank you.

18 　　　　　THE COURT:  Let me hear if anybody else wants to be
19 heard on the proposed modified DIP, I guess.

20 　　　　　MR. RYAN:  Your Honor, Jeremy Ryan of Potter Anderson
21 Corroon on behalf of the DIP lender.  I don't have anything
22 more to add, I just, you know, that Mr. Abbott, at the
23 appropriate time if Your Honor would like redlines of the
24 financing term sheet or the redline of the two interim orders
25 to hand up to the Court, so I just rise if you're interested in

1  those.

2  THE COURT: You may do so. Thank you.

3  All right. Mr. Lipshie?

4  MR. LIPSHIE: Good afternoon, Your Honor. Can you
5  hear me okay?

6  THE COURT: I can.

7  MR. LIPSHIE: Good. For the record, Jonathan
8  Lipshie, Office of the United States Trustee. I just wanted to
9  reserve our rights for a final hearing and any material changes
10 that may be associated therewith. And that's all I have to
11 say. Thank you, Your Honor.

12 THE COURT: When is the final DIP proposed for?

13 MR. GARTMAN: The milestone, Your Honor, is 30 days
14 from entry of this interim order so we would need something
15 with, you know, before that.

16 THE COURT: Did we speak with Ms. Capp about that?

17 MR. ABBOTT: Your Honor, we, sorry, Your Honor, we
18 did not speak with Ms. Capp yet. We're happy to do that, Your
19 Honor, and fill it in and upload the order if appropriate. We
20 were scrambling here to get the papers filed, so my apologies.

21 THE COURT: All right. Well, let me ask her then.
22 Well, let's see. Well, it would be the week of November 4th.

23 Would that be enough time, Mr. Lipshie?

24 MR. LIPSHIE: I'm sorry, Your Honor, did you inquire
25 to me?

1               THE COURT:  Yeah, I mean it's not 28 days.  But I'm
2  out from November 6th to the 15th.  When does the milestone
3  require a final DIP order?  Does it say?
4               MR. ABBOTT:  Thirty days after the entry of the
5  interim.
6               THE COURT:  Just for the entry of the interim you're
7  saying?
8               MR. ABBOTT:  It's tied to 30 days of the entry of the
9  interim order, but perhaps the lender will give us a couple of
10 days flex if need be.
11              THE COURT:  30 days, well let's see.  Yeah, I won't
12 be back until the 12th of November.  Can we do it that day so
13 lender will have authority, lender's counsel will have
14 authority to give us until November 12th?
15              MR. RYAN:  Yes, Your Honor, we'll report to our
16 clients that that's the Court's first day of availability and
17 the 5th is a federal holiday as well.
18              THE COURT:  The 11th is a federal holiday, yeah.  I
19 won't be back that day either, but I'll be back the 12th.
20              MR. RYAN:  That's fine, Your Honor.  There's an
21 interim deadline that will be really helpful for all the
22 parties anyway between that with the submission of the letters
23 intended for either refinancing or sales.
24              THE COURT:  And by that time --
25              MR. RYAN:  We'll have a lot more knowledge by the end

1  of October or, so the 12th should be completely fine.
2          THE COURT:  All right.  Let's do it at 10:30 then on
3  November 12th.
4          MR. ABBOTT:  Thank you, Your Honor.
5          THE COURT:  Then objections would be due on the 5th
6  of November.  Okay.
7          MR. RYAN:  That is the federal holiday, Your Honor,
8  the 5th.
9          THE COURT:  Oh, it's the 5th?
10         MR. RYAN:  5th is Election Day.
11         THE COURT:  How about November 4th?
12         MR. RYAN:  That's fine with the DIP lenders, Your
13 Honor.
14         THE COURT:  Thank you.
15         All right.  November 12th at 10:30, and objections
16 1/4.
17         All right.  This appears to just track the changes
18 made pursuant to the supplemental motion.
19         MR. HAYWOOD:  That's correct, Your Honor.  Brett
20 Haywood of Potter Anderson & Corroon on behalf of the DIP
21 lender.
22         The changes to the second interim order are not all
23 that significant.  The material ones are, of course, updating
24 the amount for the actual DIP financing.  And then including
25 that, you know, the first interim order still stands except as

1 may be modified by the second interim order.

2 And then at the very end, I would think the only
3 other potentially material one would be that funding of the
4 carve out. This is in page 16, paragraph 7(b), that the carve
5 out would be funded not to exceed 125 percent of the allowed
6 amount of professional fees.

7 Other than that, Your Honor, the real work was done
8 to the DIP term sheet, and Mr. Gartman went through what those
9 terms were, primarily economic terms and milestone terms in his
10 presentation. But I would be happy to walk Your Honor through
11 the redline.

12 THE COURT: That's fine.

13 MR. HAYWOOD: Thank you.

14 THE COURT: All right. Again, anybody wish to be
15 heard on the proposed second interim DIP financing order?

16 I hear none. I will enter that order then.

17 I'll ask Mr. Abbott, you to update a clean copy with
18 the hearing date for the final.

19 MR. ABBOTT: We will. We'll upload that shortly,
20 Your Honor.

21 THE COURT: Okay. And I'll enter that then when it
22 is uploaded.

23 MR. ABBOTT: Very well, Your Honor. Thanks. That
24 concludes matters for the debtors today. We appreciate the
25 Court's time.

1        THE COURT:  Thank you.  We'll stand adjourned then.
2        ALL:  Thank you, Your Honor.
3            (Proceedings adjourned 3:19 p.m.)
4                      * * * * *

                                                                     15

CERTIFICATION

    I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ Theresa Pullan                              October 13, 2024
Theresa Pullan, CET-780
Certified Court Transcriptionist
For Reliable