**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| **NUVO GROUP USA, INC., et. al.,** | ) Case No. 24-11880 (MFW) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Hearing Date: December 3, 2024 at 10:30 AM |
|  | ) Objection Date: November 26, 2024 |
|  | ) |
|  | ) Docket Nos. 147, 198 and 294 |
|  | ) |

**ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION, AND RELATED NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OR TRANSFER OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

Oracle Corporation UK Limited, and Oracle America, Inc., successor in interest to NetSuite, Inc. (jointly, "Oracle"), a creditor and contract counterparty in the above-captioned jointly administered Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding the *Debtors' Motion for (I) An Order (A) Approving Bidding Procedures for the Sale of Substantially All Assets of the Debtors; (B) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; (E) Authorizing the Debtors to Designate a Stalking Horse Bidder and Seeking Expedited Approval of Bid Protections, if Any; and (F) Granting Related Relief; (II) An Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [Dkt. No. 147] ("Sale Motion"); and *Notice of Proposed (I) Assumption and Assignment or Transfer of Designated Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Dkt. No. 198] ("Assumption Notice"), filed by Nuvo Group USA, Inc., et al. ("Debtors").

## I.    **<u>INTRODUCTION</u>**

1.    In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign or transfer certain executory contracts between the Debtors and Oracle.

2.    Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment or transfer for several reasons.

3.    First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which are not assignable or transferable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

4.    Second, the Assumption Notice does not provide a complete description of the Oracle agreements the Debtors seek to assume or assume and assign.  If Oracle's assessment is correct, the contracts identified in the Assumption Notice have expired and are no longer executory.  Expired contracts may not be assumed and assigned or transferred.  In addition, Oracle is aware of one active contract which does not appear to be included in the Assumption Notice.  Therefore, until Oracle has a better understanding about which contracts potentially are being assumed and assigned or transferred, Oracle is unable to confirm the cure amount owed.

5.    Third, at present, no adequate assurance information has been provided for the Purchaser (defined below).  Therefore, Oracle is unable to determine whether the Purchaser will be capable of performing under the terms of the contracts.  Oracle has reached out to Debtors' counsel to request adequate assurance information, but has not yet received the information sought.

6.    Finally, no Asset Purchase Agreement ("<u>APA</u>") has been filed.  The Debtors have provided a Term Sheet (defined below), which indicates that both the Debtors and the Purchaser may enter into a Transition Services Agreement in connection with the proposed sale.

2

7.      Oracle reserves all rights to the extent the final APA may contemplate the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements.  Oracle objects to any unauthorized shared use of its licenses.

8.      Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.     FACTUAL BACKGROUND

9.      The Debtors filed the above-captioned case on August 22, 2024, and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

10.     On October 11, 2024, the Debtors filed the Sale Motion which seeks authority to sell substantially all of the Debtors' assets.

11.     On November 6, 2024, the Debtors filed the Assumption Notice.  The Assumption Notice identifies two "License Agreements" between Nuvo Group Ltd. and Oracle, which the Debtors seek to assume and assign ("Oracle Agreements").

12.     These Oracle Agreements are described in the Assumption Notice as follows:

| Counterparty | Cure Amount | Description of Contract | Execution Date |
|---|---|---|---|
| Oracle Corporation UK Ltd | $0.00 | License Agreement | 11/10/2022 |
| Oracle NetSuite | $10,761.04 | License Agreement | 11/10/2022 |

13.     If Oracle's current assessment of the designated contracts is correct, then the agreements shown above may pertain to expired, non-executory contracts which would not be susceptible to assumption and assignment.

14.     Oracle is aware of a recent, post-petition contract, identified as Estimate #1474126, that the Debtors executed with Oracle, which is not included in the above contract schedule. This

3

omission, along with the inclusion of expired agreements, creates uncertainty regarding the contracts at issue.

15.　　To the extent the Debtors wish to assume and assign Estimate #1474126, the Assumption Notice must be amended to reflect its inclusion and associated cure amount, along with any other executory contracts the Debtors seek to assume and assign.

16.　　On November 21, 2024, the Debtors filed a *Second Notice of Designation of Successful Bid* [Dkt. No. 242] ("Successful Bid Notice").  The Successful Bid Notice identifies Nuvo Int'l Group, Inc., including as assignee of Nuvo DiP Lender LLC, as the successful bidder ("Purchaser").

