UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                  .  Chapter 11
                                        .  Case No. 24-11880 (MFW)
NUVO GROUP USA INC.,                    .
*et al.,*                               .  (Jointly Administered)
                                        .
                                        .  Courtroom No. 4
                                        .  824 North Market Street
                                        .  Wilmington, Delaware 19801
           Debtors.                     .
                                        .  Tuesday, December 17, 2024
. . . . . . . . . . . . . . . .  11:30 a.m.

TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            Derek Abbott, Esquire
                            MORRIS, NICHOLS, ARSHT
                              & TUNNELL LLP
                            1201 North Market Street, 16th Floor
                            P.O. Box 1347
                            Wilmington, Delaware 19801

                            Kathryn Coleman, Esquire
                            HUGHES HUBBARD & REED LLP
                            One Battery Park Plaza
                            15 Battery Park Underpass
                            New York, New York 10004


Audio Operator:             Mandy Bartkowski, ECRO


Transcription Company:      Reliable
                            The Nemours Building
                            1007 N. Orange Street, Suite 110
                            Wilmington, Delaware 19801
                            Telephone: (302)654-8080
                            Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

(Proceedings commenced at 11:31 a.m.)

THE CLERK:  You may be seated.

THE COURT:  Good morning.  This is Judge Walrath. We're here in the Nuvo case.

I will turn it over to counsel to tell me where we are.

MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott for the debtors.

There were three items on the agenda today.  The first is, effectively, moot because the debtors have filed their schedules and statements already.  The second was an interim fee hearing.  There was a certificate of counsel submitted.  I am not sure if the Court has questions with respect to any of those fee applications but we are here at the Court's pleasure on that.  Then the third is the status conference and I'm happy to start with that if you would like, Your Honor.

THE COURT:  I prefer you start with the status conference.  That will implicate the fee issue.

MR. ABBOTT:  Fair enough, Your Honor.  I am happy to report that the sale approved by the Court last week has closed.  The money was received and is in escrow -- the purchase price or the cash proceeds have been received and are in an escrow account at Epiq is my understanding, Your Honor.

In terms of going forward the debtors are well into the construction of a winddown budget.  We are trying to put the fine touches on that and we will get it distributed to the U.S. Trustee and the DIP lender and parties in due course.  Then ultimately in front of Your Honor when its ready and hopefully we will be agreed.

The two things that, out of a sense of transparency, we wanted to let the Court know, Your Honor, I don't think it came out in the testimony, although it may have at the last hearing, at the time of the last hearing and prior to the closing of a sale the debtors had in round numbers approximately $90,000 of cash left in the estate.  In addition, Your Honor, there is a little over $500,000, I think its maybe -- no, a lot over, $583,000, Your Honor, in the professional fee escrow that was set up pursuant to Paragraph 8 of the DIP orders, Your Honor.

There is a payment of approximately $60,000, Your Honor that the debtors had intended to pay this week using the non-sale proceeds that had been in the estate prior to closing. That is for certain wages and Israeli social benefit costs for a handful of Israeli employees.  Again, I think its actually $57 and change, Your Honor, $57,000 and change that needs to be paid this week, again, out of non-sale proceeds that had been previously funded by the DIP lender.

In addition, Your Honor, and maybe this is what will implicate the fee order.  If Your Honor were to approve the fees that had been requested those monies would not be paid out of sale proceeds but would be paid out of the escrow that was set up under the DIP for professionals and it would leave, actually, a reasonably substantial balance left on that account following those payments.

So, that is what I have to report, Your Honor, but happy to answer whatever questions the Court may have.

THE COURT:  Well, I think you said there's $583,000 left in the professional fee escrow.

MR. ABBOTT:  That is correct, Your Honor.

THE COURT:  And how much in fees are you requesting here?

MR. ABBOTT:  Your Honor, the payment of the fees today would be approximately $335 because with the exception of Meitar the 80 percent amounts had been paid.  So, it would be the 20 percent holdback for each of Hughes Hubbard and Morris Nichols, and then the full $17,000 and change for Meitar, Your Honor.

THE COURT:  And the 80 percent came from the professional fee escrows?

MR. ABBOTT:  Yes, Your Honor.

THE COURT:  Well, when can I expect the winddown budget?

MR. ABBOTT:  Your Honor, frankly, our hope was to have gotten it to you before today but we, obviously, did not do that.  Let me defer to Ms. Coleman on the timing of that. My instinct is that we hope to have it circulated in the next day or two. I don't know how long it will take back and forth. I would hesitate to commit until early next week, but Ms. Coleman may have a better answer, Your Honor.

MS. COLEMAN:  Your Honor, I am not going to disagree with Mr. Abbott.  We have a draft that is ready to go out to the U.S. Trustee and to the DIP lenders.  We would like it to be agreed before we submit it to Your Honor.  My great hope is that we would have it well before the end this week, but I am a known optimist and so it may not be the case.  Its not terribly complicated so I'm hopeful that we will be able to come to agreement.

THE COURT:  Does anybody else wish to be heard then on the status?

(No verbal response)

THE COURT:  Alright, well, thank you for that. When is our next hearing, Mr. Abbott?

MR. ABBOTT:  That is -- give me a moment, Your Honor.  I apologize.  I don't have that at the tip of my fingers.

THE COURT:  It looks like its January --

MR. ABBOTT:  Your Honor, I'm not finding that on my calendar quickly.  Apologies, it may take a moment or two to track that down.

THE COURT:  My clerk is telling me January 6th. Does that sound familiar?

MR. ABBOTT:  It does, Your Honor.

THE COURT:  Alright, well thank you for the status update.  I had no issues with the fees and will approve them now that you have satisfied me that they will be -- that any payments of these will come from the professionals escrow.  I think that there is no issue regarding payment of the employees that is being made out of non-cash from this sale. So, I am satisfied that we're, at least, on a path to get perhaps some resolution. I hope I can get a further status update January 6th about where we go in this case.

MR. ABBOTT:  Certainly, Your Honor.

MS. COLEMAN:  Yes, of course, Your Honor.

THE COURT:  Anybody else wish to be heard?

(No verbal response)

THE COURT:  We can stand adjourned and I will enter the order based on the certification of counsel filed.

MR. ABBOTT:  Thanks very much, Your Honor.

MS. COLEMAN:  Thanks very much, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded at 11:39 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling                    December 17, 2024

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable