UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .  Chapter 11
                                .  Case No. 24-11880(MFW)
NUVO GROUP USA INC.,            .
*et al.,*                       .  (Jointly Administered)
                                .
                                .
                                .  824 Market Street
          Debtors.             .  Wilmington, Delaware 19801
                                .
                                .  Wednesday, February 19, 2025
. . . . . . . . . . . . . . . .  10:30 a.m.


TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:          Derek C. Abbott, Esquire
                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                          1201 N. Market Street, 16th Floor
                          P.O. Box 1347
                          Wilmington, Delaware 19801

                          -and-

                          Christopher Gartman, Esquire
                          Kathryn A. Coleman, Esquire
                          HUGHES HUBBARD & REED LLP
                          One Battery Park Plaza
                          New York, New York 10004
(APPEARANCES CONTINUED)

Electronically
Recorded By:              Teasha Marsh, ECRO

Transcription Service:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          Telephone: (302) 654-8080
                          E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.

APPEARANCES: (CONTINUED)

For Nuvo Int'l Group
Inc.:                        Alissa Nann, Esquire
                             FOLEY & LARDNER LLP
                             90 Park Avenue
                             35th Floor
                             New York, New York 10016

For Blinbaum Ventures LLC
and Blinbaum Trust
Sheehan:                     Jacques Blinbaum, *Pro Se*

INDEX

MATTERS GOING FORWARD:                                              PAGE

Agenda
Item 3:   Debtors' Objection to Claim No. 10019          5
          Filed by Blinbaum Ventures LLC and Claim
          No. 10020 Filed by Blinbaum Trust Sheehan
          (D.I. 385, filed 1/17/25)


       Court's Ruling                                   25

Agenda
Item 4:   Debtors' Motion for Entry of an Order (I)      26
          Compelling Compliance with Sale Order and (II)
          Awarding Attorneys' Fees and Costs (D.I. 398,
          filed 1/27/25)

       Court's Ruling                                   31

(Proceedings commenced at 10:30 a.m.)

THE COURT:  Good morning.  This is Judge Walrath. We're here in the Nuvo Group case.

Are the parties here?  Okay, Mr. Abbott.

MR. ABBOTT:  Yes, Your Honor, Derek Abbott of Morris, Nichols here for the debtors, Your Honor.  There's a relatively short agenda; sadly, a couple items that will require some discussion.

Items 1 and 2 have been handled by orders entered by the Court, pursuant to certificates of no objection.  The next item, Your Honor, is Item Number 3, which is the debtors' objection to the claim by Blinbaum Ventures LLC and Blinbaum Trust.

Your Honor, Ms. Coleman will address the Court with respect to that matter.  Before we go there, though, Your Honor, as an administrative matter, I think there may be some demonstratives that the debtors will use, and could I ask the Court to authorize Chris Gartman to share screen to get those before the parties and the Court as appropriate?

THE COURT:  Okay, give us a minute.

MR. ABBOTT:  Thank you.

MR. GARTMAN:  That will be for the motion to compel, just to be clear, so it's the next one.

THE COURT:  Oh, the next one.  Okay.  We'll give it to you now.

MR. GARTMAN:  But the same request, yeah.  Thank you.

(Pause)

THE COURT:  All right, you have co-share privileges, but let's deal with the Blinbaum matter first.

MR. ABBOTT:  That's very much, Your Honor.  I will ask Ms. Coleman to address the Court on that one.

THE COURT:  Okay.

MS. COLEMAN:  Thank you, Mr. Abbott.  Thank you, Your Honor, Kathryn Coleman of Hughes Hubbard & Reed for the debtors on the debtors' objection to the secured aspect of the claim filed by the Blinbaum entities.  There are two proofs of claim each filed by an entity -- I have copies somewhere -- they are -- for the record, they are proofs of claim number -- well, there's a bunch of zeros and then there's 10020, and then 10019.  So it's effectively 19 and 20, and these are based on notes held by each of those entities.

Your Honor, as I think we have articulated pretty well in our papers, our view is that this one is quite simple.  Bankruptcy Rule 3001(d) requires that, "if a creditor claims a security interest in the debtor's property, the proof of claim must be accompanied by evidence that the security interest has been perfected," and quite simply, Your Honor, the Blinbaum claimants have simply failed to do so.

