<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2
                                    .  Chapter 11
 3   IN RE:                         .  Case No. 24-11880 (MFW)
                                    .
 4   NUVO GROUP USA INC., ET AL.,   .  (Jointly Administered)
                                    .
 5                                  .
                                    .  (Zoom Proceedings)
 6                                  .
                                    .
 7            Debtors.              .
          .
 8                                  .  Friday, May 16, 2025
     . . . . . . . . . . . . . . .  .  9:58 a.m.
 9
                           TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE MARY F. WALRATH
                  UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:          DEREK C. ABBOTT, Esquire
13                             MORRIS, NICHOLS, ARSHT & TUNNEL, LLP
                               1201 North Market Street, Suite 1600
14                             Wilmington, Delaware 19801
15

16

17
     (APPEARANCES CONTINUED)
18
     Audio Operator:           Gauri Patel, ECRO
19
     Transcription Company:    Reliable
20                             1007 N. Orange Street
                               Wilmington, Delaware 19801
21                             (302)654-8080
                               Email:  gmatthews@reliable-co.com
22
23   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
24

25
</pre>

1 | APPEARANCES (CONTINUED):

2 | For the Debtor:          KATHRYN COLEMAN, ESQ.
                             HUGHES, HUBBARD & REED, LLP
3 |                          One Battery Park Plaza
                             New York, New York 10004
4 |

5 | For the Israeli Trustee: CRAIG MARTIN, ESQ.

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1                                 <u>INDEX</u>

2  <u>MOTIONS</u>:                                              <u>PAGE</u>

3  Agenda
   Item 1:    Debtors' Emergency Motion for Entry of an
4             Order (I) Enforcing the Automatic Stay and
              (II) Awarding Actual and Punitive Damages
5             (D.I. 557, 5/13/25).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (Proceedings commenced at 9:59 a.m.)

2           THE COURT:  We are hearing the Nuvo Group case.

3   Mr. Abbott you're here for the Debtors?

4           MR. ABBOTT:  I am, Your Honor.  Thank you for

5   convening this hearing this morning.  With me is my

6   co-counsel Ms. Coleman from Hughes Hubbard & Reed, will be

7   addressing the Court on the motion today.

8           THE COURT:  Ms. Coleman.

9           MS. COLEMAN:  Thank you, Your Honor.  And I would

10  like to echo Mr. Abbott's thanks for conducting the hearing

11  today on the emergent -- on an emergent basis.

12          I -- I will say that the events of the last couple

13  of days and then the money that the Debtors have been forced

14  to spend in the last 48 hours have shown that we were correct

15  to be concerned and to subsequently file short notice, but we

16  do appreciate Your Honor allowing us the time.

17          We clearly urgently need the protection from

18  the -- from -- that we're asking from the -- from the order

19  being -- being sought today.

20          Your Honor, before I forget, I would like to

21  introduce into evidence three declarations of Mr. Feltman,

22  the CRO who I believe is on the line.  Those are

23  Documentaries 567, 571 --

24          THE COURT:  Wait -- wait a minute.  Start over

25  again.

1          MS. COLEMAN:  Sure.

2          THE COURT:  567.

3          MS. COLEMAN:  567, 571, and 573.

4          THE COURT:  Anybody?

5          MR. MARTIN:  Your Honor, this is Craig Martin.

6  Can you hear me?

7          THE COURT:  I can, Mr. Martin.

8          MR. MARTIN:  I'm sorry.  I was having trouble

9  getting in, so I would -- I'm not hearing anything until just

10 now.  I apologize for that.

11         THE COURT:  I had the same problem, so don't

12 apologize.

13         MR. MARTIN:  Okay.  I don't know where you are or

14 what you're doing, but I'm here to make a special appearance

15 on behalf of the Israeli Trustee.

16         THE COURT:  We are just starting the proceeding,

17 and Ms. Coleman sought to introduce the three declarations of

18 Mr. Feltman at Docket Entry 567, 571 and 573.

19         MR. MARTIN:  Oh, thank you, Your Honor.  I did

20 confer with Mr. Abbott about this last night.  We were able

21 to speak a lot throughout the day.  And I agreed with him

22 that we would not oppose the entry or cross-examine Mr.

23 Feltman, but that we would simply reserve our rights.

24         That agreement was before the two supplemental

25 declarations.  I've had a chance this morning to look at

1  both, and that does not change what Mr. Abbott and I

2  discussed.  And so subject to reservation of rights for

3  future inquiry into the testimony in them, I don't object to

4  their entry for today's hearing purposes.

5          MR. ABBOTT:  And Your Honor, Derek Abbott, one

6  point of order.  I believe the third declaration is actually

7  Docket Item 583.

8          MS. COLEMAN:  Oh, I apologize.  I knew I was going

9  to get one of them wrong.

10          THE COURT:  Yeah.  I haven't seen that one either.

11  So I did see 571 and 567, but -- all right.  There -- there

12  was no opposition to moving it into evidence.  So the three

13  will be admitted as part of the record.

14          MS. COLEMAN:  Thank you, Your Honor.  And -- and

15  thank you, Mr. Martin.  Nice to -- nice to -- nice to meet

16  you.

17          Your Honor, right up front, I would like to make

18  something very clear.  The objection that Ms. Reese has filed

19  is really a long, 20-page distraction designed to direct the

20  Court's attention away from her stay violation.  The

21  objection is portraying this matter as something it's really

22  not in order to obscure what's really going on, which is a

23  barrage of state violations that is doing real harm to these

24  Debtors and their Creditors.

25          We're not just here complaining.  This is -- this

1   is harmful.  Ms. Reese is -- is, to use the current term,

2   flooding the zone.  I'd also like to point out, although I

3   don't expect --

4           THE COURT:  Well, before we go any further,

5   there's been a lot of heated rhetoric on both sides in the

6   communications that you attached to your motion, and I'd like

7   the parties to start considering -- cooperating instead of

8   fighting.

9           MS. COLEMAN:  Your Honor, we are very open to that

10  suggestion.  In fact, I have a very specific suggestion as

11  part of -- as part of my argument -- as part of my argument

12  today.  And that is a very well-taken suggestion.

13          I think both sides would probably say we've tried

14  to do that and things have -- you know, things have certainly

15  gotten -- have certainly gotten heated.  But would you

16  like -- would Your Honor like me to proceed to what I think

17  the real solution is here, or -- or should I go for --

18          THE COURT:  That would -- that would be helpful.

19          MS. COLEMAN:  Okay.  Well, let me -- let me do

20  that, Your Honor, because there's no reason to take extra

21  time if Your Honor already feels that you have -- you have

22  the facts well on hand.

23          What we think, Your Honor -- and it's, you know,

24  just a shame that nobody thought to ask us this before, but

25  our view is that the way that this should go, and if it has

1   to come from a conversation between the Courts, so be it, but

2   if we could -- if we could arrange directly with Mr. Martin

3   and with Ms. Reese to have this -- have this be the solution,

4   we're open to that as well.

5           But what we think should happen here is that we

6   would agree -- and Mr. Feltman has authorized me to make this

7   offer -- that we would agree to modify the automatic stay to

8   allow the employees who commenced the involuntary liquidation

9   proceeding in Israel to proceed against -- to proceed to

10  collect the -- not necessarily against, but to collect their

11  money from the Israeli -- I'm going to -- I'm going to screw

12  up the name because all the Israeli agencies sort of sound

13  the name -- the same.  I'm looking for it in my notes.

14          But the Israeli authority that is responsible

15  for -- it's like our -- it's, like, you know, our -- our

16  pension -- our pension safety net.  It pays up to a cap, as I

17  understand it, the amounts that companies either do not or

18  cannot pay their employees.

19          So we would modify the automatic stay to allow

20  that to go forward in Israel.  We would allow the Israeli

21  proceeding to continue to the extent it is necessary to the

22  Israeli employees' former -- the former employees' pursuit of

23  any recompense.

24          And as we understand it -- and again, of course,

25  I'm not an Israeli lawyer, but as we understand it, it is

1  necessary to obtain an order of liquidation from the Israeli

2  court in order to be able to then go and get -- and get your

3  money from the Israeli state agency.  We would allow Ms.

