**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ***In re*** | Chapter 11 |
| **NUVO GROUP USA, INC., *et al.*,**[1] | Case No. 24-11880 (MFW) |
| **Debtors.** | **Objection Deadline:** **August 24, 2026, at 4:00 p.m. (ET)** |
| | **Hearing Date:** **September 1, 2026, at 1:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS' CRO, THE ISRAELI TRUSTEE, AND THE D&OS; (II) THE SETTLEMENT AGREEMENT BETWEEN THE DEBTORS' CRO AND THE ISRAELI TRUSTEE; AND (III) RELATED CROSS-BORDER PROTOCOL**

The debtors and debtors in possession in the above-captioned cases (the "Debtors") respectfully state as follows in support of this motion (the "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "Proposed Order"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) (i) authorizing the Debtors to enter into and perform all obligations under the settlement agreement dated August 2, 2026, attached hereto as **Exhibit 2** (the "D&O Settlement Agreement") between the Debtors' Chief Restructuring Officer Scott Lyman (the "CRO"), Israeli trustee Idan Adler-Reiss (the "Israeli Trustee"), and certain former

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are: Holdco Nuvo Group D.G Ltd. (5756); Nuvo Group Ltd. (3811); and Nuvo Group USA, Inc. (2727). The Debtors' mailing address for purposes of these chapter 11 cases is Nuvo Group USA, Inc., c/o Epiq Corporate Restructuring, LLC, P.O. Box 4421, Beaverton, OR 97076-4421.

directors and officers of the Debtors (the "D&Os" and together with the CRO and the Israeli Trustee, the "Settling Parties")[2], (ii) authorizing the Debtors to enter into and perform all obligations under the Settlement and Cross-Border Agreement between the Israeli Trustee and CRO dated as of June 19, 2026, attached hereto as **Exhibit 3** (the "CRO/Israeli Trustee Settlement Agreement" and together with the D&O Settlement Agreement, the "Settlement Agreements"); (iii) approving the Settlement Agreements on a final basis, and (b) granting related relief.

## PRELIMINARY STATEMENT

2. By this Motion, the Debtors seek Court approval of two interrelated Settlement Agreements that pave a path to the conclusion of these chapter 11 cases in exchange for a settlement payment totaling $9,680,237.50 ($9.75 million less Debtors' half of the mediation costs, totaling $69,762.50) (the "Settlement Amount"). The settlements were achieved following a May 12, 2026 mediation among the Settling Parties and a subsequent mediator's proposal, and months of prior communications among the Settling Parties.

3. The settlements resolve the Debtors' claims against the D&Os, as well as the complex cross-border disputes between the CRO and the Israeli Trustee that arose over a year ago when an involuntary insolvency proceeding was commenced in Israel with respect to Debtor Nuvo Group Ltd. by certain of its former employees, resulting in the Israeli Trustee's appointment.

4. Pursuant to the CRO/Israeli Trustee Settlement Agreement, the CRO and the Israeli Trustee have agreed to an allocation of the total settlement consideration: $5,600,000 will be paid to the CRO's designated account, to cover U.S. legal fees and administrative expenses of these U.S. chapter 11 proceedings; the remainder of the Settlement Amount will be paid to the

2 The D&Os include Laurence Klein, Oren Oz, Kelly Londy, Daniel Gilcher, and Douglas Blankenship.

Israeli Trustee's designated account to be distributed by the Israeli Trustee in accordance with the terms of the CRO/Israeli Trustee Settlement.

5. Pursuant to the CRO/Israeli Trustee Settlement Agreement, the CRO and the Israeli Trustee also agreed to an allocation of the proceeds of the D&O Settlement Agreement and a cross-border protocol to govern the remainder of the Debtors' respective U.S. and Israeli bankruptcy proceedings. As a result of that agreement, other than administrative expenses relating to these U.S. chapter 11 proceedings, which will be administered before this Court, the claims resolution process with respect to Debtors Holdco Nuvo Group D.G Ltd. and Nuvo Group Ltd. (both Israeli entities) will be administered solely by the Israeli Trustee before the Israeli Court (as defined below). That claims process will include claims filed against those two Debtors in both the U.S. and Israeli proceedings. The Israeli Trustee will make any distributions on account of such claims from the proceeds of the D&O Settlement Agreement allocated to her.

6. The Israeli Trustee is concurrently seeking approval of the Settlement Agreements from the Israeli Court. The Settlement Agreements require approval by both this Court and the Israeli Court. While the Israeli Trustee is seeking approval of the Blocking Order (as defined in the D&O Settlement Agreement) from the Israeli Court under Israeli law, the CRO does not seek such relief from this Court.