17.　　Attached as Exhibit A to the Successful Bid Notice is a Binding Term Sheet ("Term Sheet") that summarizes the terms and conditions of the asset purchase. It contemplates a Transitional Services Agreement ("TSA") between the Debtors and the Purchaser. At this time, it is unclear which services are subject to the anticipated TSA.

18.　　As of the date of filing this Rights Reservation, no APA has been publicly filed with the Court.

19.　　Therefore, Oracle reserves all rights in the event any provision of the APA, including a TSA, purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time.

## III.　ARGUMENT

### A.　The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

20.　　Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ...,

4

whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

21.     Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

22.     The Oracle Agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume, assume and assign, or transfer the Oracle Agreements without Oracle's consent.

23.     For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption, assumption and assignment, or transfer of the Oracle Agreements at this time.

### B.     The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed, Assumed and Assigned, or Transferred.

24.     The Debtors' Assumption Notice generally describes the Oracle Agreements the Debtors seek to assume, assume and assign, or transfer. Oracle currently is aware of one active

agreement with the Debtors which is not identified in the Assumption Notice. In addition, if Oracle's assessment is correct, the agreements identified in the Assumption Notice have expired and are no longer executory.

25. Therefore, it is unclear which agreements the Debtors hope to assume, assume and assign or transfer.

26. In addition, the Assumption Notice omits inclusion of any underlying master agreement or support renewal. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreements for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and, "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under California law,[1] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

27. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

28. In order to determine which contracts the Debtors wish to assume, assume and assign or transfer, Oracle requests that the Debtors specify the targeted contracts': (1) name and

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.").

date; (2) identification number; (3) any associated support or support renewals; and (4) the governing license agreement.

29.     This information will enable Oracle to evaluate whether the Oracle Agreements are supported, expired, or in default, and, if in payment default, the appropriate cure amount. Additionally, if assumption and assignment are pursued, this information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

30.     Oracle reserves its right to be heard on this issue until after the Debtors specifically identify the Oracle Agreements they seek to assume or assume and assign.

**C.      The Debtors May Not Have Provided The Correct Cure Amount.**

31.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

32.     The Debtors have identified a $10,761.04 cure for one of the Oracle Agreements listed in the Assumption Notice.  However, Oracle believes additional sums are owed under Estimate #1474126, which is currently active and omitted from the Assumption Notice.

33.     Oracle reserves its right to be heard further regarding the cure amount, until after the contract(s) the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure.

**D.      The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.**

34.     Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).  Pursuant to the Notice, Oracle has reached out to the Debtors' counsel to request adequate assurance information for the Purchaser, which Oracle has not yet received, nor had an opportunity to review.

7

35.    If assumption and assignment is contemplated, Oracle requests that the Debtors provide the following information about the Purchaser to which Debtors propose to assume and assign the Oracle Agreements: (1) financial bona fides; (2) confirmation that the Purchaser is not an Oracle competitor; and (3) confirmation that the Purchaser will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle Agreements to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement.

36.    Absent these assurances, Oracle cannot determine the Purchaser's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

37.    Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E.    Oracle's Agreements Do Not Authorize Simultaneous Use By the Debtors and the Purchaser.

38.    Oracle reserves all rights to object to the APA between the Debtors and Purchaser, including to the extent the APA or any accompanying TSA includes any broad provisions authorizing transitional or shared use of the Oracle Agreements or Oracle-licensed software by the Debtors and the Purchaser.

39.    Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreements, and would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Purchaser.

40.    Oracle objects to the extent that any transitional use or shared use arrangement purports to grant to both the Debtors and the Purchaser the right to share use of the Oracle licenses beyond the license terms.

41.    Oracle also reserves all rights regarding any transitional use, including under any TSA, until after Oracle can both review the proposed TSA, and is given an opportunity to assess

how that TSA may impact Oracle, including whether the use contemplated thereunder constitutes non-compliance under the terms of the Oracle Agreements.

## IV.    **CONCLUSION**

42.    For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for approval of the Sale Motion and Assumption Notice, solely to the extent the Debtors seek to assume and assign, transfer or share use of any Oracle agreement. Oracle reserves its right to be heard on all issues set forth herein.

Dated:  November 26, 2024
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:            /s/ James E. Huggett
        James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 888-1112
E-mail:        jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
Arlen Moradi, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**

9