They have not submitted any evidence that they took any action to perfect their purported security interests, nor have they submitted any evidence that any other party perfect security interests on the Blinbaum claimants' behalf.  They only offer a copy of their notes, which of course is not evidence of perfection, and an IIA letter and a USPTO filing.  Not only are those documents insufficient to perfect any security interest, which the Blinbaums admit in their papers, but in addition to that those documents only identify Gaingels as the purported secured party, so none of those documents evidences perfection of a security interest with respect to the Blinbaum claims.

Now, the Blinbaums claim that -- or the Blinbaum entities claim that Gaingels somehow acted on their behalf, but in fact at the sale hearing Gaingels's counsel stated multiple times that it does not believe it is a collateral agent with respect to bridge note holders like the Blinbaums. Among other references, that's at page 111, lines 19, through 113; page 120, from 6 to 8; 136 from 15 to 137; and 146 from 9 to 146:12 of the transcript of the sale hearing before Your Honor on December 11th of last year.

As we state in our papers, the Blinbaums' response is also procedurally improper, it was not filed with the Court, as required, and it was also -- it was just emailed to

us, and it was also improperly filed *pro se* on behalf of corporate entities. And there's no evidence that Mr. Blinbaum, who I believe is on the phone, is an authorized signatory for these claimant entities.

So, Your Honor, based on lack of any evidence and indeed the admission that the documents that were submitted are insufficient to perfect a security interest, we would ask that the Court find that the Blinbaum claims are not the subject of perfected security interests and are, at most, unsecured claims.

THE COURT: All right, thank you.

Mr. Blinbaum, is there anyone here, any attorney representing the Blinbaum Trust or --

MR. BLINBAUM: No, Your Honor. I thought that I would just speak on behalf of my family here, and I hope you'll allow me that latitude.

THE COURT: Well, I'll allow it, but corporations do need to be represented by counsel, but I'll hear your comments.

MR. BLINBAUM: Really, it's not a corporation, it's a family LLC, I understand, and it's a family trust, you know, this is really a family -- family entities.

But may it please the Court, thank you very much for allowing me to speak. I am Jacques Blinbaum and I am speaking on behalf of my family entities, Blinbaum Ventures

LLC and Blinbaum Trust Sheehan. These are secured creditors of these proceedings.

The debtors seek to reclassify our claims as unsecured without sufficient legal or factual basis. Their argument relies on an improper application of U.S. law, while disregarding Israeli law, which governs our security interests.

Furthermore, the debtors fail to acknowledge that Gaingels 10X has the sole ability and the sole responsibility to perfect the security interests on behalf of all of the secured lender group. The Blinbaum entities had no way to perfect their secured interest other than to rely on Gaingels 10X to do so. Debtor is attempting to separate Gaingels 10X perfection of the security interest from Blinbaum's security interest. Our position at this -- is that this is a totally impossible scenario.

With respect to Israeli law, the convertible notes explicitly state that Israeli law governs all aspects of the agreement, including the creation and perfection of security interests. In spite of this, the debtors are attempting to impose U.S. law and perfection standards. Their argument is legally flawed and totally contradicts the document terms.

Under Israeli law, security interests are perfected under distinct rules that differ from those in the United States. Creditors and debtor rights, enforcement

standards, and procedural requirements are very, very different.  Since Israeli law governs this agreement, all arguments referencing U.S. law or U.S. case law are irrelevant and should be disregarded.

In its approval letter regarding the IP security interest, the Israel Innovation Authority closes with the following two paragraphs, and I'm quoting directly:  "It is clarified that according to the draft agreement the enforcement of the security interest over the collateralized assets shall be carried out solely by the collateral agent, as defined in 7(e) of the draft agreement.  The committee acknowledges the company's statement that has informed both the lenders and the collateral agent that placing a lien on the intellectual property and know-how developed with the support from the Israel Innovation Authority, and enforcement thereof shall be subject to Israeli law and the applicable regulations of the Israel Innovation Authority, which may change from time to time."