4  Reese to continue -- or Reese -- I'm sorry -- to continue in

5  place in order to assist in distributing the monies that we

6  are already holding for the former employees.

7          Your Honor -- and I'm sure had (inaudible) about a

8  million times -- you know, we have already Your Honor's

9  approval to pay, I believe it is $136,000 of wages from

10  November and December 2024 to the employees.  And we're

11  holding that money.  We're still holding that money.  We've

12  offered Ms. Reese that money.  She turned us down, but we

13  hope she change her mind, take that money, and then the

14  Israeli employees can -- she can distribute it to them.

15          As we understand it, she is paid out of what --

16  like, a Chapter 7 trustee in the U.S.  And again, I'm -- I'm

17  now reciting what I've been told about Israeli law, so

18  don't -- don't take this as gospel.  But I'm being -- I've

19  been that she gets paid from what she can distribute to the

20  Creditors in Israel, so she could get paid calculated based

21  on that -- on that $136,000 going to the employees from the

22  estate, which we already have approved and are holding for

23  them.  And then they can get the rest of their money.

24          And that's all that needs to be done in Israel.

25  And it makes sense to do that because that is the one thing

1  that the former employees can't get in the U.S.  They

2  can't -- you know, there is no U.S. agency that's going to

3  top them up for amounts that we can't pay.

4         And these are pre-petition amounts.  There are

5  severance, various social -- you know, kind of social

6  services types of payments that are due to the employees, but

7  that are not accorded administrative priority, unlike their

8  wages, which are administrative priority claims.

9         Finally, Your Honor, we would agree to modify the

10  bar date for the Israeli state agency that pays the former

11  employees because, presumably, that agency would have --

12  would have the subrogation claim against -- back against the

13  Debtor.  And so we would modify the bar date for that agency,

14  just as we have done for the Israeli Innovation Authority for

15  the claims that it has arising out of the sale of the

16  Debtor's assets and the Israeli Tax Authority for the same

17  types of claims.

18         For both of those agencies, we have provided

19  specific notice.  They were not Creditors at the time of the

20  filing, so they were not given notice at the time of the

21  filing.  We've now rectified that.  We'll do the same thing

22  with the Israeli agency that makes those payments.

23         And then I think we can wrap up, and we don't

24  need -- we don't need any further proceeding in Israel.  Now,

25  I -- I know -- and I'll say it before Mr. Martin does.  I

1  know that Ms. Reese thinks that she has a lot of other stuff

2  to do in Israel.  We disagree with that very strongly and

3  don't think she has anything else to do in Israel.

4          And I can certainly talk about that at great

5  length, as I was planning to do, but that is the solution,

6  Your Honor, that we would ask for if -- if that cannot be

7  agreed to between the parties, which, again, we would love it

8  to be.

9          We would ask that maybe Your Honor could give us a

10 little boost and communicate in the way that Your Honor sees

11 fit with the judge proceeding -- presiding over the

12 Israeli -- Israeli process to try to encourage the parties to

13 come to that kind of solution because that is the way to put

14 an image to all this money on both sides.

15          THE COURT:  Well, I know that Ms. Reese has a

16 different view.  And Mr. Martin, do you want to chime in on

17 what view your client thinks is the solution to the

18 concurrent proceedings here?

19          MR. MARTIN:  Yes, Your Honor.  I guess it's just

20 an initial point.  We did deliver our objection by hand to

21 chambers this morning.  And if Your Honor's read it, I assume

22 you have my view on the legal points on jurisdiction and --

23          THE COURT:  I did.  I did see it.

24          MR. MARTIN:  Okay.  So resting on those somewhat

25 to respond to Your Honor's question -- and I'm obviously

1   happy to go back and cover any of it -- the problem -- the

2   problem that we have is contained in our objection, which is

3   that my client, the Israeli Trustee, did not commence the

4   insolvency proceeding.

5            THE COURT:  I understand.  And she's been

6   appointed by the Israeli court.

7            MR. MARTIN:  Yes.  And she's being ordered to do

8   things by the Israeli Court, and she has statutory duties to

9   do things.  That said, I think -- and we did talk at length

10  yesterday as I mentioned, Mr. Abbott and I, to try to find a

11  path forward.

12           I think the problem is that there are just some

13  inherently conflicting issues that create some of the

14  complications and the -- the notion that the Israeli Trustee

15  would simply adopt the Chapter 11 proceeding and act as an

16  agent of it, I am relatively confident would be offensive to

17  her.

18           And I'll give you two examples.  I believe I've

19  been informed that the National Labor Authority in Israel

20  has, in fact, already paid out the wages that the liquidation

21  order was taken and that they've received the payments that

22  Ms. Coleman just referred to.

23           Further, the Israeli Innovation Authority,

24  which -- which is an entity that funds technology development

25  in Israel and has provisions in Israeli law that provide that

1  if assets are sold, there's the equivalent of a transfer tax

2  perhaps -- I don't know the details of it, but there's a fee

3  that has to be paid or return of funds that were -- that the

4  Innovation Authority provided.  And as I understand it under

5  Israeli law, that's a priority-type claim.

6          In this case, the assets were sold.  And I think,

7  as the Debtor has conceded factually, they were not noticed

8  about Chapter 11 or the sale, and they've now since tried to

9  notice the Israeli Authority.

10          And so the problem with those two examples is that

11  if the Debtors here were to give 136,000 to Ms. Reese, she

12  would not be able to use it to pay the employees because

13  they've already been paid.  And then there are statutory

14  priorities that she's honored to comply with in Israel.

15          I do think, however, that there is a potential

16  solution, and I think that some of what's been said touches

17  on it, which is I think it would be fair for Judge Brenner

18  (phonetic), who is the judge presiding in Israel, to be made

19  aware of Your Honor's views, including but not limited to

20  perhaps a suggestion that there's an effort to allow the two

21  of you to speak to each other or require some type of

22  conference where these issues are addressed in a more fulsome

23  way with time that's been allowed.

24          As I stated in my pleadings, I've had about two

25  and a half days to catch up on this, and there's a seven-hour

1  time difference.  So I think perhaps -- and we have two

2  court -- two officials, two proceedings.  The impact of the

3  Israeli proceeding, as stated in our papers, is that the

4  Israeli trustee is supposed to displace the board and the

5  officers and operate it.

6          I certainly understand that that's a controversial

7  and difficult point for Chapter 11 professionals and courts

8  to wrestle with.  So I'm not pressing, you know, aggressively

9  that Your Honor should recognize that and allow my client to

10  start firing people.  I believe she thinks she has the

11  authority to do so, but I think that I agree with Your Honor

12  that finding a solution to coordinate these two proceedings

13  would be useful, and I don't know what Judge Brenner will do.

14  If Your Honor --

15          THE COURT:  Well, you do understand the argument

16  of the Debtor that the proceeding filed in Israel by the

17  employees is void ab initio because it was a violation by

18  those employees of the automatic stay.  You understand that

19  as their position?

20          MR. MARTIN:  I do understand that as their

21  position, but as I pointed out in the objection, that'd be a

22  violation of 362(a)(1), which prohibits actions that could

23  have been asserted on a pre-petition basis.  And as I

24  understand it, the basis for that application was the

25  nonpayment of post-petition wages.

1          So we've submitted that in fact -- I don't

2    represent those employees, but I've submitted that as a

3    matter of fact, the case law that addresses void ab initio,

4    such as the Soundview (phonetic) case and the other cases,

5    and Nikesh (phonetic), Golden Honey (phonetic).

6          There was a pending foreign proceeding first, and

7    the Chapter 11 was filed second.  And the professionals in

8    the foreign jurisdictions continued taking actions after the

9    filing of the Chapter 11.  So that was a continuation of a

10   pre-petition action where the -- where the action is

11   commenced or post-petition violation.  I don't believe that

12   it satisfies that language I referred to.  It --

13          THE COURT:  Well, I believe that the employees, if

14   I understand Ms. Coleman correctly, are owed pre-petition

15   claims, as well as post-petition claims.  So they were owed

16   for severance and other items.