7. The Debtors submit that the settlements provide a recovery that far exceeds the lowest point in the range of reasonableness, are in the best interests of the Debtors' estates, and should be approved. The Settlement Amount is substantial, particularly prior to the filing of a complaint. Absent approval of the settlements, the Debtors face millions of dollars of unpaid administrative expenses, costly contested litigation with the D&Os who deny all liability and have

presented numerous defenses to the settled claims, and a complex cross-border fight with the Israeli Trustee, all with no funding to do so. The settlements should thus be approved.

## JURISDICTION

8. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these chapter 11 cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A. Chapter 11 Filing

11. On August 22, 2024 (the "Petition Date"), after the Debtors closed a DeSPAC transaction on May 1, 2024 that resulted in Holdco Nuvo Group D.G Ltd. becoming a publicly traded company, the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors are operating as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in this case.

12. Additional detail regarding the Debtors, their business, and the events leading to the commencement of this case is set forth in the *Declaration of Robert Powell, Chief Executive Officer of the Debtors, in Support of First Day Relief* (D.I. 13) (the "First Day Declaration") and is incorporated herein by reference.

13. On December 12, 2024, following a marketing process and auction, the Court entered the *Order Approving Sale of Nuvo Group USA, Inc.'s and Nuvo Group Ltd.'s Assets & If Any, Assumption & Assignment of Executory Contracts & Unexpired Leases under 11 U.S.C. §§ 363 & 365* [D.I. 311], which approved the sale of assets from Debtors Nuvo Group USA, Inc. and Nuvo Group Ltd. to the purchaser, Nuvo Int'l Group Inc., pursuant to the Asset Purchase Agreement attached thereto. That sale closed on December 13, 2024 pursuant to the terms of the Asset Purchase Agreement [D.I. 318]. Pursuant to the Asset Purchase Agreement, the selling Debtors did not sell any of their claims against the D&Os. Debtor Holdco Nuvo Group D.G Ltd. was not a party to the Asset Purchase Agreement.

14. Following the closing of the sale discussed above in December 2024, the Debtors' claims against the D&Os are their largest remaining asset.

## B. Israeli Liquidation

15. Roughly six months after the Petition Date, in February 2025, an involuntary liquidation proceeding was commenced in Israel against Nuvo Group Ltd. (the "Israeli Liquidation"). The Israeli Liquidation is pending before Judge Hagai Brenner in the District Court of Tel Aviv-Yafo (the "Israeli Court"), *Insolvency Case No. 50286-02*-25.

16. On March 23, 2025, Ms. Idan Adler-Reiss was appointed to serve as the trustee in the Israeli Liquidation.

17. Ms. Adler-Reiss also commenced a liquidation proceeding in the Israeli Court against Nuvo Group Ltd.'s parent company, Holdco Nuvo Group D.G Ltd., in April 2025,

pending before Judge Brenner as *Insolvency Case No. 70516-04-25* (the "Israeli Holdco Liquidation"). Ms. Adler-Reiss has also requested that she be appointed trustee in the Israeli Holdco Liquidation. As a result of the Court's orders enforcing the automatic stay and agreements between the CRO and Ms. Adler-Reiss discussed below, the Israeli Holdco Liquidation has effectively been stayed.

18. Following the commencement of the Israeli Liquidation, the Debtors filed an emergency motion to enforce the automatic stay with respect to its commencement. The Court held a hearing on May 16, 2025 on such motion and entered two interim orders enforcing the automatic stay. [D.I. 557-560, 567, 569, 570, 571, 579, 583, 600, 601.]

19. At the May 16, 2025 hearing, the parties represented that they had agreed in principle on the main terms of a temporary stay of certain proceedings in this Court and the Israeli Court but that the Israeli Trustee believed she needed approval from the Israeli Court before agreeing to certain of such terms, and in order to facilitate that approval, the Court adjourned the preliminary hearing. [D.I. 601 ¶ 6.] This Court then modified the automatic stay solely to allow the Israeli Trustee to seek from the Israeli Court approval of an agreement to be finalized between the Israeli Trustee and the Debtors and Debtors in Possession in these cases, which ultimate agreement is set forth on Exhibit A to the Second Interim Order Enforcing the Automatic Stay (the "Stay Agreement") filed at D.I. 601-1. (*Id.* ¶ 7-8.)

20. Pursuant to the Stay Agreement, the Debtors and the Israeli Trustee agreed to stay all litigation between them temporarily in order to attempt to negotiate a protocol to govern the remainder of these chapter 11 cases and the Israeli Liquidation/Israeli Holdco Liquidation. Thereafter, the CRO and the Israeli Trustee agreed to several extensions of the stay period and ultimately agreed to jointly pursue a mediation of their respective claims against the D&Os and to

continue to negotiate to attempt to reach a joint case protocol. The Settlement Agreements achieve those goals and resolve all disputes between the Debtors/CRO and their professionals, on the one hand, and the Israeli Trustee on the other hand.

21. The Debtors/CRO reserve all rights relating to the Israeli Liquidation and the Israeli Holdco Liquidation proceedings pending the approval and implementation of the Settlement Agreements.