It is critical to note that the only relevant provisions with respect to this entire dispute are contained above; that, A, all IP matters must be governed by Israeli law; and, B, that only the collateral agent, not Gaingels independently, can act to collateralize the IP.

With respect to the U.S., the only relevant filing is the filing with the U.S. Patent and Trademark Office,

which was completed by Gaingels 10X in its role as collateral agent.  This filing recorded the security interest against Nuvo's intellectual property and satisfies the necessary requirements under U.S. law.  The assertion that Blinbaum claimants should have independently filed in the U.S. is incorrect and contradicts standard secured lending practices. It also contradicts the ruling of the Israel Innovation Authority that any IP filing must be subject to Israeli law and can only be filed by the collateral agent.  Nuvo's many SEC filings confirm this structure.

Nuvo's SEC filing 20-F dated May 15, 2024 states, and I quote, "Each bridge financing note is secured by all of Nuvo's intellectual property and Nuvo's filed collateral assignments and financing statements with the United States Patent and Trademark Office, and is in the process of filing collateral assignments and financing statements with Nuvo's registrar in Israel.  Gaingels 10X Capital Diversity Fund I LP, a bridge financing holder and an affiliate of a member of the sponsor serves as collateral agent with respect to the collateral securing the bridge financing."

Additionally, in Nuvo's SEC Form F-4/A Amendment 5 dated February 29, 2024 further confirms that Nuvo committed to securing the bridge financing notes and that Gaingels participated.  Quote, "Each bridge financing note has been secured by all of Nuvo's intellectual property and Nuvo

committed to filing collateral assignment financing statements with Nuvo's registrar in Israel and with the United States Patent and Trademark Office."

And that continued:  "Gaingels 10X Capital Diversity Fund I LP, an entity that signed one of the definitive agreements for bridge financing notes, referred to above, and an affiliate of a member of the sponsor has agreed to serve as collateral agent with respect to the collateral securing the bridge financing notes."

These are but two of many public disclosures that confirm that all parties, including Gaingels, the Nuvo board, and officers of all of Nuvo agreed to the security interest terms.  The debtors cannot now claim ignorance or attempt to shift responsibility to the Blinbaum claimants.

Moreover, if there's any failure to perfect the security interest, both Gaingels 10X, Nuvo's board, and Nuvo's executives face potential liability.  The statements made in the SEC filings assured investors that the bridge financing notes were secured by Nuvo's intellectual property and that appropriate filings were made.

And, finally, the debtors' reply in support of objection claims that the -- and they use the word, the quote, "crux" of their argument is that Blinbaum failed to provide documentation providing that the liens were perfected.  However, copies of the USPTO filing and the

Israel Innovation Authority filings were included with Blinbaum's claim as a secured creditor.

Furthermore, Gaingels 10X, the collateral agent, provided to the debtor full documentation of the loan perfection documents.  The debtors' assertion is therefore incorrect and misleading, as the necessary documentation has been provided and is on record.  If the real crux of the creditors' position is that Gaingels was acting independently and not as a collateral agent, then the crux of our reply is that this represents an impossible scenario, contradicted by the note, the SEC filings, the business combination agreement, the Israel Innovation Authority, and simple common sense.  Gaingels in fact represented the group, not only themselves.  There is no alternative possible interpretation.

Under a *pari passu* structure, Gaingels acting for itself and not as collateral agent is an impossible scenario. Blinbaum acting in addition to Gaingels with a different time stamp is an impossible scenario.  Twenty other investors in the group, each filing independently, is an impossible scenario.  Creditors' entire crux argument is an impossible scenario and must be rejected.

For the reasons outlined above, we respectfully request the Court do the following:  One, conclude this matter and deny the debtors' objection, and uphold Blinbaum's claim as secured; two, recognize that Israeli law governs

this dispute, and that the security interests were properly perfected under Israeli law by Gaingels acting as the collateral agent, not independently; three, acknowledge that any failure in perfection, if found, was the responsibility of Gaingels 10X, not the Blinbaum claimants; and, four, recognize the potential liability of Nuvo's board and executives should be determined that the security interest was not perfected as represented in the SEC filings; and, five, alternatively, grant an additional 90 days for submission of further expert opinions and documentary evidence.