17          MS. COLEMAN:  That's -- that's --

18          MR. MARTIN:  (Inaudible) --

19          MS. COLEMAN:  -- correct, Your Honor.

20          THE COURT:  So that's their hook, if you will.

21          MR. MARTIN:  All right.

22          MS. COLEMAN:  Well, Your Honor -- may I just

23   respond on that one point?  We're also talking about multiple

24   violations of 362(a)(3), efforts to exert control over the --

25   over the estate, which -- which has been done multiple times.

1  Certainly was done by the initial filing, as well.  So it's

2  not just an attempt to collect both pre-and-post-petition,

3  which are in violation of 362(a)(1).  We also have multiple

4  violations of 362(a)(3).

5           And Your Honor, here -- here's the problem.

6           THE COURT:  Well, let -- let me say, first of all,

7  that I think you need to prove that the initial filing void

8  ab initio.  I think that the actions of the Trustee as a

9  representative of a foreign court, I would be reluctant to

10 hold that as a violation of the automatic stay, just as --

11 and I don't know if Israel has similar law -- just as you

12 cannot be sued in your capacity as the professional appointed

13 by this Court for actions you take, unless I give permission

14 for you to be sued or unless you're sued in this Court.  I

15 think --

16           MS. COLEMAN:  That is -- that is -- we certainly

17 agree with that, Your Honor.  And we are not -- and that's

18 the Barton doctrine.  And we are not suing Ms. -- we are not

19 suing Ms. Reese in that capacity.  All we are doing is

20 purely -- it's purely defensive, and I think it's important

21 to realize what we're asking for here.  We are asking for an

22 order barring the whole world from taking action to kick Mr.

23 Feltman out.

24           And that's -- that's really the problem here.  The

25 problem -- we do not have -- these are not two concurrent

1  proceedings.  Concurrent proceedings, a dual plenary process,

2  is when one fiduciary says, I need to go to another

3  jurisdiction for a complete and perfect restructuring.  We --

4  that's not -- it's not that the Nuvo boards, the three

5  Debtors, did not think about this when they were filing the

6  case.

7            They thought about where to file and where they

8  needed to file to get complete relief.  And they chose to

9  file in the U.S.  And when the cases were filed and Mr.

10  Feltman was appointed as CRO and now he's the only person in

11  charge and the only officer and Ms. Barbara Scholl (phonetic)

12  who is on -- on the line is the only board member of all

13  three Debtors.  They -- they decided they didn't need to go

14  to Israel either.

15            The Israeli process -- which we can certainly hold

16  a separate proceeding, and we will absolutely prove to you

17  that it's void ab initio, if the Court would like that to --

18  to be an issue to be heard.  The problem is not -- it's

19  irrelevant that we have two jurisdictions.  Usually, you have

20  one fiduciary, one estate --

21            THE COURT:  I'm --

22            MS. COLEMAN:  -- you know, one -- and -- and maybe

23  two jurisdictions here.  We have one -- we have two

24  fiduciaries competing over the same estate.  Two people can't

25  drive the same car at the same time.  It just doesn't work

1  and that's not a thing.  And that's what we're struggling

2  with here.

3          And we're not trying to say that Ms. Reese in her

4  capacity -- and we're not trying to sue her in her capacity

5  because she is, by the way, trying to sue us in our capacity

6  as professionals, but presumably, we'll get that all worked

7  out and neither of us is going to proceed against the other.

8          All we want is -- is the order that Your Honor

9  already entered on an interim basis, and we understand that,

10  look, it may be the case that you leave the order in place,

11  and we already have a hearing set for next Wednesday.  Maybe

12  we go and talk to -- talk to Mr. Martin and Ms. Reese and we

13  can come up with something.

14          But our problem is that, from the Debtor's

15  perspective, we are almost done with these cases.  We can't

16  have a redo in Israel.  That's what Mr. Blinbaum asked Your

17  Honor to let him do, and you shut him down because it doesn't

18  matter that had we filed in Israel, one Creditor might have

19  priority under Israeli law, if the case proceeded in Israel.

20          That's -- that's why Debtors get to choose among

21  jurisdictions.  They can choose what's best for all

22  creditors, and that's what these Debtors did.  And Ms. Reese

23  cannot come in as an appointee of one of the three Debtors

24  and say, you get to redo this whole claims process in Israel,

25  and I'm going to unwind the sale, which is what she wants to

1  do, and do this case -- and do this one case out of the three

2  all over again in Israel because one Creditor or maybe two --

3  I don't know what the Tax Authority has -- but one Creditor

4  might have authority had we done the whole thing in Israel

5  from the get-go.  That's not how this is supposed to work.

6          MR. MARTIN:  And Your Honor, you can appreciate

7  that we have different views.  The -- I think you've hit the

8  nail on the head a bit, which is -- and I appreciate the

9  Court's comments.  I certainly will communicate them to the

10 Israeli Trustee, which is the -- I don't know what the legal

11 effect would be of Your Honor finding that the initial

12 proceeding was void ab initio, whether that would then be

13 something that the Debtors would take and seek recognition of

14 and ask the Israeli court to dismiss the Israeli Trustee's

15 proceeding.

16         Certainly, the entry of that order is only

17 powerful enough to the extent that it gets observed within

18 Israel.  And I don't know what the reaction to the Israeli

19 court of that would be.  So we've, obviously, requested that

20 the interim order be vacated and this be brought -- all of

21 this be brought to the Israeli judge's attention.

22         He has a response deadline of May 19 for the

23 Debtors to respond to the international comity issues.  He's

24 set a hearing for next week in Israel.  And so there will be

25 an opportunity to address those issues.

1        As to the pursuit for damages, the reason I'm here

2   is because the motion sought compensatory and punitive

3   damages against the Israeli Trustee.  I'm glad to hear that

4   perhaps that's been rethought, but that's what the

5   application was.

6        So to the extent Your Honor wants to put in place

7   an order that continues the application to permit the Debtor

8   to prove that the original commencement of the case was void

9   ab initio, and in the meantime, we take this transcript to

10  Israel and have a hearing next week where the judge there is

11  brought up to speed on Your Honor's views.  That may allow

12  time to proceed in a more orderly fashion and give the

13  parties a chance to talk based on a bit more time and the two

14  courts' views of their respective jurisdiction.

15       MS. COLEMAN:  Well, Your Honor, let me respond to

16  that.  Just as -- just as Ms. Reese apparently does not

17  believe that this Court has jurisdiction over her, and we

18  have a response to that, the Debtors very strongly contest --

19  particularly the Debtors' professionals, which is -- which is

20  what the action relates to -- very strongly contest that the

21  Israeli court has any jurisdiction over us.

22       And, again, these are not these are not parallel

23  proceedings of equal dignity.  We mean no disrespect to

24  Israel, and -- and this is what I meant when I started out

25  before we started talking about solutions.

1        This is what I meant when I said that Ms. Reese is

2   trying to make this into something that it is not.  This is

3   not a big, international kerfuffle that involves, to use a

4   technical term, that -- that involves complicated questions

5   of Israeli law and international jurisdiction and comity

6   between sovereign courts.

7        As Your Honor recognized, Court position -- and I

8   I -- I think it can hardly be -- it can hardly be disagreed

9   with, Your Honor.  I'm happy to make -- you know, have a full

10  hearing about this, and we can have Ms. Hirsch (phonetic)

11  testify and all that.  But -- but nobody came to this Court

12  and said, we need relief of the automatic stay so that we can

13  go and get our extra money from Israel.

14       If they had asked for that, we would have said

15  yes.  And all of this could have been avoided, but they

16  didn't.  Ms. Hirsch, as you know -- and we've -- we've

17  introduce evidence to this effect by -- by declaration that's

18  now admitted into evidence, and nobody has -- nobody has come

19  forward to contest it.  If you want to give Ms. Hirsch the

20  chance to retain counsel and come and contest it, I guess we

21  can do all of that at the expense of money that we don't

22  have.

23       But what she did, by uncontested evidence, is she

24  took our -- she took our compensation to pay the employees.