## C. D&O Claims

22. On April 25, 2025, the Debtors notified (the "Notice of D&O Claims") Ascot Bermuda, AXA XL – Professional Insurance, Berkshire Hathaway European Insurance DAC, and Tegron Specialty Limited (collectively, the "D&O Insurers") and the D&Os of claims and causes of action (together with the Israeli Trustee's claims, the "D&O Claims") against the D&Os. Within the Notice of D&O Claims, the Debtors explained that they believed the D&O Claims were covered by the policies issued by the D&O Insurers (the "D&O Policies"). Consequently, the Debtors requested that the D&O Insurers pay the entire $25 million coverage amount (the "D&O Insurance Proceeds") to the Debtors.

23. The Israeli Trustee made her own written demand on the D&O Insurers and Former D&Os regarding claims she asserts under Israeli law.

24. On June 17, 2025, the D&Os filed their *Motion for Relief from the Automatic Stay to Permit Advancement of Defense Costs and Coverage of Loss for the Debtors' Executives Pursuant to the D&O Policies* [D.I. 634] (the "D&O Motion"). The D&O Motion requested that the automatic stay be modified to permit the D&O Insurers to advance defense costs to the D&Os and make indemnity payments on their behalf from the D&O Insurance Proceeds in connection with the D&O Claims. On July 7, 2025, the Court entered an order approving the D&O Motion without opposition [D.I. 657].

**D. Mediation**

25. Following months of discussions, the Debtors/CRO, the Israeli Trustee, the D&Os, and the D&O Insurers (collectively, the "Mediation Parties") agreed to attend a mediation to attempt to resolve the D&O Claims and any related issues (the "Mediation Issues").

26. On March 10, 2026, the Debtors filed the *Motion for Entry of an Order Appointing and Authorizing the Compensation for a Mediator and an Israeli Law Expert and Granting Related Relief* (D.I. 818), which sought approval to conduct a mediation of the D&O Claims before, and to authorize the compensation of, Mediator David Murphy of Phillips ADR Enterprises (the "Mediator"), and Professor Zohar Goshen, Jerome L. Greene Professor of Transactional Law at the Columbia Law School, who served as an expert in Israeli law for purposes of the Mediation and related settlement negotiations (the "Israeli Law Expert"). On March 26, 2026, the Court entered the *Order Appointing and Authorizing the Compensation for a Mediator and an Israeli Law Expert and Granting Related Relief* (D.I. 830) (the "Mediation Order").[3]

27. The Mediation Parties then exchanged extensive confidential mediation briefs addressing the Mediation Issues.

28. On May 12, 2026, the Mediation Parties participated in a full day mediation (the "Mediation") before the Mediator and the Israeli Law Expert.

29. During the Mediation, the Debtors/CRO and the Israeli Trustee jointly advanced the D&O Claims. The D&Os and the D&O Insurers contested all liability in connection

[3] As part of reaching an agreement to mediate, the Mediation Parties agreed on the compensation structure for the Mediator and the Israeli Law Expert. The D&O Insurers agreed to advance all costs of the mediation, subject to an agreement by the Debtors/CRO and the Israeli Trustee to pay half of such amounts from the proceeds of any settlement of the D&O Claims.

with the D&O Claims. No agreement was reached at the Mediation, but the Mediation Parties agreed to continue discussions.

30. On June 19, 2026, following the Mediator's recommendation, the Settling Parties reached agreement upon the terms of a settlement.

## E. Settlement Agreements

31. The Settlement Agreements resolve the D&O Claims and the allocation of the D&O Insurance Proceeds between the Debtors/CRO and the Israeli Trustee. Pursuant to the D&O Settlement Agreement, the D&Os also agreed to release any claims they have against the Debtors, which results in a significant reduction of the claims pool.

32. The Settlement Agreements provide the path forward for the resolution of Debtors' chapter 11 cases. The Debtors' receipt of their portion of the Settlement Amount will permit them to administer their estates and bring their chapter 11 cases to a value-maximizing conclusion. As the Court is well aware, the Chapter 11 cases are at an impasse. The Settlement Agreements will permit them to move forward and reach their conclusion.

33. The charts below summarize the key components of the Settlement Agreements.[4]

[4] The summary of the Settlement Agreements is not intended to be exhaustive and is subject to the terms of the Settlement Agreements. The table herein is in no way intended to alter the Settlement Agreements or inform the interpretation thereof. Defined terms in the charts below not otherwise defined herein are used as defined in the applicable Settlement Agreements.