Thank you, Your Honor.  With your permission, I would like to submit a written copy of these remarks to your clerk.

THE COURT:  Well, I don't know that that's necessary since they're on the record.

Ms. Coleman, do you want to respond?

MS. COLEMAN:  Yes, Your Honor, thank you, very briefly.

Much of what Mr. Blinbaum said I'm not really going to take the Court's time to respond to because it does not go to the issue that we have here before us.  Whether there is liability, whether the Blinbaum entities have an issue with Gaingels is not really the debtors' purview.  I do want to address, however, a couple of things that he said.

First of all, it is not true that Gaingels was the only entity that could file and perfect the security interests in any of the bridge financing note.  Section 7(b) of the note itself reads, and I quote, "The company hereby authorizes the holder," which is the Blinbaum entities, "to file all necessary deeds of pledge and other documents and instruments to perfect the holder's security interest in those patents registered in the United States and Israel."

So the note itself, the issuer of the note, which is the debtors, and the debtor authorizes the holders of the notes, including the Blinbaum entities, to perfect the security interest on their own; they patently did not do so.

And, you know, Gaingels could not be more clear, even if they were supposed to -- and I'm not getting into that, I don't know if they were supposed to or not, we don't have any evidence on the record to that effect, but even if they were supposed to and the Blinbaum entities have some kind of claim in respect to their not doing so, it is very clear that nobody filed on behalf of the Blinbaum entities, nobody perfected the security interests or even attempted to on behalf of the Blinbaum entities.  The Blinbaums didn't do it, even though they could have done so -- Blinbaum entities, I'm sorry, I don't mean to be personal -- nor did Gaingels. Gaingels has disavowed a number of times that it filed on behalf of anybody other than Gaingels' own $1 million note.

So, you know, Your Honor, I go back to 3001(d), if the creditor claims a security interest, they have to submit evidence of perfection, and, quite simply, the Blinbaum entities have not done that and they've had plenty of time to do so.  They filed their claim a long time ago, we objected a long time ago and responded a long time ago, and none of this has been done in any kind of a rush.  And the documents are the documents and, quite simply, nothing has been submitted to this Court showing that the security interest that is granted -- I'll give you that, it's granted in the note, but it is simply not perfection, and there's been no evidence that either the Blinbaum claimants or anybody on their behalf ever even attempted to perfect on behalf of these particular claimants.

THE COURT:  Let me --

MS. COLEMAN:  Thank you, Your Honor.

THE COURT:  -- let me ask you a question, Ms. Coleman.  Is it clear from the filings in Israel and with the USPTO that Gaingels was filing only on its own behalf?

MS. COLEMAN:  Yes, Your Honor.  It says on behalf of Gaingels 10X as a secured creditor, it does not say as collateral agent.

THE COURT:  Okay.

MS. COLEMAN:  And I believe copies of those are in the record.  If you give me a second, I can probably find the

docket number where they're -- I think they were attached to our original objection, which is at Docket 385.

MR. GARTMAN:  And, Your Honor, it's Chris Gartman. I would also just add that in the actual response that the Blinbaums filed, Section 1(d) says that the USPTO filing is, quote, "insufficient for perfection under U.S. law," end quote.

Section 2(c) of their response says that, quote, "The IIA compliance does not replace perfection procedures," end quote.

So other than their notes, which are not perfection documents, those are the only two supposed perfection documents that they have provided and they admit that they are insufficient to perfect.  That should end the inquiry and conclusively establish that the Blinbaum claims are not properly perfected and are thus unsecured.

MR. BLINBAUM:  Your Honor, may I speak?

THE COURT:  You may.

MR. BLINBAUM:  Okay.  First of all, I don't have in front of me the reference that he's making to, so I don't accept it as being accurate.  Secondly, I want to point out that many, many times post-filing Gaingels reaffirmed again and again and again, and all the entities affirmed again and again, in all security filings which are attested to, and all the filings everyplace that they were acting as collateral

agent, that they were aware of the debt and it was totally

secured for the entire group.

THE COURT:  Wait a minute, Mr. Blinbaum.  Where do

they represent that they were acting for all noteholders in

filings --

MR. BLINBAUM:  In the SEC filing --

THE COURT:  All right --

MR. BLINBAUM:  -- the SEC filing.