25  She didn't do it.  And instead of that, she rounded up

1  employees.  And without telling anybody, she went to court

2  and started the Israeli -- then started the Israeli

3  proceeding.

4         Now, the employees did tell the court -- and you

5  have all of this -- you'll have all of this in the -- in

6  the -- in Mr. Feltman's declarations and the exhibits there,

7  too.  And -- and if somebody else who is online can tell me

8  which one, but there --

9         THE COURT:  I saw it.

10        MS. COLEMAN:  Yeah.  So you -- you saw it.  So

11  they told the court, this will have no -- no, don't worry

12  about the pendency of Chapter 11 because this proceeding

13  won't have any effect on the Chapter 11.  Well, they sure

14  turned out to be wrong because -- because it -- it did.  It

15  started -- it started a very expensive firestorm, and

16  that's -- that's why we're here.

17        If it had had no effect and the employees had

18  simply gone and gotten their money, if they've been paid and

19  $136,000 is available for other creditors, that's great.  We

20  got plenty of them, including -- including potentially the

21  Israel Innovation Authority.  But -- and -- and we can fight

22  about what priority, whatever claim the IIA has.  But, again,

23  it should all be before Your Honor.

24        Mr. Feltman can -- can do everything that needs to

25  be done in these cases in the United States before Your

1   Honor.  We don't have any need for any relief from Israel.

2   And if what Mr. Martin says is true -- I have no idea.  But

3   if what Mr. Martin says is true and the Israeli Innovation is

4   part of -- the Israeli -- Israeli state agency has already

5   paid the Creditors what they're due in their Israeli social

6   payments, then tell me what there is to do in Israel that is

7   not relitigating everything that has already been done in

8   this case.

9           And I don't -- I have never seen a copy of a court

10  order in Israel telling Ms. Reese to do any of this stuff.

11  She has the powers of the Trustee.  She has investigative

12  powers, but here we are talking -- you know, having a bunch

13  of non-Israeli lawyers talking about what Ms. Reese says,

14  she -- her own interpretation of what she has to do is.  And,

15  Your Honor, there's simply -- these -- these estates have

16  been -- have been effectively funded.

17          The one thing remaining to do, which -- which Mr.

18  Feltman has already done, is -- is started accessing the D&O

19  insurance.  There -- there's -- it's simply -- the Israeli

20  proceeding, especially if the -- if the employees have been

21  paid, is simply unnecessary.  And this is not something that

22  the Debtor in the U.S. said, we need some relief in Israel;

23  I'm going to go get it.

24          This is, again, an involuntarily and -- you know,

25  and commenced -- even if it wasn't commenced in bad faith,

1   which we believe it was, it was commenced in violation of the

2   automatic stay because nobody came to Your Honor and asked

3   first as to damages if this is -- yeah, that we will -- we

4   will reserve our rights in terms of -- in terms of assessing

5   the cost of all of this.

6          And, you know, look, that's not the important

7   part.  The important part is we need Your Honor's protection

8   by continuing as a permanent matter the order that you

9   entered.  We cannot have that order vacating because we

10  cannot have the situation where -- where there's some

11  question as to whether these Debtors are protected by the

12  automatic stay.  They are, and they have been automatically

13  since the day that they filed Chapter 11.

14         And just because Ms. Reese might be acting in

15  accordance with her statutory duties, that doesn't mean that

16  those things are not also stay violations.  We're not going

17  to sue her about them, but it doesn't mean that they have any

18  force.

19         And in fact, for example, a state -- a state

20  employee in the U.S. -- it doesn't matter if this is all in

21  Israel.  It makes it sound interesting and cool, but this

22  could be Texas.  A state employee of Texas has a statutory

23  obligation to collect taxes, say.  That -- that is his

24  statutory obligation.  But if he does it in a manner that

25  violates the automatic stay, he's still violating the

1   automatic stay.

2          THE COURT:  But there's a serious question as to

3   whether I have jurisdiction over her.

4          MS. COLEMAN:  Your Honor --

5          THE COURT:  Why do I have jurisdiction over the

6   Israeli Trustee?

7          MS. COLEMAN:  Well, let -- let me let me address

8   that.  You have -- you have specific jurisdiction over the

9   Israeli Trustee.  So the rule of the Third Circuit is that --

10  well, first of all, she has -- she has come here, and she has

11  asserted hegemony over money that is in the United States,

12  purported to take --

13         THE COURT:  In what manner has she appeared in the

14  United States?

15         MS. COLEMAN:  Well, she has not appeared in the

16  United States, but she has written to Mr. Feltman multiple

17  times demanding that he turn over money that is being held in

18  the United States.  So --

19         THE COURT:  Well --

20         MS. COLEMAN]:  Well, it's -- it's attached.  She

21  has letters demanding the turnover of all money that Mr.

22  Feltman is holding in The United States.

23         So -- so the Zawawi case, Your Honor -- I'm sorry

24  for my voice -- the Zawawi case out of Florida is a -- is

25  a -- is a good assertion of this.  So when a bankruptcy court

1    has to determine personal jurisdiction, the court considers

2    allegations of the complaint, as well as written evidentiary

3    submissions and affidavits.  That's Zawawi 644 B.R. 907.  We

4    will provide the Court with a copy.

5              We need to only establish a prima facie case.  The

6    burden is met of jurisdiction -- of specific jurisdiction

7    where legally sufficient allegations of jurisdiction,

8    including an affirmative facts that have credited would

9    suffice to establish jurisdiction of the party.

10             THE COURT:  Are you telling me -- are you telling

11   me I have jurisdiction over anybody sitting in another

12   foreign country who sends an email to a U.S. citizen -- a

13   U.S. Debtor?  You think I have jurisdiction because they sent

14   an email demanding money?

15             MS. COLEMAN:  No, I'm -- I'm not, Your Honor.  I'm

16   not, Your Honor.  It would -- Your Honor, the -- the -- Ms.

17   Reese has -- has purported to take action and to tell Mr.

18   Feltman and others that they have no authority to

19   represent -- to represent a Chapter 11 Debtor that is in a

20   case pending in the U.S.

21             It seems to me that it comports with fair play and

22   justice -- so the -- the three -- the three allegations

23   are -- (clears throat) excuse me -- were the actions directed

24   at the U.S., which they were.

25             You know, honestly, Mr. Abbott, could you take

 1  over?  My voice is just failing me, and I don't want to sound

 2  annoying.  But would you be able to --

 3          MR. ABBOTT:  Yeah, I can -- I can certainly try.

 4          Your Honor, the -- I think when you're talking

 5  about establishing specific personal jurisdiction over --

 6  over a foreign person -- if you give me a second, let me just

 7  get to the right place in some papers, Your Honor, if I may.

 8          The Third Circuit requires, as I understand it,

 9  really two prongs.  Number one is -- can I have just one

10  moment, Your Honor?  I apologize.  I've got to find the right

11  papers here.

12          THE COURT:  Take your time.

13          MR. ABBOTT:  Thank you, Your Honor.  I'm sorry

14  about that.

15          When a defendant raises a defense to the Court's

16  lack of personal jurisdiction, the plaintiff has to come

17  forward with sufficient facts to establish the jurisdiction's

18  proper.  What we need to do to make that happen, Your Honor,

19  is established with reasonable particularity, sufficient

20  contacts between the Defendant and the foreign state.

21          Here, we've got ample submission of communications

22  and evidence for Mr. Feltman.  But the standard is pretty

23  straightforward, Your Honor.  First, that foreign party has

24  to have purposely directed its activities at the forum.

25  Second, the party who brings the action -- must have claims

1  that arise out of or relate to the Defendant's activities.

2          And then lastly, you know, consistent with

3  international (inaudible), Your Honor, the exercise of

4  personal jurisdiction must offend traditional notions of fair

5  play and substantial justice.  Your Honor, that -- that comes

6  from the Danziger and De Llano, LLP v. Morgan Verkamp case,

7  which is 948 F.3d. 124 at 129 to 130.  That's a Third Circuit

8  case from 2020, Your Honor.