**D&O Settlement Agreement**

| Settlement Term | Detail |
| --- | --- |
| *Settling Parties* | Scott Lyman, in his capacity as the Chief Restructuring Officer of the Debtors, Nuvo Group USA, Inc., Holdco Nuvo Group D.G Ltd., and Nuvo Group Ltd.<br><br>Idan Adler-Reiss, in her capacity as the trustee appointed in connection with the Israeli Liquidation of Nuvo Group Ltd.<br><br>Certain former directors and/or officers of the Debtors, including Laurence Klein, Oren Oz, Kelly Londy, Daniel Gilcher, and Douglas Blankenship, each in his or her capacity as a former director and/or officer of one or more of the Debtors. |
| *Final Settlement Amount* | $9,680,237.50, the Gross Settlement Amount reduced by Debtors' share of the Mediation Costs. |
| *Gross Settlement Amount* | $9,750,000.00, the agreed-upon settlement amount.<br><br>Will be legally deemed as paid into the "Nuvo Group Estate" (a single joint fund administered by the CRO and the Israeli Trustee). |
| *Mediation Costs* | $69,762.50, an amount equal to half of the combined fees of Mr. Murphy, the Mediator, and Professor Goshen, the Israeli law expert. |
| *Settlement Payment* | D&O Insurers will pay the Final Settlement Amount, in accordance with the written instruction signed by the CRO and the Israeli Trustee, as separately agreed between them pursuant to the CRO/Israeli Trustee Settlement Agreement.<br><br>D&O Insurers will transfer the Final Settlement Amount via separate bank transfers to the bank account of the Israeli Trustee in Israel and to the bank account of the CRO in the United States of America. The allocation of the proceeds between the CRO and the Israeli Trustee is detailed below. |
| *Timing of Settlement Payment* | The Final Settlement Amount will be paid via separate bank transfers, with each bank transfer to be initiated no later than thirty (30) calendar days after both Settlement Orders become final non-appealable orders. |
| *Conditions of Payment* | D&O Insurers' timely receipt of:<br>(i) the Settlement Orders;<br>(ii) the CRO's and the Israeli Trustee's written bank transfer instructions; and |

| | |
|---|---|
| | (iii) a current IRS Form W-9 that has been fully completed and executed by the CRO. |
| *Bankruptcy Court & Israeli Court Approval* | Parties will cooperate in good faith and use commercially reasonable efforts to seek approval of the Settlement by:<br>• order of this Court pursuant to Rule 9019; and<br>• order of the competent court in Israel, in accordance with Israeli Insolvency Law (the "Israeli Approval Order", and, collectively, the "Settlement Orders").<br>• The Settlement Orders and the Blocking Order must be acceptable to the CRO, the Israeli Trustee, the D&Os, and the D&O Insurers. |
| *Specific Condition to Effectiveness* | ***Israel Innovation Authority Waiver:*** The Israeli Trustee shall obtain the written approval of the Israel Innovation Authority ("IIA") to the Settlement, pursuant to which the IIA shall expressly and irrevocably confirm in writing that, in consideration for the approval and consummation of the Settlement, it fully, finally, and irrevocably waives and releases any and all claims, demands, causes of action, liabilities, or allegations of any kind whatsoever against any Insured Party and the D&O Insurers, whether civil, administrative, regulatory, quasi-criminal, or criminal in nature, to the fullest extent permitted by applicable law. In the alternative, the Israeli Trustee shall obtain an order of the Israeli Court providing for a waiver and release of the IIA's claims to the same effect.<br><br>***Israeli Blocking Order:*** The Settlement is conditioned upon the entry by the Israeli Court of a blocking and injunctive order in favor of any Insured Party and the D&O Insurers only with regard to the Israeli companies—Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd.—pursuant to the Israeli Approval Order (the "Blocking Order"). The Blocking Order shall permanently enjoin and bar any and all claims, demands, causes of action, proceedings, rights of recovery, or liabilities of any kind whatsoever, whether known or unknown, existing or future, direct, indirect, derivative, representative, assigned, or otherwise asserted on behalf of the Debtors, their estates, or creditors, including, but not limited to the IIA, arising from or relating to the Debtors, their management, operations, insolvency, restructuring efforts, or affairs prior to the effective date of the Settlement, against any Insured Party and the D&O Insurers. |

| | |
|---|---|
| | • The Blocking Order is an essential, material, and inseparable component of the Settlement. Absent approval and entry of the Blocking Order, the D&O Insurers will not make the Settlement consideration available.<br>• Approval of the Blocking Order is not being sought before this Court. |
| *No Admission of Liability* | The D&Os deny any liability and deny that they have committed or engaged in any violation of law or wrongdoing whatsoever. |
| *Release* | Upon the Settlement Effective Date, to the maximum extent permitted by applicable law, the Settling Parties will provide mutual releases to one another, including specifically, solely with respect to the Israeli Trustee and the Israeli Approval Order, releases of all third-party claims governed by Israeli law, including claims that could be brought by any creditors or shareholders of the Debtors.<br><br>The mutual releases will include releases of all individuals and entities alleged to be Insured Persons as defined under the applicable D&O insurance policies (collectively, the "Insured Parties" and individually, an "Insured Party"), the D&Os, all present and former directors and officers of the Debtors (including but not limited to James S. Feltman and Barbara Scholl), the CRO, the Israeli Trustee, Teneo, the D&O Insurers, and all counsel appearing in the Mediation (collectively, the "Released Parties").<br><br>The D&Os will also release any claims that they have filed in the chapter 11 cases or in the Israeli bankruptcy proceeding of any of the Debtors and any such claims shall be deemed withdrawn and expunged.<br><br>The form and substance of any release, injunction, or blocking relief applicable to the Released Parties shall be subject to the prior written approval of the CRO, the Israeli Trustee, the D&Os, and the D&O Insurers in their sole discretion. |