THE COURT:  -- that's the debtors'

representations, but Gaingels did not represent that they

represented all of the noteholders in any filing --

MR. BLINBAUM:  I -- I believe there's a nuance

here, which I'm not as smart on as my son might be, but I

believe that an affiliate entity of Gaingels was really a

party to the public offering and so, therefore, the Gaingels

group was a party to the entire filing and I think

participated in that filing because, if you remember, if you

recall, there was a later time when they went public.  Okay?

And an affiliate of Gaingels was part of that public

offering.

MS. COLEMAN:  May I respond, Your Honor?

THE COURT:  Yes.

MS. COLEMAN:  As we established pretty

conclusively at the sale hearing, an SEC filing is not a

perfection document no matter what it says about who's

perfecting what, it is simply not -- it is simply not relevant to this inquiry.

MR. BLINBAUM:  Your Honor, I also want to add one more point, if I may, that the Israel Innovation Authority granting of the -- of the filing in Israel specifically states that in all cases all around the world the only entity allowed to file is the collateral agent on behalf of all the lenders.  It was always understood and seen that this was one group, one filing, and one lien --

THE COURT:  Well, Mr. Blinbaum --

MR. BLINBAUM:  -- on the IP.

THE COURT:  -- Mr. Blinbaum, respectfully, you're not an attorney, you're not an Israeli attorney, and I have nothing before me by any expert on Israeli law that confirms that.  I don't know Israeli law myself.  So --

MR. BLINBAUM:  Well --

THE COURT:  -- I can't accept your statement that that is true.

MR. BLINBAUM:  Then maybe the appropriate thing is to adjourn this thing, that we get input from Israeli counsel, and we identify what Israeli law governs, because there's no argument that the IP and everything is subject to Israeli law.  And, Your Honor, with all due respect, if you state that you are not familiar with Israeli law, I do not see a way in which you can rule on this.

THE COURT:  Ms. Coleman?

MS. COLEMAN:  Your Honor, with all respect, this is simply a frolic and detour, I guess, is the best thing I can think of.  It does not matter what Israeli law says or doesn't say about who gets to file and who's acting as a collateral agent.  The simple fact is that the filings in Israel, which are admittedly by Mr. Blinbaum's entities that he is speaking for today -- and I can't give you a docket number because it isn't on the docket, but it specifically says that the filing with the USPTO is insufficient for perfection under U.S. law, and we are here, as you know, in a U.S. court.  And Israeli law may apply to the documents, but it does not apply to the requirement that these be perfected and, in any event, we're not talking about whether an act of perfection was done under Israeli law or under U.S. law.

The simple fact is that nobody attempted to or did perfect these security interests on behalf of the Blinbaum claimants.  We can have a different conversation when the time comes about the Gaingels claims, but Gaingels filed not as collateral agent, but for itself, it has said that multiple times, I just gave you the cites on the transcript and I can submit that in writing, if it would be more convenient for the Court for me to do so, but there is simply no reason to adjourn this to adjourn this to consult Israeli counsel.  By the way, the debtors have Israeli counsel and

have consulted Israeli counsel on this matter, and -- but we don't even have to go there, Your Honor, because there is simply nothing submitted under 3001(d) that says that the Blinbaum claimants or anybody on their behalf ever attempted to perfect these particular security interests in these particular notes.

MR. BLINBAUM:  Your Honor, if I may?

Ms. Coleman's reference to 3001(d) is a U.S. regulation; it does not apply to this case.  This case is solely to be adjudicated under Israeli law and, therefore, I think that it's inappropriate, and I think we have no choice here but to adjourn this matter and to look at this further.

The Israeli regulations were very clear that the only authorized person to file any sort of -- any sort of -- any sort of lien of perfection is the collateral agent, okay? Please look at the documents from the Israel Innovation Authority, you know, look at the translation of -- get it translated, if you don't have it in English.  It's very clear the only authorization is for the collateral agent to file. If 10X, if Gaingels 10X thinks that they filed not as collateral agent, then they violated that provision, which is the underpinning for this entire case.