9          THE COURT:  Well -- well, don't you also have to

10 serve Ms. Reese --

11          MR. ABBOTT:  Your Honor --

12          THE COURT:  -- to exercise jurisdiction over her?

13          MR. ABBOTT:  Look, I think service is important,

14 and candidly, as Mr. Martin and I discussed yesterday, we're

15 in a little bit of an interesting place.  We did give her as

16 much notice as we reasonably could, Your Honor.  We -- we

17 provided email and I believe overnight service copies to her

18 of the papers.

19          But that's -- that's a fair question, Your Honor.

20 To the extent that she was not served, we're happy to go

21 through the process.  As I understand it in Israel, we would

22 need to hand deliver a copy to her.  But you know, in

23 fairness, she obviously had actual notice.  She was able to

24 retain counsel and appear.  He is -- he is here contesting

25 jurisdiction.  I'll acknowledge that.

1          THE COURT:  Right.

2          MR. ABBOTT:  But I'm not sure if that may be

3 waiver of the service question or not.  I'm not going to try

4 to hold Mr. Martin to that.

5          But I think the practical answer is that she has,

6 as we've described, taken actions inconsistent with the stay.

7 Our allegations, I think, in this procedural circumstance

8 have to be viewed in the light most favorable to us.  And --

9          THE COURT:  I think that the problem with that is

10 if she is acting as a -- an appointed official of a foreign

11 court, don't we have a jurisdictional issue here?  Can I

12 order the Israeli court to dismiss that case?  Let's get to

13 the bottom line.

14          MR. ABBOTT:  Your Honor -- Your Honor, I don't

15 think we're asking you to order the Israeli court to dismiss

16 the case, but I think we are asking you to find that the case

17 was initiated in violation of the stay, and thus, it's void

18 ab initio.  How that plays out through the Israeli court, I

19 guess we'll have to work through, but that seems to us to

20 undeniably the case under U.S. law.

21          I take the Court's point that, you know, we

22 addressed at the beginning of the hearing about trying to

23 find a way for the parties to work together.  Mr. Martin and

24 I tried to do some of that yesterday.  We, unfortunately, did

25 not have adequate time to do it before the hearing today.

1          I personally think that there is a manageable way

2    through the thicket.  Whether it's something that Mr. Feltman

3    will agree with me on and Ms. Reese will agree with me on

4    remains to be seen.  You know, candidly, you're on a part of

5    what we were talking about yesterday was just a way to buy

6    some time for the parties to have that discussion without

7    further drama and suing in either court.

8          THE COURT:  Agreed.  That would be nice.

9          MR. ABBOTT:  Okay.  I think Mr. Martin and I both

10   recognize that each court probably would prefer that.  Where

11   we ran into trouble just in the literally 24 hours or so that

12   we had the talk about it, was the fact that there's a

13   perceived imbalance because we've got Your Honor's interim

14   order, and there's not an equivalent interim order in place

15   in Israel.  There are -- you know, there is an order of the

16   Israeli court --

17         THE COURT:  Yes.

18         MR. ABBOTT:  -- that suggested Ms. Reese is the

19   only one to control these Debtors.  That's, obviously, in

20   conflict with our position in the automatic stay.

21         But I -- and I don't have authority from Mr.

22   Feltman for this point right now, Your Honor.  But I do think

23   that it makes sense for the parties to have a cooling off

24   period and the ability to talk without either party being

25   subject to further proceedings at either Court.

1          It may be that we can get to an agreement; it may

2    be that we can't.  Your Honor, we obviously brought this to

3    this Court on an emergency basis because there were things

4    happening in the Israeli court that were forcing us to

5    respond.  There were things happening here where Ms. Reese

6    was forcing us to try to respond to things.

7          You know, one of the problems is that we believe

8    we've got -- and I think the law is clear, the benefit of the

9    automatic stay is that extends worldwide.  I recognize and

10   understand the difficulty that this Court is, obviously,

11   facing when it considers the fact that a proceeding has been

12   commenced and an order has been entered.

13         You know, I do think it would make sense to give

14   the parties that time to work without the pressure of having

15   to proceed both places.  I think Your Honor's interim order

16   does that.  I recognize there's not a perfectly analogous

17   order from the Israeli court to that extent, but I'm

18   certainly willing to commit to speak with Mr. Martin try to

19   find resolution over the next days.

20         You know, it's complicated enough, Your Honor,

21   that it may take more than just a few days, but I wonder --

22         THE COURT:  Let me -- let me ask you or Mr.

23   Martin.  What -- first, when is my hearing?  Do I have a

24   further hearing on the original motion?

25         MS. COLEMAN:  No, Your Honor, but we -- we have

1  a -- we have an omnibus hearing set for next Wednesday.  This

2  is Ms. Coleman.  Sorry.

3           THE COURT:  Okay.  Thank you.  Next Wednesday,

4  which is May what?

5           MS. COLEMAN:  21st.

6           THE COURT:  21st.  Okay.  And Mr. Martin, when is

7  the Israeli court's next hearing?

8           MR. MARTIN:  I will answer that question in one

9  moment.  Because of my technology issues, have to switch over

10 to a different screen to answer that question.

11          MS. COLEMAN:  I think --

12          MR. MARTIN:  If it'll let me get there.

13          MS. COLEMAN:  Mr. Martin, this is Ms. --

14          MR. MARTIN:  The response is due by May 19th, and

15 the reply is due by the 20th with a hearing on May 21 at

16 11:30 Israeli time, which would be, you know, 3:00 or 4:00

17 a.m. U.S. time.

18          MS. COLEMAN:  I think -- Mr. Martin, I think we

19 have to check that with -- with Israeli counsel because there

20 was a -- it's a little confusing.  There was that hearing

21 set, but then the Israeli Court asked -- asked Ms. Reese to

22 make a submission on jurisdiction, and then and then there

23 was going to be two days after that submission was made.

24          And so I'm not sure -- you might be right, that --

25 that hearing might still be going forward.  I would suggest

1  that it might be a good idea to use the May 21st hearing here

2  as a status conference where neither party is seeking any

3  relief.

4         And if we could ask that the hearing in the

5  Israeli court be delayed.  And the reason -- one of the

6  reasons for that, Your Honor, is that Maytar (phonetic), the

7  Debtors' Israeli counsel, does not represent the seven

8  individual professionals that Ms. Reese is proceeding against

9  in that -- in the action that she just started in Israel.

10  And that's me, Mr. Margolin, Mr. Gartman, Mr. Feltman, Mr.

11  Miller, Mr. Abbott, and Ms. Mum (phonetic) from, you know,

12  respectively, Teneo and HHR and -- and Morris Nichols.

13         So if we don't have counsel, we have to hire

14  Israeli counsel because they try to represent us.  And that

15  will take a little bit of time.  If we could avoid having to

16  do that and have agreement with Mr. Reese that that hearing

17  could be -- could be put off and then use the hearing before

18  this Court as a step, which has jurisdiction over all three

19  of these cases, as a status conference, and we would agree

20  that we will not pursue any damages or anything like that and

21  just leave Your Honor's interim order in place, that would

22  strike me as something that could end up being productive.

23         THE COURT:  Mr. Martin?

24         MR. MARTIN:  Your Honor, I think in light of your

25  comments today, I'm certainly going to be discussing the

1  portion of the relief side against the professionals in these

2  Chapter 11 cases.  And I won't tell you what I'm going to

3  tell my client, but I'm sure Your Honor can imagine.

4            THE COURT:  I can imagine.

5            MR. MARTIN:  So while I think -- so while I think

6  I can address that issue, I doubt I can address the issue of

7  persuading her to allow the Israeli court to stand down on

8  Wednesday to address the international comity issues that

9  were -- that were risen by the initial application.

10            THE COURT:  Well, I hate to be forced into a

11  position in order to make the decision as to whether the

12  entire Israeli proceeding was void ab initio under United

13  States law.

14            MR. MARTIN:  May I make a further suggestion, Your

15  Honor?  I think Section 362(e) allows the Court to conduct

16  preliminary hearings before conducting a final hearing within

17  30 days.