**CRO/Israeli Trustee Settlement Agreement**

| Settlement Term | Detail |
|---|---|
| *Allocation of Proceeds* | U.S. Allocation: $5,600,000 (USD) to the CRO's designated U.S. account, to cover U.S. legal fees and administrative expenses of the U.S. chapter 11 proceedings. The CRO shall be the sole authorized signatory and have exclusive authority over this account. This sum is subject to the jurisdiction of the U.S. Bankruptcy Court. The U.S. Allocation shall be paid to holders of allowed administrative expense claims in the U.S. chapter 11 proceedings.<br><br>Israeli Allocation: $4,150,000 (USD) to the Israeli Trustee's designated account in Israel. The Israeli Trustee shall be the sole authorized signatory and have exclusive authority over this account. This sum is subject to the jurisdiction of the Israeli Court, and any internal adjustments by said Court shall be deemed part of this Agreement. |
| *Distribution of Israeli Allocation* | The Israeli Allocation shall be distributed as follows:<br><br>• 50% of the amounts required to be paid from the Settlement Proceeds by the CRO/Israeli Trustee for the expenses of the mediator and the Israeli law expert up to $75,000 (USD) including all tax.<br><br>• Trustee Fees: $1,755,000 (USD) for the Israeli Trustee's fees (including VAT).<br><br>• Legal expenses of the Israeli Trustee in an amount not to exceed $200,000 (USD).<br><br>• IIA Settlement: A sum to be agreed upon between the Israeli Trustee and the IIA (or determined by the Israeli Court) shall be paid in exchange for the full release of the IIA's claims regarding the alleged unauthorized transfer of intellectual property during these chapter 11 cases.<br><br>• Dividend Distribution: The remaining balance shall be distributed as a dividend to the creditors of the Israeli Debtors in accordance with the priorities set forth under the Israeli Insolvency and Economic Rehabilitation Law. |

| | |
|---|---|
| *Claims Allowance* | With the exception of administrative expense claims in the U.S. chapter 11 proceedings, which will be determined and administered by the U.S. Bankruptcy Court, the Israeli Trustee shall have the sole authority to adjudicate all proofs of claim filed by creditors against Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd., subject to the jurisdiction of the Israeli Court. The foregoing sentence shall apply regardless of whether such claims were filed in the Israeli or the U.S. proceedings. The Israeli Trustee's determination shall be binding in both jurisdictions, subject only to a right of appeal within the Israeli Court system. |
| *Gaingels Claim* | The Israeli Trustee represents that she has conducted an investigation according to Israeli law of the claims asserted as a secured claim by Gaingels 10X Capital Diversity Fund I LP ("Gaingels") in both the U.S. Bankruptcy Court and the Israeli Court. Based on that investigation, the Israeli Trustee has determined that Gaingels did not properly perfect its alleged security interest and/or that any asserted lien is avoidable. As a result, the Israeli Trustee will use best efforts to object to the secured status asserted by Gaingels and to reclassify the claim as an unsecured/general claim, and shall diligently pursue any necessary steps to do so, including any court filings and appeals. Should a final, non-appealable judgment by an authorized court in Israel or the U.S. determine that Gaingels holds a "Secured" claim, any payment on account of such claim to Gaingels shall be paid solely from the proceeds held in trust by the CRO from the chapter 11 asset sale (the "Escrow Account"). For the avoidance of doubt, the Escrow Account shall remain property of the CRO and shall be available to pay administrative expenses from the U.S. chapter 11 proceedings |
| *Joint Access to Records* | The CRO shall provide the Israeli Trustee with all necessary accounting records in his possession required for the adjudication of proofs of claim. |
| *Nuvo Group USA, Inc.* | Creditors of Nuvo Group USA, Inc. shall not be entitled to receive any dividends from the Israeli Allocation. |
| *Holdco Nuvo Group D.G Ltd.* | The Israeli Trustee shall be entitled to apply to the Israeli Court for appointment as an officer/trustee of Holdco Nuvo Group D.G Ltd. for the purpose of obtaining the Blocking Order required as a condition precedent to the settlement agreement with the D&O Insurers. |
| *Wind-Down Activities* | The CRO shall oversee the remaining wind-down activities of Nuvo Group USA, Inc. The Israeli Trustee |

| | |
|---|---|
| | will oversee the remaining wind-down activities of Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd. in Israel according to Israeli law, other than with respect to (i) acts required to obtain approval of and consummate the Settlement Agreements, (ii) payment of administrative expenses of those entities for the U.S. chapter 11 proceedings, and (iii) dismissal of the chapter 11 cases of those entities. |
| *Releases* | The Israeli Trustee and the CRO shall release any and all claims against one another and their respective professionals and representatives |