THE COURT:  Well, Mr. Blinbaum, you may have a claim against it, they have stated in open court that they did not file on behalf of any other noteholder, including the

corporations that you're speaking on behalf of which my leave.  If they did not do that, you may have an action against them, but what evidence do you have that they did in fact perfect on behalf of you or your entities?

MR. BLINBAUM:  Because this note, there was 15 to 20 people participating in this round, there is no scenario where anybody can file except as collateral agent because 20 people filing separately is not permitted by the Patent Office as one lien.

THE COURT:  Okay, it's not permitted.

MR. BLINBAUM:  There would be 20 separate liens.

THE COURT:  Okay.  You're saying, legally, it's not permitted, I don't know that.  However, Gaingels did not file on your behalf.  What evidence do you have they filed anything on your behalf?

MR. BLINBAUM:  Your Honor, there is no scenario by which they cannot file on my behalf.  Okay?  Tell me what I should have done.  If counsel for the debtor would like to propose what I should have done to be *pari passu* with everybody else, then I will fully admit to you that I am wrong.  Just, Ms. Coleman, tell me what I should have done --

THE COURT:  Mr. Blinbaum --

MR. BLINBAUM:  -- as far as filing --

THE COURT:  -- Mr. Blinbaum, nobody --

MR. BLINBAUM:  -- which would put me on equal

footing.

THE COURT:  -- nobody can give you the legal advice.  The only question to be answered today is whether or not you, your entities, or Gaingels filed anything that perfected a security interest on your behalf.  You did not file anything and Gaingels said they did not file on your behalf.  So --

MR. BLINBAUM:  Your Honor, the only -- sorry.

THE COURT:  -- there's no evidence that you're perfected.

MR. BLINBAUM:  Your Honor, the entire concept of a collateral agent is that one entity files on behalf of the group.  There is no alternative framework in place for individuals to file independently on a claim because they would be -- they would be in the order of their timestamps. Twenty people would have 20 different timestamps and would be different places in line.  The only scenario in the USPTA, in the Patent Office, is to file using a collateral agent, there is no other scenario.  Okay?

THE COURT:  Whether or not that is true legally, Gaingels has stated they did not file on your behalf.  So --

MR. BLINBAUM:  They are just making up a story, they're lying.  Okay?

THE COURT:  Do you have --

MR. BLINBAUM:  Because they state many places

afterwards that they did file on my behalf.

THE COURT:  Where?  Where did they say that?

MR. BLINBAUM:  All the SEC filings, all the public knowledge, all the disclosures, all the conversations, okay?

THE COURT:  Mr. Blinbaum, accepting it, that was a statement by the debtor that Gaingels had that authority or would file.  Gaingels did not file an SEC filing.

MR. BLINBAUM:  I believe Gaingels was a participant in that filing.

THE COURT:  Well, it was filed --

MR. BLINBAUM:  Okay?

THE COURT:  -- on behalf of the debtors' entities.

MR. BLINBAUM:  The debtors' entity, as it evolved, had Gaingels associates as part of the group.  That entity had Gaingels as one of its participants in the group.

THE COURT:  Well, now it's clear you need a lawyer, but at this point I see nothing to establish that you or anybody else filed a security interest perfecting your note's security interest.

MR. BLINBAUM:  And my response to you is that that was -- what you're describing is an impossible scenario and it's so unfair.  The equities should count for something.  There's no scenario where I could have done so, none.

THE COURT:  Then you can sue Gaingels if you think that only they could have filed to perfect your security

interest, then you may have a claim against them.  I can't rule on that, that's between you and Gaingels.  But as between you and the debtor there is no document that shows that your interest was perfected and, whether that's fair or not, the law requires perfection for you to be treated as a secured creditor.

MR. BLINBAUM:  Your Honor, is that according to U.S. law or Israeli law?

THE COURT:  Under United States law, and that's all I consider here.

MR. BLINBAUM:  But my argument is U.S. law does not apply here.  I object to this.  U.S. law does not apply; this is an Israel law matter.

THE COURT:  You have not established that under Israeli law Gaingels filed anything to perfect your security interest.  Gaingels has said repeatedly they did not act on your behalf.