18            So perhaps Your Honor could treat this as a

19  preliminary hearing, adjourn it until the -- adjourn the

20  preliminary hearing until the omnibus hearing on Wednesday,

21  schedule a final hearing perhaps on that day to allow the

22  Debtor to put on whatever proof they want that the employees

23  may have violated the stay.

24            And that will give us some time to also express

25  the Court's views of this preliminary hearing to the Israeli

1   Court since the Israeli hearing on Wednesday is going to be

2   completed by the time our day starts, we'll be able to update

3   Your Honor on what happened at that hearing and maybe we can

4   go from there on Wednesday.

5           And like Mr. Abbott, I will commit that in the

6   meantime, I will certainly be willing to use whatever offices

7   I have on my client to see if I can address the issues

8   against the individuals that are professionals in these

9   cases.

10          THE COURT:  Well, and also see if your client

11  would agree to a stand down completely on the 21st so that

12  both parties would simply be reporting to their respective

13  Courts on a status, but not seeking additional relief.

14          MR. ABBOTT:  Your Honor, I think that would be

15  pretty critical because we can't be, again, in an asymmetric

16  situation where one of us is standing down and relying on the

17  Court's interim order and the other is taking action.  But it

18  does make sense to me, Your Honor.

19          Would it make sense, Your Honor, to just adjourn

20  this hearing for ten or fifteen minutes to allow me to confer

21  with Mr. Feltman and perhaps Mr. Martin to at least try to

22  confer with his client about some sort of cooling off period

23  or negotiation period whatever you want to call it, Your

24  Honor?

25          MR. MARTIN:  I think that as you know, Mr. Abbott,

1   in order for me to have that conversation to be meaningful,

2   the interim order that imposes the stay against her is going

3   to have to potentially go away.  And the interim order

4   already declares the action void ab initio.

5          So if we have a scheduling of these events and the

6   commitment is some type of a stand down without an order

7   imposing the stay on her, that's a different conversation

8   than one in which the existing order stays in place.  And I

9   have to persuade her to stand down on her side, but you guys

10  don't have to on your side until Wednesday.

11         Sorry to negotiate on the record, Your Honor, but

12  this is an unusual situation.

13         THE COURT:  Well, I'm happy to facilitate.  I'm

14  happy to facilitate.  Well, my order issued last -- yes, this

15  week is an initial order.  Can we get the parties to

16  stipulate to no orders or the rescission of both orders or to

17  an agreement that I'm sure counsel can come up with language

18  they can agree to?

19         MR. ABBOTT:  Your Honor, I think -- I think there

20  might be a challenge in getting -- in getting parties to

21  agree to aggregation of orders and requiring the Israeli

22  court, for instance, to (inaudible) something like that.

23  What I think we should work on is an agreement between the

24  parties that, notwithstanding orders in place, actions won't

25  happen that attempt to prejudice the other party for some

1  reasonable period of time to allow us to try to find a way to

2  work together moving forward.

3          And that -- again, that makes sense to me.  I've

4  got to speak with Mr. Feltman to make sure it would make

5  sense to him and obviously Mr. Martin's got to talk to Ms.

6  Reese.  But I -- it seems to me there's a willingness or at

7  least the kernel of some hope here that there's a way to get

8  that that might benefit from some time to chat.

9          I recognize Your Honor is reluctant to enter a

10 final order sticking a finger in the Israeli court's eye, for

11 obvious reasons.

12         THE COURT:  Well, it's not in the eye of the

13 court, but I mean, yeah, making the decision that probably

14 the parties should work out rather than fight over.

15         MS. COLEMAN:  Your Honor, it's Ms. Coleman.  I do

16 want to very much emphasize that we are not in any way

17 challenging the sovereignty of the Israel court.  We are not

18 asking Your Honor to order the Israeli court to do anything.

19 We're not asking you to say the Israeli, you know, case

20 should be dismissed at all.  And so we don't want to stick a

21 finger in the eye of the Israeli court at all.

22         I just want to make that -- I just want to make

23 that very clear.  And that's that -- that was never really

24 that issue.  It -- our view, quite honestly, is that -- is

25 that the order that we requested from Your Honor and that

1  Your Honor entered on an interim basis, as I said before,

2  was -- was -- before I lost my voice, was purely defensive.

3  And -- and we are simply seeking protection -- we are simply

4  seeking an enforcement of the existence of the worldwide

5  automatic stay and any actions by anybody that -- that

6  violate that.

7          Maybe they don't create liability because they are

8  taken by somebody in in further into the official duties, but

9  neither can they have any -- any force and effect to impede

10  the progress of the Chapter 11 cases.  That's all we were

11  looking for.

12          But it seems to me like maybe we are getting to a

13  point where that order can stay in place on an interim basis.

14  But as Mr. Abbott suggested, nobody's going to do anything to

15  seek to prejudice the other party while we try to see if

16  there's a way to work this out because, Lord knows, the worst

17  possible outcome is continuing to -- and you know, both --

18  both parties are spending money they don't have from the same

19  nonexistent fund of money right now.  And that's -- that's a

20  really untenable situation for the Creditors of these

21  estates.

22          THE COURT:  I agree.  Mr. -- let's do this and

23  let's take time.  I have time to -- how long do you think you

24  need Mr. Martin to talk with your client?

25          MR. MARTIN:  Probably --

1        THE COURT:  And then Mr. Abbott?

2        MR. MARTIN:  Probably at least 15 or 20 minutes.

3   I first have to find her as it's coming on 6 o'clock at night

4   on Shabbat.  I do think she will be available as she -- she

5   told me that I could likely find her, but I have to track her

6   down first.

7        MR. ABBOTT:  Your Honor, what if we came back at

8   11:30?

9        THE COURT:  Let's do that.

10       MR. ABBOTT:  In the interim, Mr. Martin can try to

11  speak with his client.  I'll speak with Mr. Feltman and Ms.

12  Coleman, and ideally, maybe even we can speak with Mr. Martin

13  and his client at some point during that window and maybe

14  11:30 gives us enough time to at least get that started and

15  see where we can go.

16       THE COURT:  All right.  We will recess until 11:30

17  then.

18       MR. ABBOTT:  Thank you, Your Honor.

19       THE COURT:  Thank you to the parties to try and

20  work this out.

21       MS. COLEMAN:  Thank you, Your Honor.

22       MR. ABBOTT:  You, Your Honor, I presume we can

23  dial back into the same, or should we just mute everything

24  and --

25       THE COURT:  You can dial back in, or you can mute

1  and leave it.  I'm going to mute everything here, too.

2            MR. ABBOTT:  All right.

3            THE COURT:  Let me ask the (inaudible) what is --

4            MR. ABBOTT:  Sure.

5            THE COURT:  -- the best to do.

6            MR. BLINBAUM:  Your Honor, may I make a comment?

7            THE COURT:  Who is -- who is speaking?

8            MR. BLINBAUM:  Jacques Blinbaum.

9            THE COURT:  Well, what position do you have to

10  talk about?

11            MR. BLINBAUM:  I just thought I might just make an

12  observation.  I -- you know, with respect to what's going on

13  in Israel, the IIA has a very big interest in this.  And in

14  all this conversation I've been listening to, there hasn't

15  been very much focused on the interest of the IIA, which was

16  known to everybody all along during these proceedings.

17            And I think -- I think that settling anything in

18  Israel is going to be more contingent upon settling with the

19  IIA than the employees and any monetary because it -- it goes

20  to the question of who has intellectual property.

21            THE COURT:  Mr. Blinbaum, you can't speak on

22  behalf of the IIA.

23            MR. BINBAUM:  Okay.

24            THE COURT:  And we're not dealing now with the

25  issues relating to it.

1    MR. BLINBAUM:  Okay.  But I think that's the

2 elephant in the room.  Thank you, Your Honor.

3    THE COURT:  I'm sure the parties can deal with

4 that.  Let me say you can all just mute your lines and the

5 hearing will be left available.

6    MR. ABBOTT:  Very well, Your Honor.

7    MS. COLEMAN:  Thank you.

8    MR. MARTIN:  Thank you, Your Honor.

9    THE COURT:  We will stand adjourned, and then the

10 recording will come off.

11    (Off the record at 10:54 a.m.)