34. The Settlement Agreements remain subject to the approval of this Court and the Israeli Court. The Settling Parties have agreed to cooperate in good faith and use commercially reasonable efforts to obtain the requisite approvals. As part of those efforts, simultaneously with the filing of this Motion, the Parties are cooperating in good faith to seek approval of the Settlement Agreements by the Israeli Court in accordance with Israeli Insolvency Law.

35. The Debtors respectfully submit that entry into the Settlement Agreements is in the best interest of the Debtors and their estates and that the Settlement Agreements represent a sound exercise of their business judgment.

## **BASIS FOR RELIEF REQUESTED**

### **A. Settlement Agreement**

36. Pursuant to Bankruptcy Rule 9019, bankruptcy courts are authorized to approve a compromise proposed by a debtor after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a). The decision to approve a settlement or compromise is within the "sound discretion" of the bankruptcy court. *See In re Filene's Basement, LLC*, 2014 WL 1713416, at *7 (Bankr. D. Del. April 29, 2014) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). In exercising its discretion, the bankruptcy court may also consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. *See In re MF Glob., Inc.*, 2012 WL 3242533,

at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) ("[C]ourts may give weight to the opinion of bankruptcy counsel supporting the settlement."); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) ("[T]he court is permitted to rely upon opinions of the trustee, the parties, and their attorneys.") (internal quotations omitted). Further, "[i]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must only conclude that the compromise is fair, reasonable, and in the best interest of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (internal quotations and citations omitted).

37. As the Third Circuit has emphasized, "compromises are favored in bankruptcy" since they minimize litigation costs and provide for the efficient resolution of bankruptcy cases. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

38. In the Third Circuit, a bankruptcy settlement should be approved under Bankruptcy Rule 9019 "if the settlement is 'fair and equitable and in the best interests of the estate.'" *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. at 801). The Third Circuit specifically sets forth four factors to be considered by the court in determining the fairness, reasonableness, and adequacy of a settlement, as follows:

a. the probability of success in litigation;

b. the likely difficulties in collection;

c. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

d. the paramount interest of creditors.

*Martin*, 91 F.3d at 393; *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (reiterating the *Martin* factors); *In re Nutraquest, Inc.*, 434 F.3d 639, 644–47 (3d Cir. 2006) (same).

39. Moreover, if a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999); *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification for the action the debtors propose to take. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b) of the Bankruptcy Code).

40. The Debtors respectfully submit that the settlements memorialized in the Settlement Agreements are fair, equitable, and in the best interests of the Debtors' estates. Additionally, the *Martin* factors weigh in favor of approval of the Settlement Agreements.

41. ***First***, the prospect of success in any litigation would be costly and uncertain and would take considerable time. The D&O Settlement Agreement was reached prior to the filing

of a complaint and the attendant costs of a lawsuit and the time to a potential recovery. While the Debtors/CRO and the Israeli Trustee believe that their claims against the D&Os are strong and would have been successful, the D&Os strongly contested any liability and likely would have filed motions to dismiss any complaint that was filed. To the extent claims survived motions to dismiss, discovery would be time-consuming and expensive. To the extent that the Debtors/CRO and/or the Israeli Trustee were successful in their litigation efforts, the D&Os likely would have appealed any adverse decisions on the merits, which would have led to further delay and expense.

42. In addition, there likely would have also been litigation regarding the proper jurisdiction(s) in which the D&O Claims could proceed. The Israeli Trustee took the position that she could file claims in Israel. The Debtors/CRO and the D&Os took the position that all claims could and should be brought in the U.S. Litigation of these issues would involve complex cross-border issues, and would have led to further delay and expense.

43. The D&Os have already incurred substantial defense costs prior to and in connection with the Mediation. The D&O Insurers took the position that such defense costs reduced the limits of the D&O Policies and thus the available amount of D&O Insurance Proceeds. The D&O Insurers would have continued to assert that defense costs incurred with future litigation would similarly reduce the available limits of the D&O Policies.

44. The CRO/Israeli Trustee Settlement Agreement was reached following costly and complex litigation between the CRO and the Israeli Trustee, as well as over one year of subsequent discussions and negotiations.

45. The Settlement Agreements represent a reasonable exercise of the Debtors' business judgment and provide a consensual path forward for the Settling Parties to resolve their complicated legal disputes. Further, the Settlement Agreements will provide ample and much

needed liquidity for these cases, which will permit the Debtors to administer their estates and conclude their chapter 11 cases.