MR. BLINBAUM:  Your Honor, with all due respect, okay, neither of us know what Israeli law would say on this.  Okay?  We don't have --

THE COURT:  The burden -- Mr. Blinbaum --

MR. BLINBAUM:  -- Israeli counsel here --

THE COURT:  -- Mr. --

MR. BLINBAUM:  -- and we don't have an Israeli judge here.

THE COURT:  Mr. Blinbaum, the burden of proof is on you to show that you have a secured interest; not on the Court, not on the debtor, it's on you, and you have not proven that Gaingels filed anything in Israel or in the United States that perfected your security interest in assets of the debtor.

MR. BLINBAUM:  And my view -- and my view is that according to Israeli law, by a determination by the Israel Innovation Authority, the only entity authorized to file any perfection documents is the collateral agent.  Okay?

THE COURT:  That may --

MR. BLINBAUM:  Gaingels is not --

THE COURT:  -- that may be --

MR. BLINBAUM:  -- permitted by Israeli law.

THE COURT:  -- that may be true, but I don't know that.  But you didn't give me --

MR. BLINBAUM:  Thank you.

THE COURT:  -- you did not give me anything that showed that Gaingels filed to perfect your security interest in Israel.

MR. BLINBAUM:  Your Honor, then I'd respectfully ask for a 90-day adjournment and then we can explore this further.  Okay?  You cannot do this to the children and to everybody's money.  Okay?  You just -- it's not fair.

THE COURT:  I will state today, I will make a

ruling that you have failed to show that you have a perfected security interest in any assets of the debtor.  To the extent you want to file anything further, you're going to have to get a lawyer because on the record today there is nothing showing that anybody perfected a security interest on your behalf, either under Israeli law or under United States law.

So I'm going to sustain the objection of the debtors to your proofs of claim -- to the Trust and the LLC's proofs of claim.  Whether you have a claim against Gaingels or anybody else, I make no ruling.  Okay?

MR. BLINBAUM:  Are you giving me a choice?

THE COURT:  You have no choice.  I've ruled.

MR. BLINBAUM:  Okay, thank you.

THE COURT:  Thank you.

MR. ABBOTT:  Thank you, Your Honor.  The next item on the agenda is Item Number 4, Docket Item 398, which is the debtors' motion to compel compliance with the sale order, and Ms. Coleman will address that with the Court as well.

THE COURT:  Okay.

MS. COLEMAN:  Thank you, Mr. Abbott.

So, Your Honor, as Mr. Abbott just stated, we are here on the adjourned from February 3rd motion to compel performance under the APA.  The specific reason -- this one is a little hairier than the last one -- the specific reason for the motion was that the purchaser failed to pay the most

critical of the obligations that it assumed under the APA as part of the purchase price, namely to pay the -- there's one person in Israel who can process the payroll for a bunch of complicated banking reasons, there's one person who can process payroll, and that person needed to be paid $6,559 by the purchaser so that she would process the payroll, and we could get the employees and the contractors paid whatever the Court authorized us to pay them.

So I will say upfront that the motion had its intended effect when we finally had to file it on this one payment, and that amount did eventually get paid, but it's not no harm, no foul.  And I'm sure the purchaser's counsel will say, nothing to see here, folks, you know, why are you wasting the Court's time, but that's not the case, we are not wasting the Court's time.  The debtors still need some relief, and let me explain why.

I need to go very briefly over the timeline to show that we did not rush to court prematurely and that we still need some help.

THE COURT:  Ms. Coleman, Ms. Coleman, just tell me first, what are you seeking?

MS. COLEMAN:  We are seeking from Your Honor an order that going forward -- we are not seeking recompense for the substantial amounts that the debtors had to incur -- we are seeking going forward an order from Your Honor saying

that, to the extent that the debtors can document reasonable attorneys' fees and professional costs, I guess, that result directly from the purchaser's failure to timely pay these additional amounts that it has assumed, that the purchaser will be obligated to reimburse the debtor for that.

And the reason that we're asking for that, Your Honor, is that the debtor has not yet paid, has not yet paid in full the $300,420 of the amounts that it asked for, it has paid less than three percent of that amount. The rest of it, it's either still in negotiations -- we have a demonstrative that we can show Your Honor that sets forth the status of each of the payments that was given to us by the purchaser's counsel and we broke it down, and the great bulk of the amount is still in negotiation.