12    (On the record at 11:28 a.m.)

13    THE COURT:  Can you hear me now?

14    MR. ABBOTT:  Yes, Your Honor.  Thank you.

15    THE COURT:  Okay.  Yes, you may have another 15

16 minutes, and again I'll keep the hearing open.

17    MR. ABBOTT:  Thanks very much, Your Honor.

18    THE COURT:  Okay.

19    (Off the record at 11:29 a.m.)

20    (On the record at 11:49 a.m.)

21    MR. MARTIN:  Hello, Your Honor.

22    MR. ABBOTT:  Good morning, Your Honor.

23    MR. MARTIN:  Hello, Mr. Abbott.

24    THE COURT:  (Inaudible).

25    MR. MARTIN:  (Inaudible) we both talking to each

1  other when you appeared, so --

2          THE COURT:  All right.  Can you hear me?  Can you

3  hear me?

4          MR. ABBOTT:  We can.  Thank you, Your Honor.

5          MR. MARTIN:  (Inaudible).

6          MR. ABBOTT:  We have taken -- the last literally

7  five minutes have made substantial progress.  But we think

8  it's probably prudent to take until 11 -- excuse me -- 12:15

9  to iron that out.  But I'm cautiously optimistic.  I don't

10  know if Mr. Martin is.

11          MR. MARTIN:  Yes, Your Honor.  I apologize.  I was

12  trying to transition from my cell phone to this connection.

13  Mr. Abbott and I were talking as you appeared.  And I

14  understand that they drafted an order that they want to send

15  to me that I can look at with my client.

16          I've had extensive discussions with both her and

17  Mr. Abbott, and we have made some progress.  So we would like

18  to continue talking as much -- as much as --

19          THE COURT:  All right.  I lost my internet here.

20  So hopefully I can get it back.  I am on my phone internet

21  hotspot, so -- but let's come back at 12:15.

22          MR. ABBOTT:  Thank you, Your Honor.

23          MALE VOICE:  Your Honor --

24          THE COURT:  Okay.  I will see you back then.

25          MR. MARTIN:  All right.  Thank you.

1              (Off the record at 11:51 a.m.)

2              (On the record at 12:14 p.m.)

3              THE COURT:  All right.  Can the parties hear me?

4              MR. ABBOTT:  You can, Your Honor.  I hope you've

5    got your internet back.

6              We have made further good progress, Your Honor,

7    but like all lawyer things, it takes more time.  We both just

8    talked a few minutes ago and think another 30 minutes would

9    be very advantageous, Your Honor.

10             THE COURT:  All right.  I'm here on standby so

11   let's move it to 12:45.

12             MR. ABBOTT:  Thank you, Honor.

13             MR. MARTIN:  Thank you, Your Honor.  We -- I'm

14   actually working on an order that Mr. Abbott and I have been

15   discussing.  So we are skipping lunch and using the time.

16   And my client is engaged and participating in discussions

17   with me, so we really are making progress.

18             THE COURT:  Good.  I'll see you in half an hour.

19             MR. ABBOTT:  Thank you, Your Honor.

20             (Off the record at 12:15 p.m.)

21             (On the record at 12:45 p.m.)

22             THE COURT:  Good afternoon.

23             MR. ABBOTT:  Now good afternoon, Your Honor.  We

24   continue to make very good progress, but we're not quite

25   there.  I think maybe it would make sense to take an hour at

1  this point till 1:45.  That will allow people to grab a bite

2  if they want and us to hopefully be done in the next hour.

3  But I think we're pretty far along.  I believe that Mr.

4  Martin is actually on the phone with his client as we speak.

5              THE COURT:  Should we just make it 2 o'clock, Mr.

6  Abbott?

7              MR. ABBOTT:  That's fine, Your Honor.

8              THE COURT:  Okay.  All right.  We will stay in

9  recess until 2 o'clock.

10              MR. ABBOTT:  Thank you, Honor.

11              MS. COLEMAN:  Thank you, Your Honor.

12              (Off the record at 12:45 p.m.)

13              (On the record at 2:00 p.m.)

14              MR. MARTIN:  We're coming back in, Your Honor.

15              MR. ABBOTT:  Good afternoon, Your Honor.  Thank

16  you for the time.  I think we've used it as productively as

17  we can.  I think we're largely in agreement on a number of

18  things.  We're stuck in a little bit of a semantic trap, Your

19  Honor, which I don't think is in bad faith.  And I'm going to

20  try to articulate it here.

21              Mr. Martin, I'm sure will correct me if I'm wrong,

22  but we feel like we've got the outline of an agreement that

23  would give us three weeks to try to work together to come up

24  with some sort of protocol.  The problem is, to get Your

25  Honor to enter an order that does that now would require the

1  Israeli Trustee to agree to things that she doesn't feel are

2  within her charter to agree, absent Israeli court approval.

3            And so what I think we would like to do, Your

4  Honor -- what I'd like to do is ask this Court to adjourn

5  this motion and this hearing until next Wednesday.  I would

6  ask the Court on the record today, modify the stay solely to

7  allow the Israeli Trustee to go seek that approval of the

8  Israeli court at the hearing that it has scheduled on next

9  Wednesday before this Court's hearing.

10            All parties will reserve rights in the interim.

11  We need to leave our existing interim order in place until

12  that happens, which I understand Mr. Martin will likely

13  object to.  But the only way that the Debtors are comfortable

14  making that agreement is if that order stays in place pending

15  that adjournment.

16            It's not a perfect solution, Your Honor.  It

17  does -- but I think it's the best we can do under the

18  circumstances.  And that will also give us another couple of

19  days to get the pen out and stop coming back every half hour

20  or hour here.  But I -- but I'm confident we can ultimately

21  get to agreement.  We just have to solve that chicken-and-egg

22  problem, and I'm asking you to solve it my way.  I'm sure Mr.

23  Martin is going to ask you to solve it his way.

24            THE COURT:  Mr. Martin?

25            MR. MARTIN:  Yes.  First off, Your Honor, thank

1  you for the time.  In the course of speaking with Mr. Abbott,

2  he asked me how I was doing, and I said, I'm tired.  This is

3  hard work.  But that's what -- that's part of our profession,

4  as I know Your Honor remembers from private practice.

5              THE COURT:  Yes.

6              MR. MARTIN:  So Mr. Abbott has captured it pretty

7  well.  The interim order at Docket 570 that Your Honor

8  entered -- it's hard to believe it may have only been

9  yesterday -- after the certification of counsel --

10 Certificate of Counsel was provided, has provisions in it

11 that my Trustee finds objectionable.

12             And she's worried that if she's seen as agreeing

13 to it in any way shape or form, that it will upset her judge.

14 So where we've really broken down is, I've been asking Mr.

15 Abbott and Ms. Coleman to agree to agree to vacate that order

16 subject to a subsequent order that would lay the groundwork

17 for a protocol, and they've been asking for that order to

18 remain in effect until we get it approved in Israel.

19             So Mr. Abbott's proposal -- I would like you to

20 vacate that order.  And Mr. Abbott objects to that and would

21 like you not to.  So that either leaves you in a place to

22 call balls and strikes or proceed.

23             I do not have an opposition to the adjournment.

24 You know, I'm here to challenge jurisdiction, not manage the

25 Court's docket.  I do appreciate that Mr. Abbott has

1  suggested that the way forward would be that at the hearing

2  on Wednesday in Israel, we will ask -- we'll continue to talk

3  about what the forms of a protocol might look like, and we

4  will present one to the Israeli court.

5          I think my Trustee feels that the judge will

6  approve a form of protocol along the lines that we've been

7  discussing with the other side.  But then we can come back on

8  Wednesday.  If we're all happy with what's happened in

9  Israel, then we need you to counter-approve the protocol.

10  Then when we put in place a new order, she won't be -- she

11  won't feel as if she's agreeing to something that will upset

12  her judge.

13          So that's the nub of the dispute.  I appreciate

14  Mr. Abbott and Ms. Coleman trying to be creative about how to

15  get us to the right place because I do think, if you look at

16  the substance minus one point that I won't bored the Court

17  with because it's not relevant, I think we've agreed on about

18  seven or eight different points, including agreeing to no

19  longer go after each other's sets of professionals, focusing

20  on the Debtor, focusing on the important issues related to

21  the claims and the assets of the estates, and working

22  together.