46. ***Second***, as detailed above, substantial costs and delays would result from any litigation between the Debtors, the Israeli Trustee, and the D&Os. Further litigation of the D&O Claims and the cross-border disputes between the CRO and the Israeli Trustee would be costly and time-consuming. The Debtors do not presently have any available funding to pay for the costs of any such litigation and, absent approval of the Settlement Agreements, are administratively insolvent.

47. The Settlement Agreements represent the most economical and efficient way for the Debtors to recover against the D&Os and will allow the Debtors' estates to recover the portion of the D&O Insurance Proceeds allocated to the Debtors in the Settlement Amount. Approval of the Settlement Agreements eliminates the risk of collecting amounts owed to the Debtors' estates on account of the D&O Claims. If litigation were required to liquidate the D&O Claims and determine the allocation of the D&O Insurance Proceeds, then the Debtors' estates could experience difficulties in collecting D&O Insurance Proceeds.

48. Even if litigation was successful, enforcement actions could be costly, complex, time-consuming, and possibly unsuccessful. The D&O Insurers contested coverage and denied responsibility for the D&O Claims. Several of the D&Os are located outside of the U.S., and there is doubt as to whether the D&Os would individually be able to satisfy any judgment against them even if such judgment was enforceable in their applicable jurisdictions.

49. ***Third***, as detailed above, the issues that would arise in any litigation of these disputes would be extremely complex and would significantly strain the Debtors' scarce resources. The D&O Claims involve claims under both U.S. and Israeli law. Some of the claims involve

issues of law with little to no established precedent. As discussed above, the forum and jurisdiction of any lawsuit would likely be contested. The D&Os also asserted a broad array of defenses to the claims, including among other things, the business judgment rule. As courts have recognized, "[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation[,]" and, here, the efficient resolution of the underlying disputes through the Settlement Agreements will similarly reduce expense and burden at this critical juncture in the Debtors' chapter 11 cases and inure to the benefit of all stakeholders. *See In re Nutraquest, Inc.*, 434 F. 3d at 646. Moreover, the Settlement Agreements provide an efficient path towards the resolution of these cases.

50. ***Finally***, approval of the Settlement Agreements is in the paramount interest of creditors. In the absence of the Settlement Agreements or a judgment on account of the D&O Claims, the Debtors' creditors would not receive any distributions as the Debtors are presently administratively insolvent by millions of dollars. In addition, even if a recovery was achieved on account of the D&O Claims following litigation, there is no guarantee that the judgment would have equaled or exceeded the Settlement Amount, and any allocation of recoveries of the D&O Claims would likely be contested between the CRO and the Israeli Trustee. And distributions to creditors would be further depleted by additional administrative expenses incurred to pursue such litigation.

51. The Settlement Agreements resolve these allocation issues and provide the funding needed to resolve the Debtors' administrative expense claims and for the Israeli Trustee to make millions of dollars of distributions to non-administrative creditors. Indeed, the compromises contained in the Settlement Agreements represent a consensual resolution between

the Settling Parties that will inure to the benefit of all stakeholders, including general unsecured creditors.

52. Accordingly, the Debtors believe that the Settlement Agreements are fair and advantageous to the Debtors' estates, fall well within the range of reasonableness, and represent a sound exercise of their business judgment. Thus, the Debtors submit that the Settlement Agreements satisfy the standards for approval under applicable law and should be approved by this Court.

**B. Cross-Border Protocol Pursuant to CRO/Israeli Trustee Settlement Agreement**

53. The CRO/Israeli Trustee Settlement Agreement allocates settlement consideration to the Israeli Trustee to administer the claims process with respect to and wind-down of Debtors Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd. (the "Israeli Debtors"). The Debtors submit that the adoption and approval of the CRO/Israeli Trustee Settlement Agreement is necessary to implement the D&O Settlement Agreement and to facilitate the efficient determination of claims asserted against the Israeli Debtors in one forum (the Israeli Court) rather than two for the mutual benefit of the Debtors, the CRO, the Israeli Trustee and the Debtors' creditors.

54. Creditors of the Israeli Debtors filed claims in either or both of the Israeli Liquidation and these chapter 11 cases. Both this Court and the Israeli Court established deadlines and procedures that governed the filing of claims against the Israeli Debtors. Thus, absent an agreed claims protocol, there likely would have been disputes concerning the proper forum for resolution of creditor claims, and the risk of conflicting determinations.

55. Given that the Israeli Debtors are Israeli companies, many of their creditors have claims that are governed by Israeli law. In addition, certain Israeli governmental authorities,

including the IIA and the Israeli taxing authority, filed claims only in Israel. The D&Os/D&O Insurers made very clear that any settlement funding provided would need to fully and finally resolve all claims, including those asserted in Israel.