What we're concerned about, Your Honor, is that some of these creditors may take action that, yes, will violate the automatic stay and, yes, might not even be in this country, but will take action seeking recompense from the debtor that they should have gotten or should be getting from the purchaser, but they will either jump the gun or decide they're not getting paid because it's been so long, and they will take action and we'll be forced to defend that, and we would like some protection. This is not a hypothetical risk since we've already had to incur a bunch of fees.

And, as you know, this is -- you know, this is a limited pot that we have to pay unpaid creditors, of which there are a lot, and we would like Your Honor to let the purchaser know that, to the extent that their delay in payment demonstrably -- we're not asking for a blanket order approving things, we would have to come to the Court and document it, of course, Mr. Feltman would have to certify that -- but we are asking for you to put the purchaser on notice that, if they continue to delay and that causes the debtor harm in the form of additional professional fees, that the purchaser will be liable for that, that is what we are asking for.

THE COURT: Isn't that an advisory opinion? I don't know that you'll ever have to do anything. I don't know that the creditors will ever seek payment from the debtor.

MS. COLEMAN: I understand, Your Honor. I hope they don't, quite honestly. I don't know either and I hope they don't, but we -- again, it's not a hypothetical risk. And we're not really asking for an advisory opinion because we would have to come and show you that we had in fact incurred those costs.

THE COURT: Well, shouldn't we wait until that point. I mean --

MS. COLEMAN: If that's the Court's determination,

of course.

THE COURT:  But I will hear from counsel for the buyer as to what is going on here.

MS. NANN:  Thank you, Your Honor, Alissa Nann from Foley & Lardner on behalf of the purchaser, Nuvo International Group Inc.

Your Honor, you know, Ms. Coleman and I have been discussions with about -- excuse me, about this.  As she stated, we provided an update to the debtors earlier this week regarding the status of things.  So, as you're aware, Your Honor, under Section 1.3 of the APA, the purchaser has the ability and contemplated that it would have the ability in assuming these obligations to be able to negotiate with the vendors.  They're the, you know, business that's having the relationship with these vendors going forward, and so the purchaser is in active discussions with all of these vendors with respect to working out payment plans, payment terms, and the like.

There are 17 vendors on Schedule 1.3(b) that make up the obligations that the purchaser assumed and, as of today, we have either paid or reached payment terms with ten of the vendors.  We're waiting on wire instructions from one of the vendors and that amount will be paid as soon as we receive the wire instructions.  And then with respect to the remaining six vendors we are in active negotiations regarding

payment terms.  And, you know, certain of the vendors are accepting to receive payments over time, certain of them are accepting stock in the purchaser.  So we are in discussions with all of them regarding how to resolve these obligations.

And, you know, as I've expressed to Ms. Coleman, we've asked them several times -- to your point, Your Honor, if there are any vendors right now that are giving them, you know, issues or problems or they anticipate so, and that we will work in good faith with the debtor to try to expedite a resolution of those to the extent that that arises.

THE COURT:  Well, why don't I do this, why don't I just continue this motion generally.  I don't think I'm in a position today to enter any order.  I think I'd wait to see if the negotiations are successful or unsuccessful, and whether the debtor incurs any further costs as a result of that.  At least at this point, I'm satisfied the buyer is moving expeditiously to resolve these vendor claims.  In the event it doesn't, then I may be in a position to enter an order, but I just don't see that I'm in a position to enter an order today.  Okay?

MS. NANN:  Thank you, Your Honor.

MS. COLEMAN:  Thank you, Your Honor.

THE COURT:  All right.  Again, I'll continue this generally.

I think that ends our agenda, Mr. Abbott?

MR. ABBOTT:  Yes, Your Honor, it does.  Thanks for your time.

THE COURT:  Okay.  We can stand adjourned then.  Thank you.

MS. COLEMAN:  Thank you, Your Honor.

(Proceedings concluded at 11:11 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams                           February 19, 2025

Tracey Williams, CET-914

Certified Court Transcriptionist

For Reliable