23          So I think this approach may solve it, but in case

24  you missed it, my client wants me to vigorously request that

25  you vacate the interim order at Docket 570.  Should you

1  choose not to do so, we will -- if the stay is modified, as

2  Mr. Abbott has requested, we will request that the Israeli

3  court take the issues up from the standpoint of trying to get

4  a protocol in place that works for him so we can share that

5  with you.  (Inaudible) --

6          MR. ABBOTT:  And Your Honor -- I'm sorry.  Go

7  ahead.

8          MR. MARTIN:  Go ahead.  No.  Go ahead.  I -- I was

9  just going to say, unless she has any further questions,

10 I'm -- I'm finished.  So go ahead, Mr. Abbott.

11         MR. ABBOTT:  Your Honor, and -- and we will commit

12 not to take any affirmative action in Israel pending her

13 seeking that approval, reserving only the right to react in

14 Israel if -- if she does something else.  I don't expect that

15 she will.  I think we've -- we've garnered a lot of good

16 faith here today.  But unless the interim order does stay in

17 place, I've suggested we're not going to be able to make that

18 agreement.

19         MS. COLEMAN:  Let me just -- this is Ms. Coleman

20 for the Debtors.  Let me add one thing to what Mr. Abbott

21 said, which I think is implicit, but I want to make clear.

22 We also will not take any action under that order in the

23 United States.  We understand that we're not going to be able

24 to do anything without Your Honor's approval anyway.

25         So I want to add, we will not take any action,

1 although it's important to us that the order stay in place so

2 that we are not going naked, so to speak.  We will commit to

3 Your Honor and to the court in Israel and to Ms. Reese and

4 Mr. Martin that the Debtors will not take any action that

5 would -- could in any way be seen adverse to -- to Ms. Reese

6 while we're waiting for Israeli court approval of this order,

7 which we understand to be necessary.

8            THE COURT:  Well, I am inclined to modify the

9 order as requested by the United States Debtors and not any

10 more.  Otherwise, leave it status quo, except as to the fact

11 that the parties have agreed to modify part of it.

12            And I think in part, I do that because I am

13 respecting the Trustee -- the Israeli Trustee's position,

14 that she is making a special appearance here and contesting

15 jurisdiction.  So to leave matters in status quo until the

16 resolution of protocols, as far as how the parties can

17 properly act not only in their courts but in foreign courts,

18 I think needs to leave my order in place while the parties

19 work out that protocol.

20            Is that okay?

21            MR. MARTIN:  I think the -- the -- maybe let me

22 restate what -- what Your Honor said.  I'm just trying to

23 help get to the right place.  So I think what you're saying

24 is you deny my -- you overrule my objection to vacate the

25 order.

1              THE COURT:  Right.

2              MR. MARTIN:  But as Mr. Abbott has requested on

3   the record, you so ordered this transcript so that the stay

4   is modified to allow the Israeli Trustee to bring these

5   issues before the court in Israel to address -- express an

6   opinion on the matters and potentially approve an agreed or

7   form of protocol between the parties and Israel?

8              MR. ABBOTT:  That's a little broader than I had

9   thought, Your Honor.

10             THE COURT:  I think it's hopefully to address a

11  protocol that the parties agree upon.

12             MR. ABBOTT:  (Inaudible), Your Honor.

13             MR. MARTIN:  (Inaudible) --

14             THE COURT:  But I --

15             MR. MARTIN:  I'll stay with hopefully.  I'll stay

16  with hopefully.  I can't see the future so that's fine.

17             THE COURT:  Okay.  Yes.  I'm hopeful that the

18  parties are halfway there, if not on -- they're at least on

19  the path and halfway there.  So I think this is the correct

20  way for the parties to proceed.  And so I will simply

21  continue this hearing until May 21st, subject to the

22  submission of a revised form of order under certification of

23  counsel with the (inaudible) --

24             MR. ABBOTT:  Your Honor --

25             THE COURT:  -- allow the (inaudible).

1      MR. ABBOTT:  -- (inaudible) there's one more

2  thing, and I apologize again to negotiate in front of the

3  Court.

4      THE COURT:  Okay.

5      MR. ABBOTT:  We just need the Trustee's agreement

6  that our Israeli counsel can appear at that hearing only in

7  case something goes wrong or otherwise to express support for

8  the Trustee's, you know, ability to get that protocol

9  approved.

10     There's a pending proceeding in Israel right now

11  that would prevent -- our Israeli counsel has tried to appear

12  in the matter, and that appearance has been objected to by

13  the Trustee.  And I just don't -- don't want to leave that

14  alone.  So I apologize.

15     I just thought of that, Mr. Martin, and my

16  apologies to you as well.  But I think we -- we need to make

17  sure that we can both do what we need to do there to get this

18  approved.

19     MR. MARTIN:  Well, I will say the following: it's

20  one of the many things that we agreed to that was an issue

21  that you discussed with me.  And so I understand that there

22  was no opposition to your Israeli counsel appearing at the

23  hearing subject to a reservation of rights as to the prior

24  lodged objection.  So I wouldn't be opposed to that.

25     I do want to advise the Court that, while I know

1   Mr. Abbott will capture what Your Honor has ruled today, if

2   it continues to contain the provisions from the order, I may

3   ask him to say that I do not agree to it and we continue to

4   object to it and that we --

5           THE COURT:  That's --

6           MR. MARTIN:  -- we retain our special appearance

7   for jurisdictional purposes, and then -- but I don't want you

8   to be surprised by that because I know it's a little

9   different than what normally happens under certification of

10  counsel.

11          THE COURT:  No, I fully expect that you are

12  reserving your rights.  That's why this hearing is being

13  continued.  And all you agreed to is the modification of one

14  paragraph to allow the Trustee to proceed in Israel, whether

15  you agree it's necessary or not, for that provision.

16          MR. ABBOTT:  Your Honor, I had procedurally

17  thought that we would just leave the order in place and use

18  this record modification by the Court to deal with it for

19  that period of time.  If the Court would rather we craft a

20  paragraph, we'll do that and submit it to Your Honor.

21          MR. MARTIN:  And my view would be that I like what

22  Mr. Abbott has just said because then there's no further

23  order that my client might accuse me of agreeing to another

24  authority.  Sorry to make it hard for Your Honor, but --

25          THE COURT:  All right.  I will -- I can just so

1  order the record if the parties are satisfied with that.

2          MR. ABBOTT:  Thank you, Your Honor.

3          MR. MARTIN:  Thank you, Your Honor.  And -- and I

4  believe that the minute notes will have the PDF on it, and I

5  can ensure that with the Israeli Trustee.  I will try to get

6  it transcribed quickly for the Israeli court, but he

7  apparently is waiting for an update.  So he may listen to it

8  himself.

9          THE COURT:  Okay.

10          MR. ABBOTT:  Again, we appreciate the Court's

11  flexibility, Your Honor, but I think we put the time to good

12  use, and we'll see the Court on Wednesday.

13          THE COURT:  All right.  I will see you Wednesday,

14  and I hope with good news.

15          MR. ABBOTT:  All right.  Thank you, Your Honor.

16          MR. MARTIN:  Thank you, Your Honor.

17          MS. COLEMAN:  (Inaudible), Your Honor.

18          THE COURT:  Thank you.  We'll stand adjourned.

19          MR. MARTIN:  Thank you.

20          MS. COLEMAN:  Thank you.

21          (Proceedings concluded at 3:20 p.m.)

22

23

24

25

1                           CERTIFICATION

2

3           I certify that the foregoing is a correct

4    transcript from the electronic sound recording of the

5    proceedings in the above-entitled matter to the best of my

6    knowledge and ability.

7

8    /s/ Wendy K. Sawyer                  May 17, 2025

9    Wendy K. Sawyer, CDLT

10   Certified Court Transcriptionist

11   For Reliable

12

13

14

15

16

17

18

19

20

21

22

23

24

25