56. The CRO/Israeli Trustee Settlement Agreement addresses these issues by allowing for resolution of all claims against Debtors Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd. in one forum (the Israeli Court) regardless of whether they were filed in the Israeli Liquidation, the Israeli Holdco Liquidation, or in these chapter 11 cases. The claims protocol set forth in the CRO/Israeli Trustee Settlement Agreement provides that all claims filed in these chapter 11 cases against Debtors Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd. will be administered by the Israeli Trustee and determined by the Israeli Court, and all claims filed in these chapter 11 cases against Debtor Nuvo Group USA, Inc. will be administered by the CRO and any successor in interest before this Court.

57. The CRO/Israeli Trustee Settlement Agreement also establishes procedures for the coordination and cooperation between the Debtors/CRO and the Israeli Trustee regarding the further administration and conclusion of these chapter 11 cases, the Israeli Liquidation, the Israeli Holdco Liquidation, and the wind-down of the Debtors' Estates.

58. Allowing the Israeli Trustee to administer claims and to proceed with the Israeli Liquidation and the Israeli Holdco Liquidation will also allow for a full and final wind-down of Debtors Nuvo Group Ltd. and Holdco Nuvo Group D.G Ltd. in accordance with Israeli law and provide a recovery to creditors.

59. Section 105(a) of the Bankruptcy Code authorizes the relief requested in this Motion. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a). Moreover, the adoption of the claims protocol in the CRO/Israeli Trustee Settlement Agreement not only furthers the efficient reconciliation and resolution of claims by the Debtors and Israeli Liquidation/Israeli Holdco Liquidation estate but is also an integral and inseparable part of the agreements reached by the Debtors/CRO and the Israeli Trustee.

60. Relying on the authority granted by section 105(a) of the Bankruptcy Code, Courts in this District and elsewhere have authorized protocols addressing the administration and determination of claims in cross-border insolvency proceedings. *See, e.g., In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Sept. 16, 2010); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. June 17, 2009); *In re Pope & Talbot, Inc.*, Case No. 07-11738 (CSS) (Bankr. D. Del. Feb. 26, 2008). In addition, a number of courts, in this District and elsewhere, have authorized similar protocols for managing other aspects of cross-border insolvency proceedings. *See, e.g., In re Progressive Molded Prods.*, Case No. 08-11253 (KJC) (Bankr. D. Del. July 14, 2008); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Apr. 12, 2007); *In re Systech Retail Sys. (U.S.A.) Inc.*, Case No. 03-00142-5-ATS (Bankr. E.D.N.C. 2003); *In re Fed. Mogul Glob., Inc.*, Case No. 01-10578 (Bankr. D. Del. Feb. 7, 2002); *In re Fin. Asset Mgmt. Found.*, Case No. 01-03640-304 (Bankr. S.D. Cal. July 25, 2001); *In re PSINet Inc.*, Case No. 01-13213 (Bankr. S.D.N.Y. July 10, 2001); *In re Laidlaw USA, Inc.*, Case No. 01-14099 (Bankr. W.D.N.Y. Aug. 20, 2001); *In re Livent (U.S.) Inc.*, Case No. 98-48312 (Bankr. S.D.N.Y. 1998).

61. For the foregoing reasons, the Debtors believe that approval of the claims protocol procedures set forth in the CRO/Israeli Trustee Settlement Agreement is necessary to give effect to the Settlement Agreements, promote the efficient and effective administration of these

chapter 11 cases with the Israeli Liquidation and Israeli Holdco Liquidation proceedings, further the resolution of claims filed against the Debtors, and, is therefore, in the best interests of the Debtors, their estates, their creditors, and all parties-in-interest.

**RESERVATION OF RIGHTS**

62. Other than as set forth in the Settlement Agreements, nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (g) a consent to the jurisdiction of the Israeli Court; or (h) a consent to the pendency of the Israeli Liquidation, the Israeli Holdco Liquidation, any action taken by the Israeli Trustee, or any request for relief by any party before the Israeli Court or otherwise.

**NOTICE**

63. Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Israeli Trustee; (c) counsel to the DIP Lender; (d) the D&O Insurers; (e) the D&Os; (f) those parties listed on the list of creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions; and (g) all parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form of the Proposed Order and grant such other relief as is just and proper under the circumstances.

Dated: August 10, 2026
Wilmington, Delaware

Respectfully submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Brenna A. Dolphin*

Derek C. Abbott (No. 3376)
Curtis S. Miller (No. 4583)
Brenna A. Dolphin (No. 5604)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
cmiller@morrisnichols.com
bdolphin@morrisnichols.com

*-and-*

**HUGHES HUBBARD & REED LLP**
Kathryn A. Coleman (admitted *pro hac vice*)
Christopher Gartman (admitted *pro hac vice*)
Jeffrey S. Margolin (admitted *pro hac vice*)
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Email: katie.coleman@hugheshubbard.com
chris.gartman@hugheshubbard.com
jeff.margolin@hugheshubbard.com

*Counsel to the Debtors and Debtors in Possession*